James R. Dickens                                      Hon. Ralph R. Beistline
MILLER NASH LLP
4400 Two Union Square
601 Union Street
Seattle WA 98101-2352
Telephone: (206) 622-8484

Peter Gruenstein
GRUENSTEIN & HICKEY
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage AK 99501
Telephone: (907) 258-4338

        Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MYRNA I. JOHNSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>FRED MEYER STORES, INC., a Delaware corporation; and JAIME SAN MIGUEL,<br><br>                    Defendants. | Case No. 1J-04-008-CV (RRB) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

### I. MOTION

Defendants Fred Meyer Stores, Inc. ("Fred Meyer") and Jaime San Miguel, pursuant to Fed. R. Civ. P. 56(b), move for summary judgment as to all claims against them by plaintiff Myrna I. Johnson.

### II. SUMMARY

#### A.   Claims

Plaintiff Myrna I. Johnson's complaint alleges federal statutory claims against defendants for harassment and wrongful discharge in violation of the ban on gender

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 1 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

discrimination in Title VII of the 1964 Civil Rights Act ("Title VII") and in violation of the Age Discrimination in Employment Act ("ADEA"); harassment and wrongful discharge in violation of the Alaska Human Rights Act on the basis of age, gender and parental status; wrongful discharge in violation of the federal Family and Medical Leave Act ("FMLA"); and state common law claims for wrongful discharge in violation of the covenant of good faith and fair dealing, and tortious interference with business relations. There are no material issues of fact as to essential elements of each of these claims, all of which should be dismissed.

### B.    Summary of Facts

Plaintiff began working at the Fred Meyer in Juneau as a part-time employee in the shoe department in late 1992. She was eventually hired to work full time, and became the second assistant in the apparel department in 1996. She remained in this position until early 2001 when she was promoted to first assistant by defendant Jaime San Miguel, the apparel manager. Plaintiff was employed at will.

In early February 2002, plaintiff returned from vacation in the Philippines to discover her 17-year-old daughter had run away from home in Juneau and had a substance abuse problem, which required a short hospitalization in Juneau. When plaintiff asked for time off to take care of her daughter, Mr. San Miguel suggested Ms. Johnson fill out applications for both personal leave and FMLA leave.

Plaintiff received one month's personal leave and took her daughter to the Philippines, returning on Sunday, March 10, 2002. Her FMLA leave was denied because she did not submit the proper medical provider paperwork, but nevertheless her leave was approved as a personal leave. On Monday, March 11, 2002, Mr. San Miguel discovered plaintiff working in the Fred Meyer store for a merchandiser and asked her when she would be returning to work at Fred Meyer. She said Tuesday, March 12, so Mr. San Miguel scheduled her to begin the next day, and assigned her to the closing shift (from about

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 2 of 28

SEADOCS:237711.3

1:30 p.m. to about 11:30 p.m.) for that week because the weekly schedule (as always) had already been prepared the prior Thursday, March 7. After her return to work on March 12, 2002, Mr. San Miguel was critical of plaintiff's poor performance on closing the department at night and in setting up displays.

After several days of unexpectedly poor performance by plaintiff, without improvement, Mr. San Miguel set up a meeting with plaintiff and his boss, the store director, Fred Sayre, to try to ascertain what were the reasons for plaintiff's poor performance that first week. An oral warning notice was discussed with plaintiff and documented through an "Employee Warning Notice," and she was advised that she needed to improve over the next 30 days or she would be demoted (not terminated). Plaintiff, however, got upset and threatened to walk out of the meeting. Fred Sayre at least three times advised plaintiff "not to walk out – it would be a voluntary quit." (Plaintiff did not recall these warnings because she became so emotional at the meeting.) Neither Mr. San Miguel nor Mr. Sayre wanted to lose Ms. Johnson – they just wanted improvement in her job performance. Nevertheless, plaintiff walked out in the middle of their meeting. After discussion with the human resources representative, it was concluded that plaintiff voluntarily quit. She did return later that afternoon and asked for (and received) a copy of the written documentation of the scheduled oral warning of poor performance. But plaintiff never returned for any of the remaining shifts on her schedule. Her employment was designated as a voluntary resignation for walking off the job. She was 49 years old at the time.

Plaintiff continued to work part-time for outside merchandisers who had vendor displays at Fred Meyer. When told Mr. San Miguel wanted her to build the displays at the Fred Meyer store while he was working, she quit that job also.[1]

---

[1] On this issue and others, Mr. San Miguel disagrees. Solely for purposes of this motion, however, defendants are accepting plaintiff's testimony as accurate on this issue, including her lack of recollection of the warnings "not to walk out – it would be a voluntary quit" at the meeting with Messrs. Sayre and San Miguel. See Sayre Dep., Ex. C, p. 7.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 3 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

C.    **Law on Plaintiff's Causes of Action**

    1.    Gender Discrimination

Plaintiff's work environment was not hostile, and the criticism of her work performance was not caused by her protected status. Plaintiff's refusal to discuss the written warning or the underlying performance issues with her supervisors and her decision to walk off the job and not return to work constituted job abandonment, designated voluntary resignation. Because plaintiff's replacement in her position was another woman, she cannot state a *prima facie* case for gender discrimination. Plaintiff's amended discrimination complaint filed with the Alaska State Commission for Human Rights ("ASCHR") did not allege gender discrimination.

    2.    Age Discrimination

Plaintiff's harassment claim fails for the same reasons as the gender discrimination claim. The defendant took a non-discriminatory action in criticizing her work performance and requiring her to complete her shift. She never returned to work. Moreover, Mr. San Miguel promoted plaintiff when she was 48. It is totally illogical to assume that he suddenly became age-biased against her when she turned 49. This "same actor" inference of absence of bias applies to all plaintiff's allegations of discrimination.

    3.    Parental Discrimination

Plaintiff has no evidence that her role as a parent had anything to do with the criticism of her performance during her last week of employment or that led up to her walking off the job. During the final week that she worked she had no parental responsibilities because her daughter was thousands of miles away in the Philippines.

