BEFORE THE ALASKA STATE COMMISSION OF HUMAN RIGHTS

MYRNA I. JOHNSON, )
 )
   Plaintiff )
 )
 )
vs. )
 )
FRED MEYER STORES, INC. )
 )
   Defendants )
 )
 ) ASCHR No. C-02-132

### AFFIDAVIT OF PAZ CARRILLO

I, Paz Carrillo, being first duly sworn upon oath, depose and state as follows:

1. I am more than 19 years of age, and competent to testify regarding these matters, based on personal knowledge and belief.

2. My mailing address is P.O. Box 33394, Juneau, AK 99803.

3. I first began working at the Juneau store of Fred Meyer, Inc. ("Juneau Store") in 1995, as a part-time sales clerk in the apparel department.

4. I got acquainted with Myrna Johnson when I first began working at the Juneau Store because, during the time we both worked at the Juneau Store, she was one of my supervisors.

5. I saw Myrna Johnson on a regular basis at work – and I typically worked two or three times a week at the Juneau Store.

6. I worked in the apparel department until May of 2003, when I began working in the jewelry department.

7. I currently am employed by the Juneau Store and continue to work in the

MJ Exhibit 28   Page 1 of 3
Exhibit H
page 12 of 18
Johnson v. Fred Meyer Stores, Inc.,
Affidavit of Paz Carrillo
ASCHR No. C-02-132
Page 1 of 3

jewelry department there.

8. During the years that I worked with Ms. Johnson at the Juneau Store, she was a very hard worker, a good supervisor, a kind person, and had very good communication skills.

9. In or about mid-March of 2002, Ms. Johnson returned from a medical leave that involved taking care of her daughter.

10. Shortly after she returned from that leave, she informed me and other members of the evening staff that Jaime San Miguel had criticized our recovery the previous evening.

11. The term "recovery" at the Juneau Store means that the store merchandise was in order at the end of the evening when the Juneau Store closed.

12. I had been through my area at the close of business on the preceding evening, and everything was in order.

13. Ms. Johnson showed me a photograph of the displays in my area that she had been given, which had supposedly been taken first thing in the morning by San Miguel and Fred Sayre.

14. The photograph from San Miguel showed displays in my area that had signs on the merchandise displays which were slightly askew.

15. After we had been told about the signs being askew, I walked through my area to straighten the signs.

16. I thought then, and still think this now, that San Miguel's photograph must have taken around 9 a.m. – in other words, after the Juneau Store had been open to customers for two hours – since several areas in the Apparel Section looked as if they either had been poorly recovered, or early customers had been through them already.

17. This is the only time in my career at the Juneau Store that I can recall photographs being taken of a work area.

*MJ Exhibit 28    Page 2 of 3*

Johnson v. Fred Meyer Stores, Inc.,
Affidavit of Paz Carrillo

Exhibit H
page 11 of 18 

ASCHR No. C-02-132
Page 2 of 3

18. My reaction when I saw the photograph was that San Miguel was giving Ms. Johnson a hard time and that he was nitpicking.

19. The next day, San Miguel told her that the Levi's, Lee Jeans, and Dockers slacks should have been arranged by size, and thus felt our recovery had been unsatisfactory.

20. I was surprised to hear this criticism because I had been doing recovery in the apparel department since 1995, the area involving women's slacks and jeans was my area, and at no time had anybody ever criticized our recovery for that reason.

21. A day or two later, San Miguel told the night crew that Ms. Johnson was no longer working at the Juneau Store.

DATED this 7th day of June, 2004.

*Paz Carrillo*

SUBSCRIBED and SWORN TO before me this 7th day of June, 2004.



*Heather A. Hildebrand*
Notary Public, State of Alaska
My commission expires: 07/04/07

Exhibit page 12 of 18

MJ Exhibit 28     Page 3 of 3

*Johnson v. Fred Meyer Stores, Inc.,*
Affidavit of Paz Carrillo

ASCHR No. C-02-132
Page 3 of 3