# DECLARATION OF JAMES R. DICKENS
# EXHIBITS A-G

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

MYRNA I. JOHNSON,            )
                             )
        Plaintiff,           )
                             )
v.                           )
                             )
FRED MEYER STORES, INC.,     )
a Delaware corporation;      )
and JAIME SAN MIGUEL,        )
                             )
        Defendants.          )
_____)

Case No. J04-008 CV (JKS)

VIDEOTAPED DEPOSITION OF JOHNNA HAVARD
Pages 1 through 115, Inclusive
Taken: Wednesday, January 25, 2006
Place: Juneau, Alaska


Exhibit A Page 1 of 3

Page 60

1  something." I said, "No, I'm not going to do
2  anything until he's here."
3          So they called him. And then I
4  also said, "Well, I want Mary Lucas involved." So
5  Fred Sayre, once he got up there, he called her
6  too. And she was involved on the speakerphone as
7  well. And then that's when, pretty much, corporate
8  became involved in what was going on.
9      Q.    Okay. And as I understand, then, you
10 were complaining about the way you were being
11 treated in that situation?
12     A.    I did. Yes.
13     Q.    And when corporate became involved,
14 what happened?
15     A.    Corporate became involved. Like I
16 said, I did the steps I needed to take, even before
17 that, about what was going on, how I was being
18 treated. I mean, I never really had a slump in my
19 work performance, but according to Jaime, I was. I
20 mean, I didn't think it was.
21          But anyway, so I complained to
22 Dennis Affleck, Jaime's boss, or I went to Fred
23 Sayre. Then I went to Dennis Affleck. Then I went
24 to Jim Hill and Ken Haverkost, the operations
25 manager and director. And then I went to Mary

Page 61

1  Lucas. And then, like I said, Mary Lucas is the
2  one before -- she was the one that would actually
3  do something about it.
4       Q.    Okay.
5       A.    And as far as I know, she's not working
6  for the company anymore either.
7       Q.    Okay.
8       A.    But after that, they flew in a jet
9  plane maybe a week or two -- it wasn't very long
10 after that -- and they were here.
11      Q.    And what happened at the meeting?
12      A.    Jaime and I and Ken Haverkost, Mary
13 Lucas, and I believe Fred Sayre were in the meeting
14 in the manager's office, and we were to try and
15 resolve the issues that were going on without
16 anybody being written up or anything.
17      Q.    Okay. Did you believe that you were
18 placed on the graveyard shift because you had
19 complained about Jaime, Mr. San Miguel?
20            MR. DICKENS: You can't -- object.
21 That calls for speculation. It has though
22 relevance to any issues in this lawsuit.
23            Go ahead.
24      A.    Do you still want me to go on?
25      Q.    Do you believe that you were placed on

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT JUNEAU


MYRNA I. JOHNSON,

        Plaintiff,

  vs.                             Case No.

FRED MEYER STORES, INC.,      J-04-008 CV (JWS)

and JAIME SAN MIGUEL,

        Defendants.


VIDEOTAPED DEPOSITION OF

KEN HAVERKOST

Taken in behalf of the Plaintiff

May 25, 2006

\* \* \*


**DUPLICATE ORIGINAL**

Exhibit B  Page 1 of 3



BEOVICH WALTER & FRIEND
Certified Court Reporters

(503) 228-7201
1001 S.W. Fifth Avenue, Suite 1200, Portland, Oregon 97204
1-800-541-4452   Fax: (503) 228-3978

Page 45

|   |   |   |
|---|---|---|
|   | deposition tomorrow. |   |
|   | Would the -- the Apparel regional supervisor at the time of Ms. Johnson's departure from employment with Fred Meyer have been Mr. Affleck? | 11:11 AM |
| A. | Yes. | 11:11 AM |
| Q. | Okay. And when you referred me to him, it's because he would have had responsibility for -- regionally for the recruitment, training, I guess -- I assume evaluation of Apparel managers? | 11:11 AM |
| A. | Yes; the management program in general, yes. | 11:11 AM |
| Q. | While you were the regional -- while you were the regional director for the Puget Sound region, were you aware of -- of any programs in place to -- strike that. I'll strike that question. | 11:12 AM |
|   | While you were the regional director for the Puget Sound North region, did you ever receive any complaints regarding Jaime San Miguel? | 11:12 AM |
| A. | I had one conversation with a store director about Jaime, but I don't recall the actual content of it other than it had something to do with his attendance at work. | 11:13 AM |

