IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MYRNA I. JOHNSON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FRED MEYER STORES, INC., a Delaware Corporation, and JAIME SAN MIGUEL,<br><br>　　　　Defendants. | Case No. 1:04-CV-0008-RRB<br><br>**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT AT DOCKET 45** |

**I.    INTRODUCTION**

Before the Court are Defendants Fred Meyer Stores, Inc. and Fred Meyer supervisor Jaime San Miguel (collectively "Defendants") with a Motion for Summary Judgment at Docket 45. Plaintiff Myrna I. Johnson ("Plaintiff") opposes at Docket 56 and argues that her claims for age and parental status discrimination and for breach of the covenant of good faith and fair dealing raise triable issues of fact.[1]

---

    [1]    Plaintiff has withdrawn her claims for gender discrimination, violation of the Family and Medical Leave Act, and tortuous interference with business relations.  See Docket 56 at 7 n.1.

For the reasons set forth herein, the Court **GRANTS** Defendants' Motion on Counts I-IV and VI of Plaintiff's Complaint. The Court **DENIES** Defendants' Motion on Plaintiff's Count V for breach of the covenant of good faith and fair dealing.

**II.  FACTS**

Plaintiff (born: 9/23/1952) immigrated from the Philippines with her three daughters and married an American in 1988.  In 1992, she moved to Juneau with her family and began working at Fred Meyer.  In 1996, she was promoted to be "Second Assistant" or "Relief Assistant" in the apparel department, where she worked along side Defendant Jaime San Miguel (the First Assistant).  When San Miguel was later promoted to Apparel Manager, he recommended Plaintiff to become his First Assistant.

In January 2002, Plaintiff traveled to the Philippines for two weeks to visit extended family.  Upon her return to Juneau in February, she discovered that her then 17-year-old daughter had run away from home.  San Miguel allowed Plaintiff to take multiple days of leave to locate her daughter and arrange for her to be hospitalized for substance abuse treatment.  Plaintiff requested and received additional leave to care for her daughter.  She thereafter took her daughter to the Philippines to live with extended family and spent the next month tending to her daughter. Fred Meyer transferred Johnna Havard, a single female in her

twenties who worked as a Second Assistant Apparel Manager in Wasilla, to Juneau to temporarily assume Plaintiff's responsibilities.

Plaintiff returned to Juneau from the Philippines on March 10, 2002. During Plaintiff's first six days back at work (March 12-18), Plaintiff received several emails from San Miguel in which he criticized the closing shift recoveries and displays that were not timely or properly set up.[2] She was told that her work was "a step backwards" from the weeks during her leave,[3] and that "expectations are a lot higher now."[4]

After closing on Sunday, March 17, San Miguel and Fred Meyer Juneau store director Fred Sayre asked Plaintiff to meet them in the following day in Sayre's office.[5] On March 18, Sayre and San Miguel read Plaintiff an "Employee Warning Notice" which required her to improve over the next 30 days or be removed from her position as first assistant.[6]

There are factual disputes regarding Plaintiff's reaction to the Warning Notice and statements allegedly made by Sayre and

---

[2]   See Docket 46, Ex. A at 88-97, Ex. M at 1, Ex. N at 1, Ex. O at 1, Ex. P at 1.

[3]   Docket 56, Ex. 24 at 1.

[4]   See id.; Docket 46, Ex. A at 43-44.

[5]   Docket 46, Ex. A at 45-46.

[6]   Id. at 47; see also id., Ex. Q at 1.

San Miguel. Plaintiff alleges that she became emotionally distraught, began to cry, and said she needed to leave the room to get a glass of water and have more space.[7] Defendants assert that Sayre warned Plaintiff three times that if she walked out of the meeting it would be considered a voluntary resignation.[8] Plaintiff denies hearing such a warning.[9] Within a few minutes of Plaintiff's departure, San Miguel and Sayre called the Human Resources department in Portland to report that Ms. Johnson had "walked off" the job.[10]

After Plaintiff's termination, Fred Meyer posted the First Assistant Apparel Manager job opening on the Fred Meyer intranet and two applicants applied. Johnna Havard was selected and moved to Juneau in April of 2002.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of

---

[7] Docket 56, Ex. 33 at 7-9.

