CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Telephone: (907) 586-4490
Facsimile:  (907) 586-6633

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT JUNEAU

| | |
|---|---|
| MYRNA I. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FRED MEYER STORES, INC., and )<br>JAIME SAN MIGUEL, )<br>)<br>Defendants. ) | Case No. J-04-008 CV (RRB) |

## PLAINTIFF'S TRIAL BRIEF

Pursuant to Local Rule 39.2 and this court's April 5, 2007 Pretrial Order, Plaintiff MYRNA JOHNSON submits her trial brief as follows:

1.  **Summary of parties and theories of recovery and defenses:**

Defendants FRED MEYER, INC. and JAIME SAN MIGUEL breached the covenant of good faith and fair dealing when they subjected Plaintiff MYRNA JOHNSON to a sustained campaign of harassment, threatened her with demotion or termination and then wrongfully terminated her from her employment at Fred Meyer.

Defendants' adverse employment actions towards Johnson were based on improper motives and bad faith.  Johnson was forced out of her job because San Miguel wanted to replace her with a younger, single, "more available," and attractive woman.  Plaintiff's argument here is not that Johnson was terminated simply because she was older.  Rather, it is that when given the opportunity to put a younger, pretty and single worker in Johnson's position, San Miguel orchestrated Johnson's termination, effectively discriminating against her because of her age.  Next, when Johnson returned to Fred Meyer from emergency personal

1 of 24

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

leave, she informed San Miguel that she may need to take another leave of absence towards the end of the year if her daughter's condition did not improve. San Miguel's harsh and unrelenting campaign to orchestrate Johnson's demotion or termination—just days after she returned from her emergency leave—was motivated by a false perception that Johnson was no longer reliable or dependable. Third, San Miguel's sustained campaign in order to orchestrate Johnson's demotion or termination, necessarily deprived Johnson of all the benefits of her employment contract with Fred Meyer, including the progressive discipline process and ultimately, her continued employment, benefits, and her "career" as a Fred Meyer manager.

A reasonable person would regard Defendants' actions toward Johnson as unfair. First, Johnson, as a similarly situated employee, was held to a different standard and treated differently than San Miguel. Unlike San Miguel, who was afforded constant allowances for his behavior and conduct by his male supervisors (with whom he plays baseball and watches football), Johnson was subjected to an advanced form of employee discipline and then terminated for leaving an intimidating and emotionally charged confrontation. Second, San Miguel deviated from well-established Fred Meyer objective standards and instead, held Johnson to his own subjective standard in order to bombard her with an unrelenting campaign of unsupported criticism and complaints. Third, San Miguel deviated from Fred Meyer's progressive discipline policy, bypassing all informal methods of employee discipline and moving directly to the Employee Written Warning. Fourth, Defendants' actions towards Johnson were in violation of express public policy against age, gender, and/or parenthood discrimination. Finally, Defendants subjecting Johnson to a pattern of harassing conduct amounts to disparate treatment.

2. **Designation of the appropriate pleadings and pre-trial rulings or stipulations**

- Docket 1, *Complaint*, filed March 17, 2004;
- Docket 10, *Answer and Affirmative Defenses*, filed August 11, 2004;
- Docket 79, *Order Granting Motions at Dockets 42, 43, and 44*, dated December 29, 2006;
- Docket 81, *Order Regarding Motion for Summary Judgment at Docket 45*, dated February 9, 2007;

2 of 24

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

- Docket 82, *Order Denying Motions* in Limine *at Docket 47*, dated February 9, 2007;
- Docket 85, *Pretrial Order*, dated April 5, 2007; and
- Docket 93, *Order Denying Motion to Dismiss at Docket 86 and Vacating Hearing*, dated August 21, 2007.

3. **Claims and parties which remain for disposition**

Plaintiff MYRNA JOHNSON'S claim that Defendants FRED MEYER and JAIME SAN MIGUEL wrongfully discharged her from her employment at Fred Meyer in breach of the covenant of good faith and fair dealing remains for disposition.

4. **Summary of anticipated evidence on liability and damages**

a. Defendants' adverse employment actions towards Johnson were objectively unfair, in violation of express public policy and/or based on improper motives and bad faith in breach of the covenant of good faith and fair dealing

- Testimony of Myrna Johnson
- Myrna Johnson's *Fred Meyer Employment Application*
- Myrna Johnson's *PSI Test* and Results
- Myrna Johnson's *Fred Meyer Performance Appraisals*
- Fred Meyer "Thank You" cards (employee appreciation cards)
- Myrna Johnson's Timekeeper/Punch Detail History from 01/01/02 thru 05/13/02
- Fred Meyer *Employee Warning Notice* to Myrna Johnson dated 03/18/02
- Handwritten *Daily Tour* of tasks for Myrna Johnson dated 03/13/02
- *Daily Tour & Assignment Control of Tasks* for Myrna Johnson dated 03/14/02
- Fred Meyer "Office Visions" between Jaime San Miguel and Myrna Johnson during the week of 03/12/02
- Myrna Johnson's log of events from 03/12/02 thru 03/19/02
- Deposition of Myrna Johnson
- Testimony of Mathew Laney
- Fred Meyer *Employee Handbook*
- Fred Meyer *ALE Relief Assistant Manager Training Program* Manual
- Fred Meyer *ALE Assistant Manager Training Program* Manual