    4.    Family and Medical Leave Act ("FMLA") Discharge Claim

Fred Meyer provided plaintiff with a FMLA medical leave application. The benefits under FMLA medical leave are identical to those for the personal leave that she actually took: unpaid leave, return to the same position, and medical benefits. Ultimately,

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 4 of 28

SEADOCS:237711.3

her failure to provide medical certification regarding her daughter's continued medical needs and condition resulted in the denial of her FMLA medical leave. It is totally illogical that Fred Meyer would retaliate against her for requesting FMLA leave when Fred Meyer provided her leave and benefits under the corporate personal leave that were identical to the FMLA leave benefits. Four years later, plaintiff still has not produced medical evidence that she qualified for FMLA leave during the month she spent in the Philippines.

### 5.    Breach of Covenant of Good Faith and Fair Dealing

Plaintiff cannot show that Fred Meyer's criticism of her work performance and the enforcement of its corporate policy of requiring employees to work assigned shifts violate the covenant of good faith and fair dealing.

### 6.    Tortious Interference with Business Relations

Fred Meyer had the contractual right to require its vendors to build their displays at Fred Meyer stores when department managers are on duty. Plaintiff cannot establish a claim of tortious interference with business relations.

## III.    THE PLAYERS

Plaintiff Myrna Johnson. In 2002, Ms. Johnson was a 49-year-old assistant apparel manager at Fred Meyer's Juneau store and the mother of a 17-year-old daughter.

Defendant Jaime San Miguel. Jaime San Miguel was the manager of the Fred Meyer apparel department in 2001-2002 in Juneau. He promoted plaintiff to her position as assistant apparel manager in 2001. Mr. San Miguel and plaintiff were personal friends throughout the six years that she reported to him until Mr. San Miguel prepared the March 2002 warning that precipitated plaintiff's walking off the job.

Fred Sayre. Fred Sayre was the Fred Meyer store director in 2001 when plaintiff was promoted and in 2002 when plaintiff walked off the job at the Juneau store.

Johnna Havard. Ms. Havard was a second assistant apparel manager in her 20s, who was moved from Wasilla to Juneau temporarily in early March 2002 when plaintiff

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 5 of 28

SEADOCS:237711.3

was on leave with her daughter in the Philippines. After plaintiff voluntarily quit, Fred Meyer posted the job opening and Ms. Havard was selected from the two applicants to fill the vacancy. She moved to Juneau in April 2002 to fill the first assistant apparel manager position abandoned by plaintiff.

### IV.  EVIDENCE RELIED UPON

Plaintiff's complaint, and the declaration of James R. Dickens (hereinafter referred to as "Dickens Decl., Ex. ___, p. ___"), and the attached deposition testimony of Myrna Johnson (Ex. A), Jaime San Miguel (Ex. B), Fred Sayre (Ex. C), and Johnna Havard (Ex. D), Myrna Johnson deposition exhibits (Exs. E-U), a June 28, 2002, letter and amended complaint from the ASCHR (Exs. V-W).

### V.  UNDISPUTED FACTS AND PLAINTIFF'S TESTIMONY

Plaintiff grew up in the Philippines and met her husband in South Carolina. They moved to Juneau in 1992 and thereafter she started work at the Juneau Fred Meyer in the apparel department. Dickens Decl., Ex. A, p. 3. The apparel department was one of the three major departments in Fred Meyer's stores, along with the food department and "hard goods," such as hardware, home and garden. Dickens Decl., Ex. A, p. 4. Plaintiff's 21-year-old daughter has lived in the Philippines since 2002. Dickens Decl., Ex. A, p. 2.

Plaintiff walked off the job as first assistant apparel manager in March 2002 at the age of 49 after being read an "Employee Warning Notice" that her performance had to improve or she would be removed from her position as assistant apparel manager at the Fred Meyer Juneau store. Dickens Decl., Ex. A, p. 100; Ex. Q, p. 1. Prior to her 2001 promotion to first assistant by defendant San Miguel and store manager Fred Sayre, she was a second assistant manager for five years. She received overall evaluations of "meets expectations," the middle of five performance ratings. See Dickens Decl., Ex. A, pp. 59-82; Ex. G, pp. 1-4; Ex. H, pp. 1-4; Ex. I, pp. 1-4; Ex. J, pp. 1-4. These evaluations, however, contained consistent criticisms regarding her supervisory skills, stating that she needed to improve on

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 6 of 28

SEADOCS:237711.3

her communications skills (with both employees and supervisors), and she needed to prioritize the tasks to which she was assigned.   Id.   Defendant San Miguel was Ms. Johnson's immediate supervisor from 1996 – 2001 when he was first assistant and she was the second assistant.   Dickens Decl., Ex. A, pp. 5-8.   After Mr. San Miguel was promoted to apparel manager in 2001, he recommended Ms. Johnson as his first assistant. Dickens Decl., Ex. A, pp. 9, 10 and 76.   Mr. San Miguel with store director Fred Sayre's approval appointed plaintiff to be the first assistant in the Fall of 2001.   Dickens Decl., Ex. B, pp. 3-6.   Only Mr. Sayre had the authority at the Juneau store to terminate Ms. Johnson's employment.   Dickens Decl., Ex. C, p. 4.   Ms. Johnson and Mr. San Miguel were friends outside of work and their families even celebrated some birthdays and holidays together, including the birthday of Ms. Johnson's daughter.   Dickens Decl., Ex. A, p. 12.

The apparel department had between 20 and 30 employees.   Dickens Decl., Ex. B, p. 8.   Mr. San Miguel identified nine of these employees in 2002 as being either from the Philippines or Hispanic.   Dickens Decl., Ex. B, pp. 8-13.   Mr. San Miguel is from Puerto Rico.   Dickens Decl., Ex. B, p. 2.   The majority of the apparel department employees in Juneau were women.   Dickens Decl., Ex. B, p. 7.

In January 2002, Ms. Johnson took a vacation to the Philippines for two weeks.   Dickens Decl., Ex. A, p. 25.   Upon her return in February, she discovered that her then 17-year-old daughter had run away from home.   Dickens Decl., Ex. A, p. 26. Mr. San Miguel allowed plaintiff to miss multiple days of work as sick leave to look for (and then after) her daughter.   Dickens Decl., Ex. B, pp. 14-17; Ex. A, p. 27.   Using her Fred Meyer sick leave, plaintiff was able to locate her daughter and arrange for her to be hospitalized for substance abuse treatment.   Dickens Decl., Ex. A, pp. 27-31.   Plaintiff then approached Mr. San Miguel to request a leave of absence.   Dickens Decl., Ex. A, p. 31.   As she acknowledged, Mr. San Miguel assisted plaintiff in obtaining leave documents to apply for both Fred Meyer personal leave and leave permitted under the guidelines of the Family

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE: (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 7 of 28

and Medical Leave Act ("FMLA") so she could take her daughter to the Philippines to stay with her family there. Dickens Decl., Ex. A, p. 32. The only medical documentation plaintiff submitted to support her request for FMLA leave to the Philippines was a February 14, 2002, note stating that her daughter was hospitalized earlier in Juneau. Dickens Decl., Ex. K, p. 4; Ex. A, p. 18.