| | | | |
|---|---|---|---|
| 1 | Q. | And do you know if that conversation was | 11:13 AM |
| 2 | | ever memorialized in writing in any fashion, | |
| 3 | | like an e-mail or a memo of some kind? | |
| 4 | A. | Not that I'm aware of. | 11:13 AM |
| 5 | Q. | And do you recall anything more about the | 11:13 AM |
| 6 | | conversation other than something about | |
| 7 | | Mr. San Miguel's attendance at work? | |
| 8 | A. | I -- I -- I had talked to Fred, just | 11:13 AM |
| 9 | | ensuring that Jaime was showing up on time | |
| 10 | | and doing his job as required. | |
| 11 | Q. | Now, when you said you talked to Fred, was | 11:14 AM |
| 12 | | that -- who brought up the question of | |
| 13 | | whether he was -- he was attending work as | |
| 14 | | expected?  Did Mr. Sayre bring it up or did | |
| 15 | | you bring that up? | |
| 16 | A. | I can't remember where the information came | 11:14 AM |
| 17 | | from, but I brought it up with him. | |
| 18 | Q. | Okay.  Did you have any understanding as to | 11:14 AM |
| 19 | | why Mr. San Miguel might not have -- might | |
| 20 | | have been having some problems with | |
| 21 | | attendance? | |
| 22 | A. | Someone had -- I can't recall the source, | 11:14 AM |
| 23 | | but someone had told me that he had -- had | |
| 24 | | been showing up late in the mornings. | |
| 25 | Q. | Okay.  Did anyone ever -- from any source, | 11:14 AM |

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

MYRNA I. JOHNSON,                )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )
FRED MEYER STORES, INC.,         )
a Delaware corporation;          )
and JAIME SAN MIGUEL,            )
                                 )
        Defendants.              )
_____)

Case No. J04-008 CV (JKS)

VIDEOTAPED DEPOSITION OF JAIME SAN MIGUEL

Pages 1 through 270, Inclusive

Taken: Tuesday, January 24, 2006

Place: Juneau, Alaska

Exhibit C  Page 1 of 3

1   A.   No. Huh-uh.
2   Q.   I'm going to go through some additional
3   documents here. We're getting there.
4        Oh, let's -- I don't know if we
5   want to mark this as an exhibit, but I have been
6   given, in sort of supplemental disclosures or
7   discovery from your counsel, what has been
8   represented to be a copy of your personnel file,
9   which has Bates numbers of 200182 through 200313.
10       And you had a chance to review
11  this during the break; is that correct?
12  A.   I went over it, yes.
13  Q.   To the best of your knowledge, is this
14  a complete copy of your personnel file?
15  A.   It seems to be.
16  Q.   Okay. Have you ever received any
17  discipline at Fred Meyer?
18  A.   I think once in 1996.
19  Q.   Okay. And what type of discipline was
20  that?
21  A.   Actually, pretty similar to this. My
22  supervisor came in and talked to me. And I can't
23  remember exactly what it was that was not done.
24  And asked me to do it again. And I didn't do it.
25  And he pulled me aside and just kind of went

Exhibit C Page 2 of 3

1  through the same exercise. Talked to me and told
2  me, "Hey, I asked you for two days. You haven't
3  done it. You know, take this as being your verbal
4  warning because I talked to you twice about
5  completing this project, and it was not done." And
6  I said, "Okay. I'll make sure I get it done," and
7  that was the only time that I have been disciplined
8  at Fred Meyer.
9     Q. Okay. And did you get a writing like
10 that Exhibit 18 from him?
11    A. Yes, something like this. And he said
12 that was a verbal warning and if, in fact, that
13 particular task -- and I wish I could remember what
14 it was, but I can't -- was not done, that he was
15 going to give me a write-up, and that he'll send
16 both of them to the regional office.
17    Q. And no others that you are aware of?
18    A. That I'm aware, no.
19       MR. CHOATE: Actually, let's mark
20 this as --
21       THE REPORTER: Exhibit 28?
22       MR. CHOATE: Yes.
23       THE REPORTER: Exhibit 28.
24       (Exhibit 28 duly marked)
25       MR. DICKENS: Thanks.