[8] Docket 46, Ex. B at 21-22, Ex. C at 3.

[9] Docket 46, Ex. A at 51-53.

[10] Docket 56, Ex. 4 at 22.

showing that there is no genuine dispute as to material fact.[11] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[12]

Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[13] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[14] The nonmoving party may not rest upon mere allegations or denials, but must present sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[15]

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases"[16] and "'require[s] very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one

---

[11]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[12]   Id. at 323-325.

[13]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[14]   Id. at 255.

[15]   Id. at 248-49.

[16]   Schnidrig v. Columbia Mach. Inc., 80 F.3d 1406, 1410 (9th Cir. 1996).

that can only be resolved through a "searching inquiry" . . . most appropriately conducted by the factfinder, upon a full record.'"[17]

## IV. DISCUSSION

### A. Age Discrimination

Count II of Plaintiff's Complaint alleges a cause of action against Defendant Fred Meyer for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[18] Count IV alleges a similar cause of action under the Alaska Human Rights Act, Alaska Stat. 18.80.010 et. seq.[19] Defendant moves for summary judgment and asserts that Plaintiff cannot establish triable issues of fact.

The United States Supreme Court outlined the standards applicable to Title VII[20] claims in McDonnell Douglas Corp. v. Green.[21] Under McDonnell Douglas, a plaintiff must first make a prima facie case of discrimination.[22] "When a motion for summary

---

[17]   Id. (quotations omitted).

[18]   See Docket 1 at 16.

[19]   Id. at 19.  The Court applies the same analysis to Plaintiff's federal and state age discrimination claims.  See Thomas v. Anchorage Tel. Util., 741 P.2d 618, 629 (Alaska 1987).

[20]   "The criteria applied to a Title VII discrimination claim also apply to claims arising under the ADEA."  Palmer v. United States, 794 F.2d 534, 537 (9th Cir. 1986).

[21]   411 U.S. 792 (1973).

[22]   Id. at 802.

judgment is involved, a prima facie case refers to the plaintiff's burden of 'producing enough evidence to permit the trier of fact to infer the fact at issue.'"[23]  Second, if the plaintiff successfully makes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[24]  Finally, "[i]f the employer carries this burden the plaintiff has the opportunity to prove by a preponderance of the evidence that the employer's stated reason for plaintiff's rejection was in fact a pretext for discrimination, and not the true reason for his discharge."[25]

   1.   **Prima facie case**

Under the McDonnell Douglas framework, a plaintiff alleging disparate treatment under the ADEA establishes a prima facie case by showing that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or that the

---

   [23]   Palmer, 794 F.2d at 537 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n.7 (1981).

   [24]   McDonnell Douglas, 411 U.S. at 802.

   [25]   Palmer, 794 F.2d at 537.

circumstances surrounding the adverse employment action give rise to an inference of discrimination.[26]

The parties do not dispute that Plaintiff meets the <u>first</u> and <u>fourth</u> <u>elements</u> of the prima facie case. Plaintiff was 49 years old in March of 2002 when she was allegedly terminated and the prohibition of discrimination on the basis of age applies to individuals who are at least 40 years old.[27] Defendant also concedes that Plaintiff meets the <u>fourth element</u> because Plaintiff was replaced by Johnna Havard, who was in her twenties.[28]

There appears to be a dispute as to whether Plaintiff meets the <u>second element</u> of her prima facie case. The parties disagree about whether Plaintiff was satisfactorily performing her job responsibilities in the week after returning from her leave. This is obviously an issue for the trier of fact.

There is also a dispute about whether Plaintiff meets the <u>third element</u>. A plaintiff can meet the <u>third element</u> by demonstrating an "abusive working environment . . . so intolerable that her resignation qualified as a fitting response" or that her resignation was a "reasonable response to an employer-sanctioned adverse action officially changing her employment status or

---

[26] <u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004).