3 of 24

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

- Fred Meyer Job Description for ALE Assistant Manager
- Fred Meyer *Visual Merchandising Standards Manual*
- Fred Mayer *Excellence in Supervision* Training Manual
- Fred Meyer *Positive Discipline* Training Materials
- Fred Mayer Organizational Charts
- Fred Meyer *Employee Awareness: Sexual Harassment* Training Manual
- *Diversity Food for Thought* Training Materials
- *Fred Meyer Corporate Handbook Policy*
- Testimony of Sara Dexter
- Testimony of Mary Droddy
- Testimony of Rhonda Cox
- Testimony of Paz Carrillo
- Testimony of Charina Fontenot
- Testimony of Maranda Willburn
- Testimony of Johnna Havard
- Apparel Assistant Manager Job Announcement and Job Description
- Johnna Havard's Fred Meyer employee File
- Complaints about Jaime San Miguel, and Mary Lucas' Investigation notes
- Deposition of Johnna Havard dated 01/25/2006
- Deposition of Mary Hill dated 05/26/2006
- Deposition of Mary Hill dated 10/25/2006
- Department of Community Colleges and Workforce Development- Workforce Partners description of Fred Meyer
- Myrna Johnson's request for personal leave of absence dated 02/13/02
- Myrna Johnson's employment history and resume
- Deposition of Jaime San Miguel dated 01/24/2006
- Deposition of Fred Sayre dated 01/27/2006
- Jaime San Miguel's Fred Meyer employment file

b. <u>As a result of Defendants' tortious actions toward Johnson, she lost the time she invested in pursuing a "career" in the Fred Meyer organization</u>

- Testimony of Myrna Johnson
- Myrna Johnson's Fred Meyer Employee file
- Testimony of Mathew Laney
- Fred Meyer Store-level Organizational Chart, *Fred Meyer Store Management Career Paths*
- Fred Meyer *Employee Handbook*

4 of 24

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

- Fred Meyer *Corporate Policy Handbook*

c. <u>As a result of Defendants' tortious actions toward Johnson, she suffered and continues to suffer from emotional distress, anxiety, humiliation, and lost self-esteem</u>

- Testimony of Myrna Johnson

d. <u>As a result of Defendants' unlawful actions toward Johnson, she has suffered, and will continue to suffer lost income and lost benefits</u>

- Myrna Johnson's Fred Meyer Payroll Information
- Myrna Johnson's 2001 Income Tax Return
- Myrna Johnson's 2002 Income Tax Return
- Myrna Johnson's 2003 Income Tax Return
- Myrna Johnson's 2004 Income Tax Return
- Myrna Johnson's 2005 Income Tax Return
- Myrna Johnson's Fred Meyer Employee Benefit Tables
- Johnson's past lost earnings are approximately $117,476.00
- As a result of her termination, she loses approximately $20,000.00 per year in salary.

5. **Controlling statutes and cases**

- *Rutledge v. Alyeska Pipeline Service Company,* 727 P.2d 1050 (Alaska 1986);

-  *Jones v. Central Peninsula General Hosp.*, 779 P.2d 783 (Alaska 1989);

- *Skagway City School Board v. Davis,* 543 P.2d 218 (Alaska 1975);

- *Hammack v. Parker Drilling Co.,* 930 F.2d 27, (9th Cir. 1991) (noting that under Alaska law, an employee handbook's promise to fire only for good cause may modify an at-will employment agreement and stating, "The *Jones* court's approval of *Toussaint* makes it unlikely that Alaska courts would distinguish between oral and written employer statements.");

- *Violett v. Pay N' Save Stores, Inc.,* 909 F.2d 1490 (9th Cir. 1990);

- *City of Fairbanks v. Rice,* 20 P.3d 1097 (Alaska 2000);

- *Pitka v. Interior Regional Housing Authority*, 54 P.3d 785 (Alaska 2002);

- *Beard v. Baum*, 796 P.2d 1344 (Alaska 1990) (Beard I);

- *Cameron v. Beard*, 864 P.2d 538 (Alaska 1993);

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

- *Era Aviation v. Seekins,* 973 P.2d 1137 (Alaska 1999);

- *Ramsey v. City of Sand Point*, 936 P.2d 126 (Alaska 1997);

- *Chijide v. Maniilaq Association of Kotzebue, Alaska,* 972 P.2d 167 (Alaska 1999);

- *Belluomini v. Fred Meyer of Alaska*, 993 P.2d 1009 (Alaska 1999);

- *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220 (Alaska 1992) (Luedtke II);

- *Mitford v. de Lasala*, 666 P.2d 1000 (Alaska 1983);

- *Hagans, Brown & Gibbs v. First National Bank of Anchorage,* 783 P.2d 1164 (1989);

- *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282 (Alaska 2001);

- *Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026 (Alaska 1999);

- *Alaska Marine Pilots v. Hendsch*, 950 P.2d 98, 109 (Alaska 1997);

- *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 437 (Alaska 2004);

- Alaska Human Rights Act, A.S. 18.80.200 et seq.

6. **Summary of what is most likely to be at issue**

    a. The oral representations and personnel manuals of Fred Meyer were included in the employment contract such that Johnson could only be discharged "for cause" and pursuant to Fred Meyer's progressive discipline process

The covenant of good faith and fair dealing is implied in *every* contract in order to effectuate the reasonable expectations of the parties to an agreement.[1]  In this case, Johnson had every reasonable expectation that if she worked diligently and adhered to Fred Meyer policies and procedures, she could expect a "career" in the Fred Meyer organization with certain protections, including that she would only be disciplined, including demotion or termination, according to Fred Meyer policies, practices and procedures.  Because San Miguel engaged in a sustained campaign in order to orchestrate Johnson's demotion or termination, she was necessarily deprived of all the benefits of her employment contract with Fred Meyer, including the progressive discipline process and ultimately, her continued employment, benefits, and her "career" as a Fred Meyer manager.