Store director Fred Sayre granted plaintiff the month of personal leave as requested. Dickens Decl., Ex. K, p. 1; Ex. C, p. 11. Her request for FMLA leave, however, was denied because she never submitted the required "Certification of Health Care Provider." Dickens Decl., Ex. K, p. 2; Ex. B, pp. 18-19; Ex. A, pp. 18-20. But there was no practical difference to plaintiff between corporate personal leave and statutory FMLA leave. Dickens Decl., Ex. A, pp. 86-87. Plaintiff was allowed all the time she requested to care for her daughter; plaintiff did take her daughter to plaintiff's family in the Philippines; plaintiff stayed with her daughter for a month and left her there; and when plaintiff returned to her position at Fred Meyer in mid-March 2002 she still was the first assistant in apparel and there was no reduction in her pay or benefits. Dickens Decl., Ex. A, pp. 33-38.[2]

While plaintiff was with her daughter in the Philippines, Mr. San Miguel struggled to find replacements for both Ms. Johnson, his first assistant manager, and the second assistant apparel manager who was out with a back injury. Dickens Decl., Ex. B, p. 12. Eventually, Fred Meyer temporarily transferred a second assistant apparel manager, Johnna Havard, from the Wasilla store to assist. Johnna Havard worked the day shift for the first two weeks in March. Dickens Decl., Ex. D, pp. 2-4. Ms. Havard told Messrs. Sayre

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

---

[2] There is a dispute between Ms. Johnson and Mr. San Miguel as to whether she obtained the FMLA and personal leave applications from Mr. San Miguel or the store time-and-attendance person, but that dispute is not material. There is no dispute that she received the full leave and benefits requested as corporate personal leave. There is also no dispute that her FMLA leave was never approved because she never submitted the statutorily required health certification regarding her daughter's medical treatment in the Philippines. See deposition Ex. 9 (Dickens Decl., Ex. K, p. 2).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 8 of 28

SEADOCS:237711.3

and San Miguel that she would be interested in a first assistant position in Juneau if a vacancy ever occurred. Dickens Decl., Ex. D, p. 17.

Work schedules at Fred Meyer stores are prepared by Thursday for the following work week which runs from Sunday morning through Saturday evening. Dickens Decl., Ex. A, pp. 16-17. After Ms. Johnson returned to Juneau on Sunday, March 10, she saw Mr. San Miguel at the Fred Meyer store on March 11, 2002, while merchandising product for an outside vendor and discussed with him a date to return to work. Dickens Decl., Ex. A, p. 33. As Ms. Havard already was scheduled for the day shift that week of March 10-16, Mr. San Miguel added Ms. Johnson to work evenings as the manager responsible for closing the store for the remainder of the week. Dickens Decl., Ex. A, pp. 39-40. One of the responsibilities of the person closing the store is "recovery" – to fold, hang, and stack all the clothing and apparel on shelves and hangers so that it is ready for the opening the next morning.

The Fred Meyer store director, Mr. Sayre, told Mr. San Miguel on March 13, 2006, that the recovery on Ms. Johnson's evening shift was not satisfactory. Dickens Decl., Ex. C, p. 2. Plaintiff received e-mails from Mr. San Miguel criticizing the poor recovery on her closing shift during her first week back. Ex. L, pp. 1-3; Ex. M, p. 1; Ex. N, p. 1; Ex. O, p. 1; Ex. P, p. 1; Ex. A, pp. 88-97. Plaintiff was told Fred Meyer was raising its standards. Dickens Decl., Ex. A, pp. 43-44. She also was criticized for failing to set up a display according to the plan-o-gram, a schematic distributed by Fred Meyer corporate store personnel for implementing identical displays in all stores. Dickens Decl., Ex. A, pp. 11, 94. Plaintiff's explanation was that the store was short-staffed, and she did not have enough people to assist her to complete all the tasks assigned to her. Dickens Decl., Ex. A, pp. 53-54.

When the new schedule was prepared for Ms. Johnson's first full week back, she was scheduled to work the day shift on the weekend of March 23-24. Dickens Decl.,

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 9 of 28

SEADOCS:237711.3

Ex. S, p. 1; Ex. A, pp. 104-105. After plaintiff closed the department the evening of Sunday, March 17, 2002, she was asked to meet with Mr. San Miguel and store director Fred Sayre on Monday afternoon, March 18, 2002, in Mr. Sayre's office. Dickens Decl., Ex. A, pp. 45-46. At this meeting they presented her with the Employee Warning Notice regarding poor recovery during the prior week. Dickens Decl., Ex. Q, p. 1; Dickens Decl., Ex. A, p. 47. The notice, which was read to her, stated that she had to improve over the next 30 days or she would be removed from her position as first assistant. Dickens Decl., Ex. Q, p. 1. Although Mr. San Miguel asked her whether her family situation was bothering her, plaintiff denied that it had any impact on her job performance. Dickens Decl., Ex. A, pp. 41-42. She told the two managers that she was doing a good job, and her family situation was unrelated to job performance. Dickens Decl., Ex. A, p. 50; Ex. B, p. 20. She began to cry and said that she was going to leave the office. Dickens Decl., Ex. A, pp. 48-49. Store director Sayre told plaintiff three times that if she walked out of the meeting it would be considered a voluntary resignation.[3] Dickens Decl., Ex. B, pp. 21-22; Ex. C, p. 3. Mr. Sayre was shocked when plaintiff walked out. Dickens Decl., Ex. C, p. 6.