Exhibit C Page 3 of 3

CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99801
Telephone: (907) 586-4490
Facsimile: (907) 586-6633

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT JUNEAU

MYRNA I. JOHNSON,

    Plaintiff,

vs.

FRED MEYER STORES, INC., and
JAIME SAN MIGUEL,

    Defendants.

Case No. J-04-008 CV (RRB)

### NOTICE OF DEPOSITION OF JAIME SAN MIGUEL

TO: DEFENDANTS AND THEIR COUNSEL

PLEASE TAKE NOTICE that counsel for plaintiff(s) will take the deposition of defendant JAIME SAN MIGUEL on the 2nd day of November, 2006 starting 10:00 am at Choate Law Firm LLC, located at 424 N Franklin St. Juneau, AK 99801, before Glacier Stenographic Reporters, a qualified court reporter.

Said deposition will continue from day to day until completed. You are invited to attend and cross-examine.

DATED this 18th day of October, 2006.

Respectfully submitted,
CHOATE LAW FIRM LLC

MARK CHOATE # 8011070
JESSICA L. SRADER #0412105
Attorneys for Plaintiff

1 of 2
*Johnson, Myrna v Fred Meyers (J-04-008 CV RRB) [23003].*
NOTICE OF DEPOSITION
J-04-008 CV (RRB)

Exhibit ___D___ Page __1__ of __1__



COPY



**CHOATE LAW FIRM** LLC
TRIAL LAWYERS

ALASKA · CALIFORNIA · HAWAII

424 North Franklin Street
Juneau, Alaska 99801
Telephone (907) 586-4490
Facsimile (907) 586-6633
lawyers@choatelawfirm.com

October 26, 2006                    Faxed Only to: (206) 622-7485

James Dickens
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352

    Re:   Notice of Postponement of San Miguel's Second Deposition Pending Ruling From Court
    Case:   *Johnson, Myrna v Fred Meyer (J-04-008 CV RRB)* [23003]
    Client:   Myrna Johnson
    CLF:   23003
    D/O:   March 18, 2002

Dear Jim:

I'm going to postpone the scheduled second deposition of Jaime San Miguel set for next Thursday, November 2, 2006. I will file by that date a motion with Judge Beistline asking for discovery sanctions under FRCP 37 for the defendants' failure to disclose that (1) Mr. San Miguel and (2) Mr. Sayre were both subject to discipline for their conduct in late 2002 and early 2003.

Upon receiving an Order from Judge Beistline, I'll reschedule Mr. San Miguel's deposition.

Sincerely,

Mark Choate
CHOATE LAW FIRM, LLC

cc: Client

Exhibit __E__ Page __1__ of __1__

# MILLER NASH LLP

**ATTORNEYS AT LAW**

Miller Nash LLP
www.millernash.com
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
(206) 622-8484
(206) 622-7485 fax

3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204-3699
(503) 224-5858
(503) 224-0155 fax

500 E. Broadway, Suite 400
Post Office Box 694
Vancouver, WA 98666-0694
(360) 699-4771
(360) 694-6413 fax

**James R. Dickens**
jim.dickens@millernash.com

October 26, 2006

**VIA FACSIMILE (907) 586-6633**

Mark Clayton Choate
Choate Law Firm LLC
424 North Franklin Street
Juneau, AK 99801

Subject: *Johnson v. Fred Meyer* – Deposition of Jaime San Miguel

Dear Mark:

      I received your October 26, 2006, letter canceling Jaime San Miguel's second deposition set for November 2, 2006, and stating that you will file a motion with the court asking for discovery sanctions. I question the appropriateness of any such motion. The basis for your earlier motion to extend discovery to take two supplemental depositions (Mary Hill and Jaime San Miguel) was because Fred Meyer's response to plaintiff's May 26, 2006, discovery requests included documents you contended should have been produced earlier. While we disagreed, the court did permit you to take the two supplemental depositions but not for more than two hours each.