[27] <u>See</u> 29 U.S.C. § 631.

[28] <u>See</u> Docket 45 at 20.

situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions."[29]

Defendants assert that Plaintiff's meeting with her supervisors to review a warning notice does not reach the level of "an adverse action officially changing her employment status or situation."[30] However, a warning notice or negative performance review can constitute an adverse employment action in the Ninth Circuit.[31] The Court concludes that triable issues of fact exist as to elements two and three of Plaintiff's prima facie case.

    **2. Pretext**

To avoid summary judgment, Plaintiff must additionally raise a genuine issue of material fact from which a jury could conclude that Defendants' proffered legitimate, non-discriminatory reason for its actions is a pretext for discrimination.[32]

---

[29] Penn. State Police v. Suder, 542 U.S. 129, 134 (2004) (emphasis added).

[30] Docket 45 at 16.

[31] See Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840 (9th Cir. 2004); Brooks v. City of Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

[32] Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1436-37 (9th Cir. 1990).

"A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence."[33] "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."[34] "Because [it] is so probative, the plaintiff need offer 'very little' direct evidence to raise a genuine issue of material fact."[35] On the other hand, Plaintiff can establish pretext by means of circumstantial evidence "by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.'"[36] "[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment."[37]

Defendant has presented arguably legitimate business reasons for its actions. San Miguel criticized Plaintiff's work as a "step backwards" from the previous couple of weeks (during her absence) and told her that "expectations are a lot higher now."[38]

---

[33] Coughlin v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094-95 (9th Cir. 2005) (citations omitted).

[34] Id. at 1095.

[35] Id.

[36] Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 428, 256 (1981)).

[37] Id.

[38] Docket 56, Ex. 24 at 1.

An email from Mr. San Miguel to Plaintiff entitled "Excellence in Execution", sent on March 14, 2002, tends to support Defendants' assertion that standards had been raised.[39]

The ostensible purpose of the March 18, 2002, counseling meeting was to discuss Plaintiff's performance during her first week back at work and give her a warning that she needed to improve during the next thirty days or face demotion.[40] Defendants assert that Plaintiff walked off the job during the meeting with San Miguel and Sayre[41] and that this constituted a voluntary resignation according to Fred Meyer policy.[42]

Plaintiff argues that Defendants used Plaintiff's job performance as a pretext for replacing her with a younger, single woman.[43] Plaintiff testified that Fred Meyer supervisors frequently use the phrase "the standard has been raised" to motivate employees.[44] As evidence of age discrimination, Plaintiff testified that Mr. San Miguel instructed her to hire "warm bloods", which she

---

[39]   Docket 56, Ex. 27 at 1.

[40]   Docket 46, Ex. Q at 1.

[41]   Docket 45 at 3, 6, 10-11, 26; Docket 56, Ex. 4 at 22.

[42]   See Docket 45, Ex. E at 1, Ex. F at 1.

[43]   Docket 56 at 47-52.

[44]   Docket 46, Ex. A at 44.

ORDER REGARDING MOTION FOR SUMMARY
   JUDGMENT AT DOCKET 47 - 11
1:04-CV-0008-RRB

interpreted to mean "young" individuals.[45]  Although Plaintiff acknowledged that San Miguel may have meant people of Hispanic or Filipino backgrounds, she testified that on several occasions while in her presence, San Miguel pointed to young women who appeared to be under twenty years old and said "[t]hat is a warm blood."[46]  However, Plaintiff admitted that San Miguel never made any other age-related comments to her.[47]

Plaintiff also offers affidavits from coworkers who report statements purportedly made by Mr. San Miguel.  Sarah Dexter stated in her affidavit that she heard Mr. San Miguel comment about Plaintiff's replacement during her leave: "if it is a woman, send somebody young and beautiful" and "not a hag."[48]  Matthew Laney, a former supervisor, declared that San Miguel once told two older female employees: "If I could, I'd get rid of you and just hire cute ones."[49]  Finally, Maranda Willburn, a female co-worker, declared that she "noticed that San Miguel tends to show favoritism to young, attractive female employees."[50]

---

[45]   Id. at 21-23.