---

[1] *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

In sum, Defendants assert that Johnson's wrongful discharge claim is limited because she was an at-will employee.  In making this argument, Defendants ignore volumes of Fred Meyer employment materials, and essentially take for granted that a disclaimer, buried deep in the back of Fred Meyer's employment handbook, was adequate to create an "at-will" employment relationship between Johnson and Fred Meyer.  However, Defendants' position is contrary to well-established Alaska law.

Under Alaska law, where employers indicate that termination will occur only for cause, they must comply or be liable for damages.[2]  Employment policy manuals may create a "for-cause" employment agreement, and whether a given manual creates a "for-cause" employment relationship must be determined on the particular facts of each case.[3]  In *Jones v. Central Peninsula General Hosp.***,** the Alaska Supreme Court reasoned:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation.[4]

---

[2] *Rutledge . Alyeska Pipeline Service Company,* 727 P.2d 1050, 1056 (Alaska 1986) ("it is well recognized that where employers indicate that termination will only occur for cause, they must comply or be liable for damages.") (citing *Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 892 (1980)); *see also, Jones v. Central Peninsula General Hosp.*, 779 P.2d 783, 789 (Alaska 1989).

[3] *Jones*, 779 P.2d at 787; *See also, Skagway City School Board v. Davis,* 543 P.2d 218, 222 (Alaska 1975); *Hammack v. Parker Drilling Co.,* 930 F.2d 27, 27 (9th Cir. 1991) (noting that under Alaska law, an employee handbook's promise to fire only for good cause may modify an at-will employment agreement and stating, "The *Jones* court's approval of *Toussaint* makes it unlikely that Alaska courts would distinguish between oral and written employer statements."); *Violett v. Pay N' Save Stores, Inc.,* 909 F.2d 1490 (9th Cir. 1990).

[4] *Jones*, 779 P.2d at 786 (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 at 885 (1980)).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

The question of whether Johnson was discharged for good cause, or whether she was discharged for another reason is a question for the trier of fact.[5]  The *Jones* Court also held that if an employer desires to keep employees from relying upon the personnel manual as modifying their employment contract, the employer must *"clearly* and *conspicuously* tell[ ] their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason."[6]  Personnel manuals with clear and conspicuous disclaimers will "instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual."[7]

As discussed ad nausea in motion practice for this case, Fred Meyer relies upon two primary manuals to describe the employment relationship with its employees; the Employee Handbook and the Fred Meyer Corporate Policy Handbook.  These manuals repeatedly emphasize the concept that if Fred Meyer employees work hard, they will be treated fairly and rewarded with a "career" in the company (i.e., "doing what one does as a permanent occupation or lifework or for which one trains and which is undertaken as a permanent calling").[8]  The Fred Meyer Corporate Policy Handbook describes in detail employee responsibilities and consequences.  Discharge is always described as a consequence of either a violation of some policy or when "necessary to protect the well-being of the company or its employees."  Violation of a Fred Meyer policy almost always has a disciplinary consequence, up to termination.  There simply is no need for such consequences if employees cannot expect the corollary; if they follow the policies, they will not be subject to discipline including possible termination.  Fred Meyer effectuates its policies with a progressive discipline system beginning with informal counseling, followed by a verbal warning, followed by a "verbal written warning" (i.e. a Written Warning Notice with the word "verbal" written at the top), and finally a Written Warning Notice.

---

[5] *Jones*, 779 P.2d at 789 (citing *Toussaint,* 292 N.W.2d at 896).

[6] *Jones*, 779 P.2d at 787 (emphasis added).

[7] *Jones*, 779 P.2d at 788.

[8] Webster's Online Dictionary.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

Buried deep in the back of the employee handbook—after over fifty pages of Fred Meyer "career" propaganda and at least five blank pages for note-taking—the Employee Handbook contains the following disclaimer:

> This handbook should not be construed and does not constitute a contract, expressed or implied, guaranteeing employment for any specific duration. Although we hope your employment relationship with us is long term, either you or the Company may terminate this relationship at any time, for any reason, with or without cause or notice. Please understand that no supervisor or representative of Fred Meyer has the authority to enter into any agreement with you for employment for any specific period of time or to make any promises or commitments contrary to the foregoing.

Above the copyright information on a back page in the "Corporate Policy Manual," with searching, the following disclaimer can also be found:

> This handbook is not intended to, and indeed does not bestow any additional rights to employment or employment benefits to Fred Meyer Stores employees. In addition, Fred Meyer reserves the right to depart from these guidelines and to take action up to and including immediate discharge when, in its opinion, such action is necessary to protect the well-being of the company or its employees.

These disclaimers are neither "conspicuous" nor "clear." The manuals set out in exacting detail Fred Meyer's policies, and warn that a deviation from those policies can result in discipline up to discharge. The disclaimers are easily overlooked because most employees do not look past the main text of the manual or to the copyright page for information about their employment.

Second, the disclaimers do not advise how the manual's exacting description of expected conduct and policies is not part of the employment agreement between the parties. When the manual says you must follow these policies or face discipline, the employee's reasonable expectation is that adherence to those policies will not subject him or her to discipline.