Plaintiff, and all Fred Meyer employees, periodically sign Employee Responsibility Forms that state that "walking off of the job" will be deemed a "voluntary resignation (quit)." Dickens Decl., Ex. E, p. 1; Ex. F, p. 1; Ex. A, pp. 56-58. Plaintiff signed two Employee Responsibility Forms and knew on March 18, 2002, that walking off of the job was considered a voluntary resignation. Id. Plaintiff's failure to report to work for subsequent "scheduled shift(s)" was deemed a "voluntary resignation" per the signed Employee Responsibility Forms. Dickens Decl., Ex. E, p. 1; Ex. F, p. 1. Mr. Sayre never ran after plaintiff and pleaded with her to come back because when they "walk out the door, they do that on their own free will" and "because if I did that every time, then I would have

---

[3] Mr. Sayre testified that she threatened to quit, and he told her that they (Mr. Sayre and Mr. San Miguel) did not want her to leave, and if she did walk out, it would be a voluntary resignation. Sayre Dep. at 85 (Dickens Decl., Ex. C, p. 5).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 10 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

no consistency. I couldn't manage the store doing that." Sayre Dep. at 87-88 (Dickens Decl., Ex. C, pp. 7-8).

Plaintiff walked out of Mr. Sayre's office but returned shortly thereafter to ask for a copy of the warning notice, which she was given. But she refused to stay and discuss the matter. Dickens Decl., Ex. A, pp. 52, 55. She never returned to the store for any of her other remaining shifts, nor did she ask store director Sayre or Mr. San Miguel whether she could return to work. Dickens Decl., Ex. A, pp. 104-105. Store director Sayre said that he was willing to return her to work if she had asked him. Dickens Decl., Ex. C, pp. 9-10.

The opening for first assistant in the apparel department was posted on the Fred Meyer intranet following Ms. Johnson's job abandonment, and Johnna Havard applied. Dickens Decl., Ex. D, p. 18; Ex. T, pp. 1-10. There were two applicants. Dickens Decl., Ex. D, p. 19. Ms. Havard was selected as the new first assistant and transferred to Juneau in April 2002. Dickens Decl., Ex. D, p. 3. A year later she transferred to the jewelry department because she did not like being scheduled to work closings. Dickens Decl., Ex. D, pp. 6, 13-15.

In addition to working at Fred Meyer, Ms. Johnson also worked for various outside vendors building merchandise displays at the Fred Meyer store. Dickens Decl., Ex. A, pp. 101-103. She continued to do that after March 18, 2002. Id. She was told that she should only come in and build the displays for her employer when Mr. San Miguel was working, and he worked the daytime shift. Dickens Decl., Ex. A, p. 101. As a result, she resigned from that position. Dickens Decl., Ex. A, p. 102. Vendors must obtain managers' signatures after building "resets" at Fred Meyer stores. Dickens Decl., Ex. D, p. 12.

Plaintiff believed that Mr. San Miguel was biased against older workers because he said that Fred Meyer should hire "warm bloods." Dickens Decl., Ex. A, pp. 21-24. She thought "warm bloods" meant "younger," but acknowledged that he may have meant applicants from Hispanic countries (like Mr. San Miguel) or the Philippines.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 11 of 28

SEADOCS:237711.3

Dickens Decl., Ex. A, pp. 22-24.  She testified that he never made any other age-related comment to her.  Dickens Decl., Ex. A, p. 83.

Ms. Havard thought Mr. San Miguel favored Hispanic workers.  Dickens Decl., Ex. D, pp. 10-11.  Mr. San Miguel was born in Puerto Rico.  But in the apparel department there were seven employees from the Philippines and three Hispanic employees working for Mr. San Miguel.  Dickens Decl., Ex. B, pp. 9-12.  And the majority of the apparel employees were women.  Dickens Decl., Ex. B, p. 7.

Plaintiff retained the first of her four or more attorneys in the Spring of 2002.  Her initial attorney sent a letter alleging that Fred Meyer discriminated against her based on her race and gender.  Dickens Decl., Ex. U, pp. 1-3 (May 14, 2002, letter from Paul Grant to Fred Sayre).  Plaintiff also filed a discrimination charge with the ASCHR alleging discrimination based on age and parenthood, but did not allege either race or sex as a basis for discrimination in her intake form to the commission.  Dickens Decl., Ex. R, pp. 1-3.

> Q:    Under Section 2, it starts off – it says, "I believe I was discriminated against because of my," and then it says to check a box.  You checked "age," did you not?
>
> A:    I checked "age," yes.
>
> Q:    You checked "parenthood," did you not?
>
> A:    Yes, I checked parenthood.
>
> Q:    You never checked "race."
>
> A:    No, sir.
>
> Q:    You don't think race is an issue, do you?
>
> A:    No.
>
> Q:    You never checked "sex"?
>
> A:    No.
>
> Q:    You don't think sex is an issue, do you?
>
> A:    I – I don't think so.

MILLER NASH LLP
ATTORNEYS AT LAW
601 UNION STREET, SEATTLE WA 98101-2352
TWO UNION SQUARE
4400
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 12 of 28

SEADOCS:237711.3

Q:    Now, you have checked "employment" down below.  So I understand that your contention is, that you are contending that your age and parenthood was an issue in your employment.  Is that one of your contentions in this lawsuit?

A:    Yes, sir.

Johnson Dep. at 237-238 (Dickens Decl., Ex. A, pp. 98-99).

Initially the ASCHR complaint against Fred Meyer included Title VII allegations of gender discrimination.  On June 28, 2002, the Commission mailed Ms. Johnson and Fred Meyer an amended complaint with a cover letter which stated that she was *not* pressing any Title VII claim.  "The complaint was amended to delete the legal citation of Title VII of the 1964 Civil Rights Act as amended."  Dickens Decl., Ex. V, p. 1; Ex. W, p. 1.  The ASCHR director of investigations, Evelyn A. Ramos, advised the claimant to give her a call if she had "any questions regarding this matter."  Id.  Ms. Johnson's June 25, 2002, signature was notarized at the bottom of the first amended complaint that deleted all reference to gender discrimination.  Id.  Plaintiff signed the following before a notary:  "respondent has discriminated against me on the basis of my parenthood and age, 49, in violation of AS 18.80.220 and the Age Discrimination in Employment Act of 1967 as amended."  Dickens Decl., Ex. V, p. 1; Ex. W, p. 1.  Plaintiff received a notice of right to sue on the ADEA claim but never received a notice for any Title VII claim.  Plaintiff's court complaint, however, includes a claim for gender discrimination under Title VII.  See Complaint, Cause of Action I.