      After the court's order, we cooperated with you to produce a former employee, Mary Hill, in Portland, Oregon, without your need to subpoena her, at a mutually convenient date. We also advised you of available dates to depose Mr. San Miguel. After receiving your notice for the supplemental deposition of Mr. San Miguel on November 2, 2006, we then made non-refundable travel arrangements this week to fly to Juneau for Mr. San Miguel's deposition. Accordingly, we will not only oppose any motion for discovery sanctions (I still do not know the basis therefor), but we will oppose any attempt to depose Mr. San Miguel on another date. The prior order granted you this opportunity, we agreed on the date of November 2, 2006, and in reliance upon your deposition notice for November 2, 2006, we incurred expenses and made arrangements for that date.

Very truly yours,

Jim

James R. Dickens

cc: Fred Meyer Stores, Inc.
     Jaime San Miguel
     Peter Gruenstein

Exhibit F Page 1 of 1

SEADOCS:197137.28

**Dickens, James R.**

| | |
|---|---|
| From: | Dickens, James R. |
| Sent: | Thursday, November 02, 2006 3:13 PM |
| To: | Mark Clayton Choate (mark.choate@choatelawfirm.com) |
| Cc: | Fadaie, Gill; Peter E. Gruenstein (ghlaw@gci.net) |
| Subject: | Your 10/27 letter |

Mark -

I just saw your October 27 letter yesterday, Nov. 1. I tried to call you yesterday afternoon to discuss, but was told that you were in a meeting and unavailable. It appears that your letter was faxed late last Friday evening, about 7 pm Seattle time, and I do not know why or how we missed it earlier, but I just saw it in looking through the *Myrna Johnson v. Fred Meyer* file yesterday afternoon.

Yes, I am aware of Mary Hill's recollection last week about an alleged discipline of Jaime San Miguel after the January 13, 2003, visit to Juneau. I do not believe Ms. Hill's recollection about this situation is accurate. Remember, she has been gone from Fred Meyer for over three years and given all that she does, it is not unreasonable that her recollection may not be right on this issue. Fred Meyer is very up front about producing all requested documents and has never, in the 20 years in which I have represented the company, wilfully withheld any documents. And as an officer of the court, neither have I, nor would I. Accordingly, your suggestion that documents have been withheld is without merit. I understand that with Ms. Hill's testimony you need to double-check to see if anything slipped through the cracks, but there is nothing of which we are aware. Fred Meyer has produced all files it could find on Mr. San Miguel and there is nothing in any of them that suggests he was ever given a "Last and Final" warning for not being at work as scheduled. If you closely review the documents on which you most recently examined Ms. Hill, there is no reference to a "Last and Final" warning to Mr. San Miguel. We have conferred with Mr. San Miguel and represent to you that he has no memory or record of such a warning, which he would have had to sign, and this is the type of discipline that he would remember. He does remember the two days of interviews by Ms. Hill and the regional VP about Jan. 13, 2003, and the final meeting with them, Mr. San Miguel, Ms. Havard, and Mr. Sayre. Suggestions on how to address the questionable claims made by Ms. Hill were proferred and both Ms. Havard and mr. San Miguel voiced their concerns about the other, as set forth in two of the handwritten notes by Ms. Hill. But Mr. San Miguel's deposition testimony that the only "discipline" which he recalls is the 1996 situation is all that we have seen in the many documents from Fred Meyer.

Let me make one more observation: why would we not disclose a last and final warning notice to Mr. San Miguel in January 2003 if it occurred? The alleged timing is almost one year after the termination of Ms. Johnson, and we believe (as you know from our *motions in* limine) that events this long after Ms. Johnson walked out of the meeting in March 2002 are irrelevant, and the alleged discipline is not for any actions that relate to any of her claims either. There is no reason for Fred Meyer not to produce such a document if it existed.

Fred Meyer has produced about 2000 documents and has given you (and the three prior attorneys) ample opportunity to take timely depositions and follow up. You already made the argument to extend discovery and the court permitted you to take two more deps after the close of discovery, and you cancelled the second one previously set for today of Mr. San Miguel. On behalf of defendants, we are not agreeable to reopening discovery. There is a time for closure and that time has come. Let's see what the court decides with regard the pending motions.

Jim

*James R. Dickens*
*Miller Nash* LLP
Please note my new email address
*jim.dickens@millernash.com*
*(206) 622-8484*

**Confidentiality Notice:** This email message may contain confidential and privileged information. If you have received this message by

1

Exhibit G Page 1 of 1