[46]   Id. at 23.

[47]   Id. at 82-83.

[48]   Docket 56, Ex. 6 at 2.

[49]   Docket 56, Ex. 34 at 2-3.

[50]   Docket 56, Ex. 35 at 3.

To the extent that any of this evidence is admissible, it constitutes at most weak circumstantial evidence of intent to discriminate against Plaintiff because of her age and falls short of the specific and substantial evidence required to survive summary judgment.  Moreover, Plaintiff fails to rebut Defendants' same actor defense, discussed below.

### 3. Same actor inference

Defendant argues that Plaintiff's age discrimination claim is defeated by the so-called "same actor inference."[51]  This inference is based on the principle "that an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs."[52]  "'[W]here the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action.'"[53]  Although the same actor rule is phrased in terms of "hiring and firing", "its logic applies no less to cases . . . in which the plaintiff was not actually fired but merely offered a less desirable job assignment"

---

[51] Docket 45 at 21-22.

[52] Coughlin v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1096 (9th Cir. 2005).

[53] Id. (citing Bradly v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996)).

or "where the decisionmaker had not hired the plaintiff but had previously promoted her."[54]

In 2001, when Mr. San Miguel was promoted to apparel manager, he recommended that Plaintiff be promoted to be to first assistant.[55] Store director Fred Sayre approved and authorized this recommendation.[56] On March 18, 2002, San Miguel and Sayre gave Plaintiff an "Employee Warning Notice" regarding poor performance.[57] The notice required her to improve within 30 days or lose her position as first assistant.[58]

"The same-actor inference . . . is a 'strong inference' that a court must take into account on a summary judgment motion."[59] The "evidence rarely is 'sufficient . . . to find that the employer's asserted justification is false' when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably. . . . [However,] if a plaintiff can muster the extraordinarily strong showing of

---

[54]   Id. (citing Hartsel v. Keys, 87 F.3d 795, 804 n.9 (6th Cir. 1996)).

[55]   Docket 46, Ex. A at 9-10.

[56]   Docket 46, Ex. B at 3-5.

[57]   Docket 46, Ex. A at 47, Ex. Q at 1.

[58]   Docket 46, Ex. Q at 1.

[59]   Coughlin, 413 F.3d at 1098 (citation omitted).

discrimination necessary to defeat the same-actor inference, then the case likely must go to the jury."[60]

The Court concludes that Plaintiff's circumstantial evidence does not amount to an extraordinarily strong showing of discrimination because of her age. Defendants' Motion for Summary Judgment on Plaintiff's federal and state age discrimination claims is therefore granted.

### B. Parenthood Discrimination

Count IV of Plaintiffs' Complaint alleges that Defendants Fred Meyer Stores, Inc. and Jaime San Miguel violated Plaintiff's rights under the Alaska Human Rights Act, Alaska Stat. 18.80.010 et. seq., by discriminating against Plaintiff on the basis of her parental status.[61]

While parenthood is not a protected status under federal anti-discrimination law, the Alaska Human Rights Act bans employment discrimination predicated on "parenthood" when the "reasonable demands of the position" do not require [such a distinction]."[62] Plaintiff contends that Defendant San Miguel violated § 18.80.260 of the Act, which provides: "It is unlawful

---

[60]   Id. at 1094-95 (emphasis in original) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

[61]   See Docket 1 at 19.

[62]   See Alaska Stat. 18.80.220(a)(1).

for a person to aid, abet, incite, compel, or coerce the doing of an act forbidden under this chapter or to attempt to do so."[63]

Defendants move for summary judgment on this claim on the grounds that it is unlikely that Mr. San Miguel developed a bias against Plaintiff because she is a parent and that Mr. San Miguel is also a parent.[64]

The parties have not cited any Alaska or federal case dealing with discrimination on the basis of parenthood and the Court has found none. Therefore, the Court applies the same analysis applied to Plaintiff's age discrimination claims. For the same reasons discussed in context of Plaintiff's age discrimination claims, the Court finds that Plaintiff has established a triable issue regarding her prima facie case.