Companies, such as Fred Meyer, with the need to create a dedicated and skilled work force must offer something more to their workers than the promise that they can be terminated at any time for any reason, including a bad one. Accordingly, in the context of salaried employees such as Johnson, Fred Meyer promises a career, expects and exacts enormous efforts with the "career carrot" but if inconvenient, or for no good reason at all, demotes or

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

terminates that employee without consideration for whether there was "just cause." In order to dupe its employees into this relationship, Fred Meyer specifically and intentionally avoids advising employees, especially salaried employees, that their employment is "at will." Instead, Fred Meyer makes every effort to sell the prospect of long-term employment through oral representations and writings. Several Fred Meyer employees, including Johnson, Mathew Laney, Mary Droddy and Rhonda Cox, will testify they were never told or explained that their employment was "at will" or informed in any fashion that they could be terminated for a good reason, no reason or even a bad reason. Instead, they describe the representations made to them, which caused them to work long and hard hours for Fred Meyer, as being one "for cause": If they perform their jobs and follow company policy and rules, they can expect long-term employment or Fred Meyer careers.

Fred Meyer's oral and written representations create the impression, contrary to the disclaimers, that Fred Meyer employees are to be provided with certain job protections. Accordingly, Johnson had every reason to believe that she had job security and that she would only be disciplined, including demotion or termination, according to Fred Meyer policies, practices and procedures. Fred Meyer should not be allowed to instill reasonable expectations of job security or dreams of a "career" in the company, and then withdraw the basis for those expectations when the employee's performance is no longer desired.

   b. <u>Johnson did not "walk off" the job on March 18, 2002</u>

Johnson did not "walk off" the job on March 18 when she left Sayre's office sobbing uncontrollably. First, Johnson did not hear Sayre's threat that if she left the room, then it would be considered a "voluntary termination." Even if Sayre did make such a threat, under the circumstances of this case, the threat was unreasonable.

Second, Johnson's actions after leaving the room are inconsistent with someone knowingly "walking off" the job. For instance, when Johnson left the office, if she was in fact "walking off" the job, one would have expected her to leave Fred Meyer. Instead, she went downstairs to the Apparel stock room, used exclusively by Apparel personnel with a small work area. She continued to cry there and eventually was advised by fellow employees to return upstairs to actually get a copy of the document read to her by San Miguel. When she

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

asked for a copy, San Miguel told her that he would give her a copy once she signed it—despite the fact that signing the form is not required.

Third, Johnson took sick leave that afternoon because she could not stop crying. The fact finder could easily conclude that this was both permitted and reasonable under the circumstances. The record is replete with other managers coming and going. One of the perks of management is that if you work 60-plus-hour weeks, you are not tied to a time clock. Under the circumstances, it was reasonable for her to go home as she was unable to stop crying at work.

Fourth, the following morning, Johnson called to advise Time and Attendance to debit her Sick Leave Account with the hours missing from the prior afternoon. Notwithstanding the fact that Johnson had no difficulty in working 11-hour shifts on a routine basis, if she missed some portion of a shift, she had it debited from her Sick Leave. This is inconsistent with Fred Meyer's claim that Johnson knowingly "walked off" the job on March 18, 2002. In reality, it was on March 19, 2002, when talking with Time and Attendance, that Johnson first learned that her position had been terminated.

    c.   <u>Even if, Johnson's tearful exodus could be construed as a voluntary "walk-off," she was constructively discharged because a reasonable person in Johnson's position would have felt compelled to resign</u>

Defendants argue that "Plaintiff . . . cannot reasonably argue she was constructively discharged by Fred Meyer." "Constructive discharge is not an independent cause of action, but merely satisfies the discharge element in a claim for wrongful discharge."[9] Where an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation, the employer is as liable for any illegal conduct involved therein as if it had formally discharged the employee.[10] To establish constructive discharge it is not necessary that the employee actually "prove that the employer acted with a specific intent of causing the

---

[9] *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102, n. 7 (Alaska 2000); *Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 790 (Alaska 2002).

[10] *Beard v. Baum*, 796 P.2d 1344, 1350 (Alaska 1990) (Beard I).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

employee to resign."[11]  Rather the employee "has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[12]  A constructive discharge may result from a "sustained campaign of harassment" against an employee.[13]

The record of this case supports a claim of constructive discharge.  Johnson does not rely on San Miguel's unreasonable criticism of her work performance as the sole basis for her claim.  Instead, the evidence shows that San Miguel wanted to replace Johnson with Havard.  In order to remove Johnson from her position as Lead Assistant, San Miguel needed to have her either terminated or demoted.  In order to do this, he initiated a sustained campaign of harassment against Johnson that culminated in an intimidating, emotionally charged confrontation in a small room with two, large male supervisors.

First, San Miguel changed Johnson's schedule from the usual day shift to the less desirable closing shift.  Johnson had worked the closing shift for years as the Relief Assistant Manager from 1996 to 2001, and one of the perks of being promoted to Lead Assistant was the more desirable day shift hours.  Upon Johnson's return to Fred Meyer after her leave, she was immediately put on the closing shift, and Havard was given Johnson's day shift schedule.

Next, San Miguel increased Johnson's workload.  All work is, of course, subject to reasonable limitations based upon hours available for the tasks, number of tasks, individuals available to work, etc.  The main objective for the closing shift at Fred Meyer was "recovery," which was always a product of how much time was available.  Nonetheless, San Miguel tasked Johnson with additional projects, including several long "tours" and a "planogram."  During that week, the store was frequently short-handed.  Havard's absences on two days resulted in Johnson picking up additional uncompleted management duties.  In addition, Johnson struggled to keep the Apparel Department going during a 50% off clearance sale in which her lead cashier (Kipple) was sick and her only back-up cashier, Lim left for more than two hours for a prolonged dinner break with San Miguel and Havard.  The record reflects that Johnson

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

[11] *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

[12] *Cameron*, 864 P.2d at 547.