## VI.  LEGAL

### A.    Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials.  Zweig v. Hertz Corp., 521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences in favor of the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 13 of 28

[Only] disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The nonmoving party must rely exclusively on admissible evidence in opposing the defendant's motion. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). In addition, the nonmoving party must present genuine issues of fact. "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1060 (9th Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. A party opposing a motion for summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party's claim must be analyzed in light of the factual context of the case:

> [I]f the factual context makes a nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.

California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original) (citing Matsushita, supra), cert. denied, 44 U.S. 1006 (1988).

### B.    Gender Discrimination Claim Fails to State Prima Facie Case

Plaintiff's gender discrimination claim for discriminatory discharge fails under state and federal law, (1) because she fails to state a *prima facie* case, (2) because she cannot raise an issue of fact that a warning with a 30-day deadline to improve made her working conditions so intolerable that she was constructively discharged, and (3) because Fred Meyer's actions have a non-discriminatory inference under the "same actor" defense as the supervisors who appointed plaintiff to her position in 2001 are the same supervisors who

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 14 of 28

SEADOCS:237711.3

criticized her in 2002.  It is totally illogical that these supervisors suddenly developed a gender bias between 2001 and 2002.  In addition, the "harassment" claim of a hostile work environment claim fails because there are no allegations of sexual comments, gestures, or conduct by any Fred Meyer employee.

In addition, the Title VII claim should also be dismissed because plaintiff failed to allege gender discrimination in her charge filed with the ASCHR.

1.    Plaintiff fails to state a *prima facie* case of gender discrimination.

Under both state and federal law, a discrimination plaintiff must establish a *prima facie* case under the familiar burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), adopted in Brown v. Wood, 575 P.2d 760, 770 (Alaska 1978). Under AS 18.80.220, the plaintiff must show that (1) she is within a protected class, (2) she was qualified to perform her job and was performing up to the non-discriminatory expectations at Fred Meyer, (3) she was discharged, and (4) she was replaced by someone outside the protected class.

Plaintiff met the first prong, and there is a possible factual dispute as to whether the poor recovery and failure to reset the display in conformity with a schematic in the apparel department were a result of plaintiff's poor performance or Fred Meyer's failure to provide plaintiff with adequate support staff, as alleged by plaintiff.  The discharge element can be met through an express discharge or through constructive discharge.  In this case, there is no issue of fact on the constructive discharge because plaintiff's work environment falls far short of being intolerable.  Plaintiff also fails to meet the fourth element of the *prima facie* case because she was replaced by a woman.

2.    There is no issue of fact that plaintiff's working conditions were not intolerable to a reasonable person.

A plaintiff can establish constructive discharge by proving (a) an "abusive working environment so intolerable" that a reasonable person would be forced to resign, or

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 15 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

(b) "a reasonable response to an adverse action officially changing her employment status or situation, e.g., a humiliating demotion, extreme cut in pay, or transfer to a position in which she would have faced unbearable working conditions." <u>Pennsylvania State Police v. Suder</u>, 542 U.S. 129, 134 (2004).  Ms. Johnson's meeting with her supervisors to review a warning notice does not reach the level of "an adverse action officially changing her employment status or situation," as outlined by the U.S. Supreme Court in <u>Suder</u>.

The Alaska supreme court follows the general rule that job criticism does *not* create intolerable working conditions absent a "sustained campaign." <u>Cameron v. Beard</u>, 864 P.2d 538, 547 (Alaska 1993).

> Courts have generally held that criticism of job performance or other management decisions do not, standing alone, create intolerable working conditions.  <u>See</u> <u>Huyen</u>, 470 N.W.2d at 81 (holding that criticism of job performance is insufficient to establish intolerable working conditions); <u>Reihmann</u>, 375 N.W.2d 683-84 (holding that a reasonable person would not feel compelled to resign merely because his employer decided to relocate its office in a neighboring town).

864 P.2d at 547.

In <u>Cameron</u>, the court found ten aggravating factors supporting a jury verdict in favor of the plaintiff on constructive discharge.  The factors included solicitation of "hatchet job" reviews by supervisors, statements to plaintiff that plaintiff would not "be promoted in one thousand years," and repeated criticisms that were proved factually false. 864 P.2d at 548.  The court said the decisive evidence was a statement to the plaintiff that a termination letter was being prepared and that he should "do something quick" before he was fired.  <u>Id.</u>  Ms. Johnson's constructive discharge allegations in our case fall far short of raising an issue of fact.  The 2002 Employee Warning Notice with a 30-day deadline to improve or face demotion to plaintiff's prior position is nothing more than routine employee counseling.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 16 of 28

SEADOCS:237711.3

Plaintiff's gender discrimination claim should be dismissed because there is no issue of fact that she voluntarily walked off the job and elected not to return to work. As a result, she cannot establish the discharge element of her *prima facie* case.

### 3.    Plaintiff was not replaced by a man.

Plaintiff also cannot establish a *prima facie* case because she was not replaced by a man. Moreover, the majority of the employees in the apparel department were women. Plaintiff's gender discrimination claim should therefore be dismissed because plaintiff cannot raise an issue of fact regarding two of the four elements of her *prima facie* case.

### 4.    Plaintiff has no evidence of pretext.

Even if plaintiff could state a *prima facie* case, she cannot show that the working conditions precipitating her walking off the job and refusing to come to work for any of her remaining shifts was a pretext for gender bias. There is no allegation that Mr. San Miguel ever asked the plaintiff out, touched the plaintiff, or ever made any sexual comment to the plaintiff or anyone else. Mr. San Miguel's personal life is irrelevant to this lawsuit, and plaintiff has no evidence, only innuendo, to suggest that he dated anyone other than his current girlfriend with whom he has had an ongoing relationship for five years.

### 5.    The same actors (Sayre and San Miguel) promoted plaintiff in 2001 to first assistant manager.

Plaintiff's "evidence" of gender discrimination is further undercut by the same actor defense. If Mr. San Miguel and Mr. Sayre wanted to remove plaintiff as an assistant manager in 2002 due to gender bias, they would never have promoted her to the position a year earlier. The Ninth Circuit applies the "same actor" inference of a non-discriminatory motive whenever plaintiffs make the implausible argument that a supervisor is biased against a plaintiff based on a protected status after the plaintiff was placed in that position by the same supervisor.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 17 of 28

SEADOCS:237711.3

If Sasmor had preferred to place a man in the position, we can see no reason why she would have hired a woman only a year earlier.  As the Fourth Circuit has observed:

> "One is quickly drawn to the realization that claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological cost of associating with them), only to fire them once they are on the job."