Plaintiff alleges that Mr. San Miguel's actions from March 12, 2002, to March 18, 2002, were pretextual and targeted at least in part against Plaintiff because of her parental status.[65] Plaintiff argues that there is a trial issue of fact with respect to whether Mr. San Miguel replaced Plaintiff with Ms. Havard

---

[63]   Id. § 18.80.260.

[64]   Docket 45 at 22-23.

[65]   Docket 56 at 50-52.

because Plaintiff's parental responsibilities were believed to interfere with her ability to perform her job.[66]

In her deposition, Plaintiff testified that, while criticizing her work, San Miguel said: "I know that because of the problem with your daughter, you are distracted."[67] During the meeting with San Miguel and Sayre on March 18, 2002, Sayre allegedly declared: "We know that your job performance is affected by what happened to your daughter."[68]

These statements constitute weak circumstantial evidence that Defendants' actions were a pretext for discrimination against Plaintiff because of her parental status. The evidence falls short of the specific and substantial evidence required to survive summary judgment. Plaintiff fails to raise a triable issue of fact as to whether Defendants' actions were a pretext for discrimination based on her status as a parent. Defendants' Motion for Summary Judgment on Count IV is granted.

    C.    **Covenant of Good Faith and Fair Dealing**

In Count V Plaintiff asserts a claim for wrongful termination in violation of the common law duty of good faith and fair dealing against Defendants Fred Meyer Stores, Inc. and Jaime

---

[66] <u>Id.</u>

[67] Docket 45, Ex. A at 42.

[68] <u>Id.</u> at 50.

San Miguel.[69]  Plaintiff alleges that "Defendants breached the common law duty of good faith and fair dealing by terminating Plaintiff when she left work because she was emotionally distraught over Defendants' unlawful discriminatory, harassing, and retaliatory conduct towards her."[70]  Defendants move for summary judgment on the grounds that Plaintiff was employed at will and fails to raise genuine issues of material fact regarding Defendants' subjective motives for terminating Plaintiff or the unfairness of Defendants' conduct.

"At-will employees may be terminated for any reason that does not violate the implied covenant of good faith and fair dealing."[71]  An employer violates the covenant when it acts "with subjectively improper motive, such as when it 'discharges an employee for the purpose of depriving him or her of one of the benefits of the contract.'"[72]  The employee "must present proof that the employer's decision to terminate him or her 'was actually made in bad faith.'"[73]  "An objective breach of the implied covenant may

---

[69]   See Docket 1 at 20.

[70]   Id.

[71]   Pitka v. Interior Reg. Hous. Auth., 54 P.3d 785, 789 (Alaska 2002).

[72]   Id. (citation omitted).

[73]   Id. (citing Era Aviation v. Seekins, 973 P.2d 1137, 1141 (Alaska 1999)).

occur where the employer does not 'act in a manner which a reasonable person would regard as fair.'"[74]  Whether there has been a breach is a question of fact.[75]

Taking the evidence in the light most favorable to Plaintiff, the Court concludes that genuine issues of material fact exist from which the trier of fact could conclude that Defendants' actions were based on improper motives or were unfair.  Defendants' Motion for Summary Judgment on Plaintiffs' cause of action for breach of good faith and fair dealing is therefore denied.

**V.   CONCLUSION**

For the aforesaid reasons, Defendants' Motion for Summary Judgment (Docket 45) is hereby **GRANTED** with respect to Counts I-IV and VI of Plaintiff's Complaint and **DENIED** with respect to Count V.

ENTERED this 9th day of February, 2007.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[74]   Id. (citations omitted).

[75]   Casey v. Semco Energy, Inc., 92 P.3d 379, 383 (Alaska 2004); Pitka, 54 P.3d at 789.

ORDER REGARDING MOTION FOR SUMMARY
   JUDGMENT AT DOCKET 47 - 19
1:04-CV-0008-RRB