[13] *Cameron*, 864 P.2d at 547.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

certainly spent an enormous amount of time at work that week, clocking in usually before 1:30 p.m. for a 2:00 p.m. shift, and leaving around midnight or later.

Third, San Miguel orchestrated a campaign of daily and unceasing oral and written complaints and harassment of unreasonable and unsupported criticisms of Johnson's work. The purported reason for San Miguel's chief criticisms was the recoveries from March 12 to March 17, 2002. As has been demonstrated, there's no question that Johnson was capable of performing quality recoveries. She had done so for years as the closing Relief Assistant Manager from 1996 to 2001. Her previous Manager, Laney, described Johnson as someone who was an "excellent employee...led by example...was devoted to her job...completed her work in a timely manner...and always outworked her project list."

Johnson's fellow employees have testified that her recoveries did not suddenly deteriorate or become sub-par that week. Havard, who was a trained Fred Meyer manager, testified that at the same time San Miguel was complaining about Johnson's recoveries, that anything she saw was "minor", "not an issue." There was no difference between the recoveries after Johnson returned from emergency leave as compared with the recoveries while she was on emergency leave. Paz Carrillo stated under oath that everything "was in order" at the close of business the previous day. Rhonda Cox, who was asked by San Miguel to report "secretly" to him about Johnson's recoveries, stated that Johnson's recovery was fine. Similarly, Sara Dexter stated that the Apparel department she was responsible for, "looked good" when she had arrived for the day shift on March 17, 2002.

There is also a large amount of evidence that San Miguel's criticisms about the planogram were pretextual. As noted earlier, Johnson knew how to assemble planograms and had been doing so for years. Planograms and the display of merchandise in Fred Meyer stores is not something which is dependent upon an individual manager's subjective opinions. In fact, Fred Meyer has a highly detailed instruction manual in this regard titled the "Visual Merchandising Standards Manual" (VMSM). Johnson was taught to follow the VMSM. Nonetheless, San Miguel stated he wanted the baby furniture display done "differently" than what was called for in the planogram. Johnson did her best to meet his deviation from standards, but since she was only trained in following the VMSM and planogram instructions, and San Miguel did not adequately explain what he expected, Johnson was never able to satisfy

13 of 24

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

his demands despite repeated efforts. San Miguel's subsequent mistreatment of Havard demonstrates not only a course of improper conduct, in violation of the law, but also a method or *modus operandi* which San Miguel used with anyone he wanted to remove from that position.

Fourth, San Miguel used his unsupported criticisms of Johnson's job performance as a pretext for an advanced form of employee discipline. San Miguel set up an emotional confrontation with Johnson trapped in a small, confined space with San Miguel and Fred Sayre—both large men. In this meeting, San Miguel presented a Written "Employee Warning Notice" to Johnson. Prior to that meeting Johnson was unaware that she had been subject to any discipline—including "informal" stage discipline. When Johnson was presented with a Written "Employee Warning Notice" on March 18, 2002, and was advised that she had received a "Prior Verbal Warning" [checkbox is checked], she was caught completely off guard. From her training and experience with Fred Meyer, she knew that was the final stage of discipline before suspension or termination. Not only was she receiving the final stage of discipline, she had apparently already gone through the earlier stages of discipline without ever being aware that they had occurred. It was only at San Miguel's deposition on January 24, 2006, that Johnson learned that in San Miguel's mind, he had initiated the informal disciplinary process by giving her a "verbal warning"—within one (1) day of her return from emergency leave.

Fifth, as Johnson sobbed uncontrollably, San Miguel demanded she sign the advanced form of discipline which threatened her removal from her position as Lead Assistant. While signing the form is not a requirement, San Miguel refused to give Johnson a copy unless she signed the form. Deeply embarrassed and humiliated, Johnson told the men she had to leave the room and did so in an effort to collect herself emotionally.

Sixth, as Johnson sobbed uncontrollably, Sayre threatened that if Johnson left the room, it would be considered a voluntary "walk off" from the job. Since there had been no informal discipline, and Johnson had worked unceasingly and unsuccessfully for the prior six straight days to respond to San Miguel's escalating complaints, she knew that San Miguel was going to have her fired or demoted. Under these circumstances, Sayre's threat was unreasonable.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

Finally, while Johnson went downstairs to regain her composure in the Apparel stock room, San Miguel and Sayre called the Portland headquarters for Fred Meyer, and decided to describe Johnson's tearful exodus from the room as a "walk-off" from the job and a "voluntary termination". The following day, after collecting herself emotionally, Johnson contacted Fred Meyer to learn to her surprise, that she had been terminated.

Although any one of these events alone may not be sufficient to support a claim for constructive discharge, when viewed in the totality, they could, and most likely will, lead a reasonable person in Johnson's position to conclude that Fred Meyer, through San Miguel and Sayre, had made working conditions so intolerable that Johnson was forced into an involuntary resignation.

    d.   <u>Defendants' adverse employment actions towards Johnson were based on improper motives and bad faith in breach of the covenant of good faith and fair dealing</u>

Like all contracts, Johnson's employment agreement with Fred Meyer included an implied covenant of good faith and fair dealing.[14] Breach of this covenant can be either subjective or objective.[15] The subjective, "good faith" component of the covenant, prohibits an employer from "acting with a subjectively improper motive, *such as* when it 'discharges an employee for the purpose of depriving him or her of one of the benefits of the contract.'"[16] The question is whether the employer's actions were "made in *bad faith*,"[17] and an example of *per se* bad faith is when the employer terminates the employee for the purpose of depriving the employee of one of the benefits of the contract.[18]

---

[14] *Era Aviation v. Seekins,* 973 P.2d 1137, 1139 (Alaska 1999); *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).