Proud v. Stone, 949 F.2d 796, 797 (4th Cir. 1991).

> We therefore hold that where the same actor is responsible for both the hiring and firing of the discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.  See Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173 (8th Cir. 1992) (finding argument that company developed aversion to older people less than two years after hiring member of protected age group "simply incredible"); Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is going to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."), *cert. denied*, 133 L. Ed. 2d 736 (1996).

Bradley v. Harcourt, 104 F.3d 267, 270-71 (9th Cir. 1996).

The plaintiff cannot rebut this inference.  There is no credible evidence that either Mr. San Miguel or Mr. Sayre was motivated by gender bias in criticizing plaintiff's performance of her job duties.  For the same reason, there is no basis to believe that Ms. Johnson was discriminated against based on her gender when Mr. Sayre and Mr. San Miguel decided to give her a 30-day deadline to address performance issues or face demotion (*not* termination).

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 18 of 28

SEADOCS:237711.3

6.    Plaintiff's harassment/hostile work environment claim is frivolous.

The standards for establishing a hostile work environment claim are well established under federal and state law.  See Faragher v. Boca Raton, 524 U.S. 775 (1998); Mahan v. Arctic Catering, 133 P.3d 655 (Alaska 2006).  Plaintiff is not alleging that Mr. San Miguel or any other Fred Meyer employee asked her for a date, touched her, made a sexist comment that she heard, made a sexist gesture that she saw, or engaged in any sexual conduct or comments behind her back.  There is no sexual harassment or evidence of a sexually hostile work environment in this case.  The harassment claim should be dismissed.

7.    Plaintiff's Title VII claim fails because she never alleged gender discrimination to the ASCHR.

Plaintiff cannot file a lawsuit against Fred Meyer on any Title VII claim without first processing a Title VII charge with the Equal Employment Opportunity Commission or its designated state agency.  42 U.S.C. 2000e-5(e)(1), (f)(1).  Plaintiff's original administrative complaint contains allegations of violation of the Age Discrimination in Employment Act and violations of Title VII.  On June 28, 2002, Ms. Johnson's amended complaint stated clearly that she was *not* filing a Title VII claim.  "The complaint was amended to delete the legal citation of Title VII of the Civil Rights Act of 1964 as amended."  See 29 C.F.R. § 16001.10 regarding withdrawal of charges.

Plaintiff has failed to pursue the administrative procedure required by Title VII of the 1964 Civil Rights Act before filing suit.  Therefore, she cannot now sue Fred Meyer on that claim.  More than 300 days have passed since the administrative agency issued the notice of right to sue letter.  Accordingly, all of plaintiff's 1992 Title VII claims against Fred Meyer are time barred and should be dismissed.

C.    **Plaintiff's Age Claim Should Be Dismissed Because She Was Not Constructively Discharged and the Discipline Was Unrelated to Her Age**

Plaintiff's age claims should also be dismissed because plaintiff cannot establish the discharge element of her *prima facie* case for the same reasons discussed in the

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 19 of 28

SEADOCS:237711.3

gender discrimination section above. <u>Supra</u>, Section 6.B. Similarly, any allegation of a hostile work environment claim based on age is as frivolous as plaintiff's claim of a hostile work environment due to her gender and should be dismissed for the same reason. <u>See</u> Section 6.B.6.

For the reasons discussed below, even if plaintiff could state a *prima facie* case of age discrimination, the age claims under state and federal law should be dismissed.

1.  <span style="color:blue"><u>Plaintiff cannot raise a genuine dispute that the discipline and warnings given were caused by age bias rather than the conditions in the apparel department.</u></span>

Plaintiff testified that she thought that Mr. San Miguel was motivated by age discrimination because he said that he wanted to hire "warm bloods." Dickens Decl., Ex. A, pp. 21, 22. Plaintiff denied that Mr. San Miguel meant applicants who were active, enthusiastic, moving around as opposed to just sitting. Dickens Decl., Ex. A, pp. 22, 23. Ms. Johnson did concede, however, that Mr. San Miguel could have meant people from warmer latitudes than Juneau, such as "people of Hispanic background" and "Filipino backgrounds," such as plaintiff. Dickens Decl., Ex. A, pp. 21, 22.

Ms. Johnson's replacement, Ms. Havard, was in her 20's, so plaintiff meets that element of her *prima facie* case. But Ms. Havard testified that Mr. San Miguel criticized her work, too.

> [I]t wasn't like Myrna – it wasn't just her that, you know, he complained about recoveries. It was other – other people. Like even myself. He complained about my recoveries too.

Havard Dep. at 16 (Dickens Decl., Ex. D, p. 5).

Mr. San Miguel wanted Ms. Havard to work until 2 a.m. in order to improve the recovery of the apparel department. She also complained that he did not provide adequate staffing and support to meet the standards that he attempted to impose. Dickens Decl., Ex. D, p. 7. Although 20 years younger than plaintiff, Ms. Havard also claimed that Mr. San Miguel pushed her out of the first assistant position a year after she was selected

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 20 of 28

SEADOCS:237711.3

because of unrealistic work expectations and assignment to the same evening shifts about

which Ms. Johnson complained.  Dickens Decl., Ex. A, pp. 13-15.

> There was, I mean, just e-mails back and forth, either that or,
> you know, he'd either argue about maybe something that was
> going on the floor.  You know, he wanted it done this way.  I
> thought it maybe should have been this way.

Havard Dep. at 27 (Dickens Decl., Ex. D, p. 8).

As a result of Mr. San Miguel's criticism, Ms. Havard transferred from the

apparel department to the jewelry department at Fred Meyer a year after she obtained the

first assistant position.  Dickens Decl., Ex. D, pp. 6, 7.  Thus, regardless of the age, both

Mr. San Miguel's first assistants in the 2001-2003 time frame complained that he worked

them too hard, his performance expectations were too high, and he scheduled them for

closing shifts which they did not want.  This is nothing more than a subordinate disagreeing

with her supervisor's standards – it is not discrimination.