[15] *Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002); *See also, Ramsey,* 936 P.2d at 133; *Chijide v. Maniilaq Association of Kotzebue, Alaska,* 972 P.2d 167, 172 (Alaska 1999); *Belluomini v. Fred Meyer of Alaska*, 993 P.2d 1009, 1012-1014 (Alaska 1999).

[16] *Pitka,*54 P.3d at 789 (citing *Era Aviation,* 973 P.2d at 1139; *Ramsey,* 936 P.2d at 133) (internal citations omitted) (emphasis added); *see also, Belluomini,* 993 P.2d at 1012.

[17] *Pitka,* 54 P.3d at 789 (emphasis added).

[18] *Leudtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1224 (Alaska 1992); *see also, Jones,* 779 P.2d at 789; *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983); *Hagans, Brown & Gibbs v. First National Bank of Anchorage,* 783 P.2d 1164, 1168 (1989).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

The record in this case demonstrates that San Miguel's motive for terminating Johnson's employment was improper and/or unlawful.  Specifically, Johnson was forced out of her job because San Miguel wanted to replace her with Havard.  The replacement of a ten-year proven employee with a young woman who worked less than a month, was motivated by a desire to replace the older worker with a younger one who may be "more available" to San Miguel.  In this regard, there is extensive testimony by Havard and other employees of San Miguel's overt and unprofessional comments and actions towards young women.  Plaintiff's argument here is not that Johnson was terminated simply because she was older.  Rather, it is that when given the opportunity to put a younger, pretty and single worker in Johnson's position, San Miguel orchestrated her termination, effectively discriminating against her because of her age.  The facts that San Miguel expressed a preference for *"someone young and beautiful,"* rather than *"a hag"* combined with Havard's vocal desire to take over Johnson's position, and then the fact that Havard was essentially "handed the job" immediately after Johnson's discharge support this theory.  San Miguel's subsequent mistreatment of Havard demonstrates San Miguel's *modus operandi* for removing people from that position.

Next, it is clear from the record that Johnson was an important, valued Fred Meyer employee so long as she was absolutely reliable, and as soon as Johnson had to take leave to deal with her daughter's problems, she was no longer viewed as a valuable member of the organization.  When Johnson returned to Fred Meyer, she informed San Miguel that she may need to take another leave of absence towards the end of the year if her daughter's condition did not improve.  San Miguel's harsh and unrelenting campaign to orchestrate Johnson's demotion or termination—just days after she returned from her emergency leave—was motivated by an unfair decision to replace Johnson with someone her perceived as more available, more reliable and or more dependable.

Finally, as discussed above, the covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to an agreement.[19]  In this case, Johnson had every reasonable expectation that if she worked diligently and adhered to Fred Meyer policies and procedures, she could expect a "career" in

---

[19] *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

the Fred Meyer organization with certain protections, including that she would only be disciplined, including demotion or termination, according to Fred Meyer policies, practices and procedures.  Because San Miguel engaged in a sustained campaign in order to orchestrate Johnson's demotion or termination, she was necessarily deprived of all the benefits of her employment contract with Fred Meyer, including the progressive discipline process and ultimately, her continued employment, benefits, and her "career" as a Fred Meyer manager.

  e.  A reasonable person would regard Defendants actions toward Johnson as unfair, and thus, in breach of the covenant of good faith and fair dealing

The objective aspect of the covenant of good faith and fair dealing requires that the employer act in a manner that a *reasonable person* would regard as fair.[20]  The Alaska Supreme Court has previously explained that examples of objective breaches of the covenant of good faith and fair dealing would include disparate employee treatment, terminations on grounds that were unconstitutional, and firings that violated public policy.[21]  An employer's failure to treat like employees alike can constitute a breach of the covenant.[22]  Furthermore, terminating an employee in violation of a public policy, such as gender discrimination, age discrimination, in response to leave taken pursuant to the Family Medical Leave Act or any combination of the three, constitutes a breach of the covenant of good faith and fair dealing.[23]

The record demonstrates that Johnson was a very capable, hard-working employee. For years, San Miguel relied upon Johnson to work sixty-plus-hour weeks.  The Affidavits from co-workers confirm that Johnson was primarily responsible for keeping the floor going. San Miguel was not noted for being particularly hard-working or diligent.  In fact, when San Miguel was going through a situation quite similar to Johnson's (i.e., his personal divorce), his attendance and work performance was erratic and inconsistent.  He frequently had emotional

---

[20] *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1286-87 (Alaska 2001); *Ramsey,* 936 P.2d at 133.

[21] *ERA Aviation, Inc. v. Seekins,* 973 P.2d 1137, 1139 (Alaska 1999); *Luedtke v. Nabors Drilling, Inc.* 834 P.2d 1220, 1224 (Alaska 1992) (Luedtke II).

[22] *Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1032 (Alaska 1999); *Belluomini v. Fred Meyer of Alaska, Inc.,* 993 P.2d 1009, 1012-13 (Alaska 1999); *Alaska Marine Pilots v. Hendsch*, 950 P.2d 98, 109 (Alaska 1997).