Plaintiff's attempt to construe ambiguous terms such as "warm blood" or

other stray remarks as evidence of discrimination is insufficient to raise an issue of fact on

defendant's motion for summary judgment.  See Merrick v. Farmers Ins. Group, 892 F.2d

1434 (9th Cir. 1990) (employer's summary judgment upheld despite "stray remarks");

accord, Nesbitt v. Pepsico, 994 F.2d 703, 705 (9th Cir. 1993) ("Lawrence's comment was

uttered in an ambivalent manner and was not tied directly to Nesbitt's termination.  It is at

best weak circumstantial evidence of discriminatory animus toward Nesbitt.").

2.    Same actor inference applies to age claim.

Unlike gender discrimination claims, the same actor inference is frequently

inapplicable to age discrimination cases for the simple reason that an employee does not

obtain protected status until she reaches 40 years of age.  However, when the time span

between the same actor's promotion of the plaintiff and disciplinary action against the

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 21 of 28

SEADOCS:237711.3

plaintiff is short or the time span between a plaintiff's hiring and termination is short, the courts apply the "same actor" inference to age claims.

> If plaintiff had been 40 when he was hired, and 65 when he was fired, obviously this fact would not be so compelling. But here, *the lapse of time was less than two years.* It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age 51 had suddenly developed an aversion to older people less than two years later.

Lowe v. J.B. Hunt Transport, 963 F.2d 173, 175 (8th Cir. 1992) (emphasis added) (court of appeals upheld district court's entry of directed verdict for defendant). Accord, Hill v. BCTI Income Trust Fund-I, 144 Wn.2d 172, 189-90, 23 P.3d 440 (2001); Barker v. Advanced Silicon, 131 Wash. App. 616, 625, 128 P.3d 633 (2006) (plaintiff "must overcome a strong inference that the adverse decision was discrimination when the same decision-maker has hired or promoted the plaintiff in the recent past. The plaintiff must produce evidence sufficient to reconcile the inherent contradiction.").

Mr. San Miguel promoted Ms. Johnson in 2001 and issued her an "Employee Warning Notice" in March 2002 telling her that she had to improve in 30 days or face demotion. No comment was made by Mr. San Miguel or Mr. Sayre about terminating her employment because of these performance issues. Plaintiff's claim that Mr. San Miguel developed a bias against older workers who went from age 48 to age 49 during that one-year time span is equally implausible. Defendant is entitled to the inference of nondiscrimination from the same actor defense and is entitled to summary judgment on the state and federal age discrimination claims.

### D.    Parental Discrimination

Considering all the discrimination claims, this claim is the most implausible. Plaintiff worked for Mr. San Miguel for six years (1996-2002). Until February 2002, plaintiff's daughter lived at home with her. Mr. San Miguel even attended plaintiff's daughter's birthday party. Dickens Decl., Ex. A, p. 12.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 22 of 28

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Plaintiff claims in her complaint that as soon as plaintiff's daughter moved to the Philippines in February 2002, Mr. San Miguel suddenly developed a bias against plaintiff because she was a mother. This allegation strains credulity. As if this discrimination claim was not implausible enough, Mr. San Miguel was a father during the full six years he supervised plaintiff. Dickens Decl., Ex. B, p. 5A. The Supreme Court held 20 years ago that when a party's claim is implausible on its face, the party opposing summary judgment has an even greater burden overcoming a motion for summary judgment.

> It follows from these settled principles that if factual context renders respondents' claim implausible – if the claim is one that simply makes no economic sense – respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.

Matsushita Elec. Indus. Co. v. Zenith Radio, supra, 475 U.S. at 587. Plaintiff's allegation of parental discrimination appears to be little more than an additional discrimination basis thrown into the administrative complaint and then copied into the court complaint without any supporting evidence.

The defendants are entitled to summary judgment on this claim also.

**E.     Plaintiff Cannot State a Claim for Wrongful Discharge Under the Family and Medical Leave Act ("FMLA")**

An employer cannot discharge an employee for taking leave that an employer is required to provide the employee under FMLA.

> The proscriptive FMLA rights include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave. Claims for violations of these rights are brought under [29 U.S.C.] § 2615(a)(2).

Haley v. Alliant Compressor, LLC, 391 F.3d 644, 649 (5th Cir. 2004).

The Ninth Circuit has held that under the applicable regulation [29 C.F.R. § 825.220(c)], the employee must first show that he or she was eligible for leave in order to bring a discrimination claim.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 23 of 28

SEADOCS:237711.3

> The pivotal question in this case, then, is only 'whether the plaintiff has established, by a preponderance of the evidence, that [s]he is entitled to the benefit [s]he claims.' <u>Diaz</u>, 131 F.3d at 713.

<u>Bachelder v. America West Airlines, Inc.</u>, 259 F.3d 1112, 1126 (9th Cir. 2001).

To establish her right to FMLA leave, plaintiff was required to provide a medical certification that her daughter's trip to the Philippines was part of treatment for a serious health condition, and that plaintiff went to care for her daughter for this serious health condition. 29 C.F.R. § 825.112(a)(3), (g). Plaintiff had to show that her daughter was receiving "treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider." 29 C.F.R. § 825.114(d). Absence because of "use of substance, rather than for treatment does not qualify for FMLA leave." <u>Id.</u>

Plaintiff never provided Fred Meyer with the requisite medical evidence to raise an issue of fact that her daughter received three weeks of substance abuse treatment in the Philippines and was, therefore, eligible for FMLA leave. Moreover, there is absolutely no evidence that the defendant took any negative employment action as a result of her application for FMLA leave. The evidence is undisputed that at the store level both Mr. Sayre and Mr. San Miguel provided the corporate applications she needed to obtain store-level approval for her personal leave and corporate approval in Portland for FMLA leave. The FMLA application was not approved at corporate only because plaintiff failed to submit the requisite health certification. Nevertheless, the Juneau store managers returned plaintiff to her original position at her original pay immediately upon her return as a result of her personal leave. Plaintiff obviously did not like Mr. San Miguel's criticism of her job performance upon her return, but the criticism is unrelated to her request for FMLA leave. A FMLA plaintiff must

> prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 24 of 28

SEADOCS:237711.3

like any ordinary statutory claim, by using either direct or
circumstantial evidence, or both.

<u>Bachelder</u>, 259 F.3d at 1125.

Plaintiff has no evidence, direct or circumstantial, that her application for
FMLA leave had any role whatsoever in her performance evaluation and Mr. San Miguel's
criticism of that performance in March 2002.  The defendant is entitled to summary
judgment on the FMLA claim.