[23] *See generally, Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 437 (Alaska 2004).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

outbreaks, including one that led to a hospitalization.  He was unable to do his job.  He frequently came into work late and left early.  Throughout that time period, it was Johnson upon whom he relied.  It was her ability and work ethic which kept the Apparel Department going, and which guaranteed that San Miguel's work was done when he was unable to do it himself.  Notwithstanding this, there were no disciplinary consequences for San Miguel and Fred Meyer, instead, tolerated his erratic performance, attendance and emotional outbreaks.

Less than eight months later, Johnson went through similar personal problems requiring her to take an emergency leave.  When she returned, she told San Miguel that she might have to leave again later in the year if her daughter remained in the Philippines and if her daughter's condition did not improve.  Unlike San Miguel, who appears to have been afforded constant allowances for his behavior and conduct by his male supervisors (with whom he plays baseball and watches football), Johnson was subjected to an advanced form of employee discipline and then terminated for leaving an intimidating and emotionally charged confrontation.

Even after Johnson was discharged, Fred Meyer ignored San Miguel's attendance and work performance deficiencies.  Specifically, despite numerous complaints by Havard regarding San Miguel's excessive tardiness and absences, and an investigation into Havard's documented complaints and recommendation for discipline by Mary Lucas, San Miguel's personnel file contains no record of that investigation or subsequent disciplinary action.  None of Havard's complaints were acted upon by management at Fred Meyer, and San Miguel retained his position as Apparel Manager.  This history establishes that Johnson, as a similarly situated employee, was held to a different standard and treated differently.

Next, despite clear objective standards for completing recoveries and planograms, Johnson was held to a different "subjective" standard.  Fred Meyer appears to argue that whether Johnson was successfully performing her job duties can only be decided by San Miguel (i.e., that it is San Miguel's "subjective" decision, which can be challenged by no one, that is the only opinion that matters).  However, this flies in the face of the extraordinary training, procedures and manuals in place which determine how work at Fred Meyer was to be performed.  It is refuted not only by co-workers who observed Johnson's work at that time and will comment that she was motivated, hard-working, diligent and competent, and that there was no decrease in the quality of work during her shifts.  It is also refuted by Johnson's long work-

18 of 24

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

hours and own record of responding to San Miguel's Office Visions, making every effort to comply with his escalating demands. The fact that San Miguel deviated from the Fred Meyer objective standards and instead, held Johnson to his own subjective standard was an objective breach of the covenant of good faith and fair dealing.

Third, at the time of Johnson's discharge, Fred Meyer had a progressive discipline policy. The fact that San Miguel deviated from that policy, bypassing all informal methods of employee discipline and moving directly to the Employee Written Warning, was an objective breach of the covenant of good faith and fair dealing.

Fourth, genuine issues of fact exist as to whether San Miguel's conduct was designed and intended to accomplish the removal of Johnson, an over-40-year-old married woman, in order to replace her with a younger, pretty and single woman, Havard. San Miguel's comments in searching for Johnson's temporary replacement support this argument: "if it is a woman, send somebody young and beautiful…and not a hag." Havard's statements to other employees prior to Johnson's return from the Philippines that she would take Johnson's job if offered, and the immediate replacement by Johnson with Harvard, demonstrate discriminatory intent. This is clearly a violation of objective good faith and fair dealing.

Finally, subjecting Johnson to a pattern of harassing conduct, could in and of itself amount to disparate treatment or violation of public policy in breach of the covenant of good faith and fair dealing. San Miguel's subsequent mistreatment of Havard demonstrates not only a course of improper conduct, in violation of the law, but also a method or *modus operandi* which San Miguel used with anyone he wanted to remove from that position.

7. **Evidentiary issues**

    a.  Evidence regarding Plaintiff's criminal *charges* for the sale of counterfeit goods is inadmissible

- The criminal charge is irrelevant because a jury could not reasonably conclude from an unsubstantiated criminal charge that Plaintiff was engaged in unethical business practices, as asserted by Defendants. *Huddleston v. U.S.*, 485 U.S. 681, 689 (1988).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

- Not only are the allegations of criminal activity unfounded, but Defendants' attempt to admit such evidence is a poorly disguised attempt to admit improper character evidence. F.R.E. 404; Commentary to F.R.E. 404; *Old Chief v. U.S.*, 519 U.S. 172, 180-81 (1997) ("The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record . . ..  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.").

- The court should exclude this evidence because any probative value the evidence may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time. F.R.E. 403; Commentary to F.R.E. 403; *see also*, *U.S. v. Ellis*, 147 F.3d 1131, 1134-35 (9th Cir. 1998).

b. <u>Evidence regarding Plaintiff's failure to pay on a promissory note and the subsequent civil judgment against Plaintiff is inadmissible</u>

- Plaintiff's failure to pay on a promissory note or the resulting civil judgment against Plaintiff, are not relevant to any claim or defense in this matter. *Huddleston*, 485 U.S. at 686.

- Because Defendants wish to present this evidence in an attempt to prove that Plaintiff was an unethical business person, it is improper character evidence. F.R.E. 404; Commentary to F.R.E. 404; *see also*, *Old Chief*, 519 U.S. at 180-81.