**F.**    **Fred Meyer Employed the Plaintiff At Will and Is Entitled to Summary Judgment on the Covenant of Good Faith and Fair Dealing Claim**

Alaska law makes a clear distinction between at-will and "for cause"
employment.  <u>See</u> <u>Era Aviation, Inc. v. Seekins</u>, 973 P.2d 1137, 1139 (Alaska 1999).
"Employees hired on an at-will basis can be fired for any reason that does not violate the
implied covenant of good faith and fair dealing."  <u>Seekins</u>, 973 P.2d at 1139, <u>quoting</u>
<u>Luedtke v. Neighbors Alaska Drilling, Inc.</u>, 768 P.2d 1123, 1130-31 (Alaska 1989).  This
implied covenant prevents employers from firing an at-will employee (1) in order "to
unfairly deprive an employee of benefits contemplated by the employment contract," such as
a promise to share the business profits (subject to bad faith) or (2) for a disparate action
(objective bad faith).  <u>Seekins</u>, 973 P.2d at 1139-40.  Thus, [t]he subjective aspect prohibits
an employer from terminating an employee for the purpose of depriving the employee of a
contract benefit, and the objective aspect requires an employer to act in a manner that a
reasonable person would regard as fair."  <u>Chijide Maniilaq Assoc. of Kotzebue</u>, 972 P.2d
167, 172 (Alaska 1999).

Plaintiff alleges in her complaint that the defendants breached a common law
covenant "by terminating plaintiff when she left work because she was emotionally
distraught over defendant's unlawful discriminatory, harassing, and retaliatory conduct
towards her."  Plaintiff has not alleged that the defendants terminated her because it wanted
to deprive her of some specific contractual benefit.  <u>See</u> <u>Pitka v. Interior Reg'l Hous. Auth.</u>,

MILLER NASH LLP
ATTORNEYS AT LAW
601 UNION STREET, SEATTLE WA 98101-2352
4400 TWO UNION SQUARE
TELEPHONE: (206) 622-8484

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 25 of 28

SEADOCS:237711.3

54 P.3d 785, 789 (Alaska 2002). Plaintiff has not alleged the subjective prong for such a termination, which "is not based on the employee's personal feelings but rather on the employer's motives." Plaintiff's allegations are based on her feelings, and this is insufficient to state a claim.

Plaintiff acknowledged in her testimony that she twice signed Fred Meyer's Employee Responsibility Form which states that the employer would consider an action such as walking off the job or failing to show up for a scheduled shift to be a voluntary resignation. She acknowledges that she walked off the job. She does not contest the fact that she did not show up for any of her additional scheduled shifts for the remainder of the week. There is no indication that the defendants wanted to deprive her of any particular contract benefit. To the contrary, the defendants did not want her to quit; they merely asked her to improve her work performance.

The objective prong of the covenant is breached where the employer does not act in a manner that a reasonable person would consider fair, which has limited application. Pitka, 54 P.3d at 789. Here, plaintiff contends it was unfair that her employment was designated as a voluntary resignation when she walked off the job and failed to return for any of her scheduled shifts. Although "disparate employee treatment, terminations on unconstitutional grounds, and filings that violate public policy are examples of actions that may violate the objective aspect of the implied covenant," plaintiff cannot allege any of those actions in this case. Plaintiff cannot establish that Fred Meyer ever allowed employees to keep their jobs, if they walked off the job and then failed to show up for their remaining shifts.

Plaintiff cannot establish a breach of either the subjective or the objective prong of the covenant of good faith and fair dealing. Therefore, her claim for breach of the covenant must be dismissed.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 26 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

**G.    Plaintiff Cannot Establish a Claim of Tortious Inference with Contract**

Plaintiff alleges that the defendant tortiously interfered with her contract with a Fred Meyer vendor by requiring the plaintiff to only build the vendor's displays when the apparel manager was working at the store.

> To establish a claim of tortious interference with a contract, a plaintiff must show:  (1) an existing contract between it and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of the defendant causing the breach; (5) damages;  and (6) absence  of  privilege  or  justification  for  defendant's conduct.

K&K Recycling v. Alaska Gold Co., 80 P.3d 702, 716 (Alaska 2003).

Defendant has not seen a contract between the plaintiff and the vendor, so defendant does not know about the specifics of any contract.  Plaintiff has the burden to establish the contract terms.  The defendants did know plaintiff was working for the vendor because she came in the store and built displays for the vendor.

Defendants also have no knowledge, however, of any contract breach. Plaintiff alleges in her complaint that defendants constructively discharged her[4] from her vendor position also.  Plaintiff apparently alleges the requirement imposed by apparel manager San Miguel that plaintiff be in the Fred Meyer store when the apparel manager was in the store created an intolerable working environment.  This allegation is absurd.  Based on the breach element alone, the claim should be dismissed.

Moreover, defendant Fred Meyer has every legal right to tell its vendors when they can come into the store and when and where in the store they can build displays in the Fred Meyer store.  If Fred Meyer wants the department manager to be working to approve the display, it obviously has the right to do so.

---

[4] Defendants are not aware of any case or other legal authority that supports this allegation that a third party can constructively discharge some other employer's employee.  The complaint alleges Fred Meyer constructively discharged plaintiff's employment by a third party employer.  Complaint, Cause of Action VI.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 27 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE: (206) 622-8484

Because the defendant's actions were justified, this claim also should be dismissed.

## VII. CONCLUSION

The defendants respectfully ask that their motion be granted and all plaintiff's claims dismissed with prejudice.

DATED this 31st day of July, 2006.

<div style="margin-left:40%">

MILLER NASH LLP

s/ James R. Dickens
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
Phone: (206) 622-8484
Fax: (206) 622-7485
E-mail: jim.dickens@millernash.com
Admitted *pro hac vice*


GRUENSTEIN & HICKEY

s/ Peter Gruenstein
Gruenstein & Hickey
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK 99501
Phone: (907) 258-4338
Fax: (907) 258-4350
E-mail: ghlaw@gci.net
ABA No. 7910079

Attorneys for Defendants

</div>

Certificate of Service

I hereby certify that on July 31, ,2006,
A copy of the foregoing was served
electronically on:

Mark Choate
lawyers@choatelawfirm.com

s/ James R. Dickens

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 28 of 28

SEADOCS:237711.3

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484