- Any, slight probative value the evidence may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and waste of time. F.R.E. 403; *Ellis*, 147 U.S. at 1135.

c. <u>Evidence regarding Plaintiff's "for cause" employment relationship with Fred Meyer is admissible</u>

- The fact that San Miguel deviated from Fred Meyer policies and procedures, bypassing Fred Meyer's progressive discipline procedure and ignoring objective

20 of 24

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

employee performance standards, was in and of itself, an objective breach of the covenant of good faith and fair dealing.  Any evidence of Johnson's "for cause" relationship with Fred Meyer is relevant to the issue of whether Defendants' actions were based on improper motives or were unfair.  F.R.E. 402; *Huddleston*, 485 U.S. at 686.

d.  Plaintiff's former Fred Meyer co-worker affidavits and other pre-trial statements may be admissible

- Plaintiff agrees that hearsay is inadmissible.  However, not all pre-trial statements will be offered "for the truth of the matter asserted."  Moreover, Plaintiff has identified as exhibits, only those affidavits and statements from witnesses she intends to call at trial.  Pursuant to Evidence Rule 801(d)(1), affidavits signed by Plaintiff's former Fred Meyer co-workers may be admissible.  Because Defendants have not identified specific statements they find objectionable, a blanket exclusion of this potentially admissible evidence is improper.

e.  Testimony regarding Plaintiff's work performance and reliability is admissible

- Plaintiff and her former Fred Meyer co-workers are competent to testify regarding their firsthand knowledge of Fred Meyer policies and practices and that Johnson's job performance in performing "recovery" and building a "planogram" were consistent with their training, experience and Fred Meyer's own written policies and procedures.  F.R.E. 601 & 602.

- Because Defendants' motives and reasons for taking adverse employment actions and ultimately terminating Johnson's employment is at issue in this case, evidence regarding Johnson's work performance is relevant.  F.R.E. 402; *Huddleston*, 485 U.S. at 686.

f.  Plaintiff's and her former Fred Meyer co-workers' opinion testimony is admissible

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

- Plaintiff and her former Fred Meyer co-workers' opinions are admissible if the testimony is rationally based on the witness's own perceptions and would be helpful to the determination of the facts at issue.  F.R.E. 701.
  - o Plaintiff and her co-workers' opinions are rationally based on their own perception of Fred Meyer standards and criteria for recoveries and planograms, and of Plaintiff's job performance based on their experience and training.
  - o This testimony is helpful to establish that Defendants' adverse action towards Plaintiff had nothing to do with her work performance on recoveries and planograms, and further that they were in breach of the covenant of good faith and fair dealing.
- Because Defendants' motives and reasons for taking adverse employment actions and ultimately terminating Johnson's employment is at issue in this case, evidence regarding Johnson's work performance is highly relevant.  F.R.E. 402; *Huddleston*, 485 U.S. at 686.
- Because Fred Meyer's position appears to be that whether Johnson was successfully performing her job duties can only be decided by San Miguel (i.e., that it is San Miguel's "subjective" decision and no one else can challenge that), objective evidence regarding Johnson's work performance is highly relevant. F.R.E. 402; *Huddleston*, 485 U.S. at 686.

g.  Testimony regarding Jaime San Miguel's treatment of other Fred Meyer employees is admissible

- The parallels between San Miguel's treatment of Johnson and Johnson's replacement Johnna Havard, demonstrate not only a course of improper conduct, in violation of the law, but also a method or *modus operandi* which San Miguel used when he wanted to remove someone from that position.  Because Defendants claim that Johnson "walked off" the job, this evidence is highly relevant to Johnson's claim that she was constructively discharged.  F.R.E. 402; *Huddleston*, 485 U.S. at 686.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

h.  <u>Evidence of Defendant San Miguel's discriminatory intent is admissible</u>

- Because Defendants' motives and reasons for taking adverse employment actions and ultimately terminating Johnson's employment is at issue in this case, evidence regarding San Miguel's discriminatory practices and intent is relevant and admissible.  F.R.E. 402; *Huddleston*, 485 U.S. at 686.

DATED this <u>17</u><sup>th</sup> day of September, 2007, at Juneau, Alaska.

Respectfully submitted,
CHOATE LAW FIRM LLC


s/ *Jessica L. Srader*
_____
JESSICA L. SRADER
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
Fax: (907) 586-6633
EM: lawyers@choatelawfirm.com
AK Bar: 0412105

Attorneys for Plaintiff

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

**PROOF OF SERVICE**

STATE OF ALASKA, FIRST JUDICIAL DISTRICT AT JUNEAU

I am employed in the City and Borough of Juneau, State of Alaska. I am over the age of 18 and not a party to the within action. My business address is 424 N. Franklin Street, Juneau, AK 99801.

On September 17, 2007, I served the foregoing document described as ***Plaintiff's Trial Brief,*** on the interested parties in this action by serving the original true copies, addressed as follows:

James Dickens
Miller Nash LLP                             Peter Gruenstein
Attorney For: Fred Meyers                   Gruenstein & Hickey
4400 Two Union Square                       Attorney For: Fred Meyers
601 Union Street                            500 L Street, Suite 401
Seattle, WA  98101-2352                     Anchorage, AK  99501
Phone: (206) 622-8484                       Phone: (907) 258-4338
Fax: (206) 622-7485                         Fax: (907) 258-4350

☒  By mail, I deposited such envelope(s) in the mail at Juneau, Alaska, with postage thereon fully prepaid.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Juneau, Alaska, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐  By personal service, I delivered such envelope(s) by hand to the ☐ office(s); ☐ the court box of the addressee(s).

☐  By facsimile, I transmitted such documents from Juneau, Alaska, to the offices of the addressee(s).

☐  By email, I transmitted such documents from Juneau, Alaska, to the email address of the addressee(s).

☒  By electronic service through the court of record's electronic service system.

☐  (State) I declare under penalty of perjury under the laws of the State of Alaska that the foregoing is true and correct.

☒  (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 17, 2007 at Juneau, Alaska.

_____
s/ Annya Ritchie
CHOATE LAW FIRM LLC

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S TRIAL BRIEF
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490