CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Telephone: (907) 586-4490
Facsimile: (907) 586-6633

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA AT JUNEAU**

| | |
|---|---|
| MYRNA I. JOHNSON, )<br>              Plaintiff, )<br>        vs. )<br>FRED MEYER STORES, INC., and )<br>JAIME SAN MIGUEL, )<br>            Defendants. ) | Case No. J-04-008 CV (RRB) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL**

Defendants FRED MEYER STORES, INC. and JAIME SAN MIGUEL ask this court to exclude certain admissible evidence and testimony. Specifically, Defendants ask the court to exclude the following evidence: (1) all proposed evidence regarding a "for cause" claim; (2) affidavits and other pre-trial statements made by Johnson's former Fred Meyer co-workers; (3) testimony regarding Plaintiff's work performance and character; (4) opinion testimony; (5) evidence regarding conduct of other employees; and (6) evidence regarding San Miguel's discriminatory practices, discriminatory intent and improper motives. Because this evidence is admissible, the court must deny Defendants' request.

**I.   RELEVANT FACTS**

In 1992, Fred Meyer and Myrna Johnson entered into a for-cause employment agreement. Fred Meyer promised to provide Johnson with a career, offering her job security and increasing pay raises and promotions if Johnson performed her job well and met all enumerated, objective requirements for advancement within the Fred Meyer organization.

Throughout her employment, to induce her to devote the large quantities of time required to become a manager, Fred Meyer made numerous representations to her, both orally and in writing, that she would be treated fairly and consistently with its documented internal disciplinary processes. Based on those promises, for almost a decade, Johnson committed herself fully to her job at Fred Meyer. She progressed from an hourly, part-time employee to a full-time, salaried management position working an average of 55 hours and up to 70 hours a week.

In March of 2002, over a period of just six days, Johnson's career was terminated by the actions of defendant Jaime San Miguel, her immediate supervisor, with the knowledge and consent of Fred Meyer upper-level management. San Miguel wanted to replace Johnson with Johnna Havard, a young, pretty, single woman. In order to remove Johnson from her position as Lead Assistant, San Miguel needed to have her either terminated or demoted. He initiated a sustained campaign of harassment against Johnson that culminated in an intimidating, emotionally charged confrontation in a small room with two, large male supervisors.

First, San Miguel changed Johnson's schedule from the usual day shift to the less desirable closing shift. Johnson had worked the closing shift for years as the Relief Assistant Manager from 1996 to 2001, and one of the perks of being promoted to Lead Assistant was the more desirable day shift hours. Upon Johnson's return to Fred Meyer after an emergency leave, she was immediately put on the closing shift, and Havard was given Johnson's day shift schedule.

Next, San Miguel increased Johnson's workload. All work is, of course, subject to reasonable limitations based upon hours available for the tasks, number of tasks, individuals available to work, etc. The main objective for the closing shift at Fred Meyer was "recovery" (i.e., preparing the store for the next business day)—which was always a product of how much time was available. Nonetheless, San Miguel tasked Johnson with additional projects, including several long "tours" (i.e., lists of tasks expected to be completed) and a "planogram" (i.e., setting up a merchandise display). He gave her long "daily tours" with lists of tasks he expected to be completed each night. During that week, the store was frequently short-handed. Absences of other members of the management team resulted in Johnson picking up additional uncompleted management duties. In addition, Johnson struggled to keep the Apparel

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

Department operating during a "50% off" clearance sale in which her lead cashier was sick and her only back-up cashier, Julita Lim, had left for more than two hours for a prolonged dinner break with San Miguel. The record reflects that Johnson certainly spent an enormous amount of time at work that week, clocking in usually before 1:30 p.m. for a 2:00 p.m. shift, and leaving around midnight or later.

Third, San Miguel orchestrated a campaign of daily and unceasing oral and written complaints and harassment of unreasonable and unsupported criticisms regarding Johnson's work. Among the voluminous policies and rules by which Johnson and all Fred Meyer employees' performance are evaluated, include "recovery" standards (the appearance of clothing products on shelves and tables) and "planograms" (clear-cut charts or illustrations of desirable appearances of retail areas)—both of which are unarguably objective standards meant to maximize consistency in Fred Meyer's retail operations. The purported reasons for San Miguel's chief criticisms during the six-day period at issue were the store recoveries and a baby furniture planogram. Both complaints were pretextual.

Johnson was more than capable of performing quality recoveries. She had done so for years as the closing Relief Assistant Manager from 1996 to 2001. Her previous supervisor, Mathew Laney, described Johnson as someone who was an "excellent employee…led by example…was devoted to her job…completed her work in a timely manner…and always outworked her project list." Several of Johnson's fellow employees agree that her recoveries did not suddenly deteriorate or become sub-par that week. Johnna Havard, who was a trained Fred Meyer manager, testified that at the same time San Miguel was complaining about Johnson's recoveries, anything she noticed was "minor", "not an issue." There was no difference between the recoveries after Johnson returned from leave as compared with the recoveries while she was on leave. Fred Meyer employee, Paz Carrillo has stated under oath that everything "was in order" at the close of business the previous day. Rhonda Cox, who was asked by San Miguel to report "secretly" to him about Johnson's recoveries, stated that Johnson's recovery was fine. Similarly, Sara Dexter stated that the Apparel department she was responsible for, "looked good" when she had arrived for the day shift on March 17, 2002.

Johnson also knew how to assemble planograms and had been doing so for years. Planograms and the display of merchandise in Fred Meyer stores is not something which is

3 of 20

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

dependent upon an individual manager's subjective opinions. In fact, Fred Meyer has a highly detailed instruction manual in this regard titled the "Visual Merchandising Standards Manual" (VMSM). Johnson was taught to follow the VMSM. Nonetheless, San Miguel stated he wanted the baby furniture display done "differently" than what was called for in the planogram. Johnson did her best to meet his deviation from standards, but since she was only trained in following the VMSM and planogram instructions, and San Miguel did not adequately explain what he expected, Johnson was never able to satisfy his demands despite repeated efforts. In sum, San Miguel used his position as supervisor to browbeat and demoralize Johnson. In doing so, he failed to follow the clear, objective standards and terms to which Johnson, and all Fred Meyer employees, were trained and expected to adhere.

Fourth, San Miguel used his unsupported criticisms of Johnson's job performance as a pretext for an advanced form of employee discipline. San Miguel set up an emotional confrontation with Johnson trapped in a small, confined space with San Miguel and Fred Sayre—both large men. In this meeting, San Miguel presented Johnson with a Written "Employee Warning Notice." The Written Employee Warning Notice is a form of discipline which normally occurs only after other progressive disciplinary steps have been taken--after the passage of significantly more time than a week. Johnson was unaware that she had been subject to any discipline—including "informal" stage discipline. When Johnson was presented with the Written "Employee Warning Notice" on March 18, 2002, and was advised that she had received a "Prior Verbal Warning" [checkbox is checked], she was caught completely off guard. Overwhelmed with the impending potential loss of her career and the series of events that had occurred over less than a week's time which had allowed San Miguel to accomplish his nefarious objective despite Fred Meyer policies, Johnson began sobbing uncontrollably. From her training and experience with Fred Meyer, she knew that was the final stage of discipline before demotion, suspension or termination. Not only was she receiving the final stage of discipline, she had apparently already gone through the earlier stages of discipline without ever being aware that they had occurred. Given that Johnson had worked unceasingly and uninterruptedly, though unsuccessfully, for the prior six days to respond to San Miguel's escalating complaints, she very reasonably feared that he was going to have her fired or demoted.

4 of 20

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

Fifth, as Johnson sobbed uncontrollably, San Miguel demanded she sign the advanced form of discipline which threatened her removal from her position as Lead Assistant. While signing the form is not a requirement, San Miguel refused to give Johnson a copy unless she signed the form. Distraught, embarrassed, and humiliated, she told the men she had to leave the room, and did so in an effort to collect herself emotionally. As Johnson left the room to regain her composure, Sayre threatened that if she left the room, it would be considered a voluntary "walk off" from the job. Johnson, however, did not hear Sayre's threats. Since there had been no informal discipline, and Johnson had worked unceasingly and unsuccessfully for the prior six straight days to respond to San Miguel's escalating complaints, she knew that San Miguel was going to have her fired or demoted. Under these circumstances, Sayre's threat was unfair and unreasonable.

Finally, while Johnson went downstairs to regain her composure in the Apparel stock room, San Miguel and Sayre took advantage of her absence and called the Portland headquarters for Fred Meyer. They then decided to describe Johnson's tearful exodus from the room as a "walk-off" from the job and thus, a "voluntary termination." The following day, after collecting herself emotionally, Johnson contacted Fred Meyer to learn to her surprise, that she had been terminated.

## II. JOHNSON'S CLAIMS AND POTENTIAL EVIDENCE

Defendants' adverse employment actions towards Johnson were based on improper motives and bad faith. Johnson was forced out of her job because San Miguel wanted to replace her with a younger, single, "more available," and attractive woman, Johnna Havard. Next, when Johnson returned to Fred Meyer after taking emergency leave to take care of her daughter, Johnson informed San Miguel that she may need to take another leave of absence towards the end of the year if her daughter's condition did not improve. San Miguel's harsh and unrelenting campaign to orchestrate Johnson's demotion or termination—just days after she returned from her emergency leave—was motivated by an unfair and unsupported presumption that Johnson was no longer reliable or dependable. Third, San Miguel's sustained campaign in order to orchestrate Johnson's demotion or termination, necessarily deprived Johnson of all the benefits of her employment contract with Fred Meyer, including the

5 of 20

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

progressive discipline process and ultimately, her continued employment, benefits, and her "career" as a Fred Meyer manager.

A reasonable person would regard Defendants' actions toward Johnson as unfair. First, Johnson, as a similarly situated employee, was held to a different standard and treated differently than San Miguel. Unlike San Miguel, who was afforded constant allowances for his behavior and conduct by his male supervisors (with whom he plays baseball and watches football), Johnson was subjected to an advanced form of employee discipline and then terminated for leaving an intimidating and emotionally charged confrontation. Second, San Miguel deviated from well-established Fred Meyer objective standards and instead, held Johnson to his own subjective standard in order to bombard her with an unrelenting campaign of unsupported criticism and complaints. Third, San Miguel deviated from Fred Meyer's progressive discipline policy, bypassing all informal methods of employee discipline and moving directly to the Employee Written Warning. Fourth, Defendants' actions towards Johnson were in violation of express public policy against harassment, age discrimination, sex discrimination and retaliation for taking family medical leave. Finally, subjecting Johnson to a pattern of harassing conduct, in and of itself, amounts to disparate treatment.

In support of these claims, Johnson intends to present the following into evidence: Johnson's Fred Meyer employment file; employee appreciation cards addressed to Johnson; Johnson's time report for the week of March 12, 2002; Fred Meyer Employee Warning Notice to Johnson dated March 18, 2002; Daily task assignment sheets delegated to Johnson during the week of March 12, 2002; Fred Meyer emails between San Miguel and Johnson during the week of March 12, 2002; Fred Meyer Employee Handbook; Fred Meyer management training and procedure manuals; Fred Meyer Corporate Handbook; complaints regarding San Miguel's work performance and reliability; Fred Meyer investigation into complaints regarding San Miguel; San Miguel's Fred Meyer employment file. In addition, Johnson will call most of the witnesses who have previously provided affidavits in this matter to testify live at trial. In general, the witnesses are expected to testify as to their personal knowledge in the following non-exclusive areas:

- Representations made to them in the hiring and employment process by Fred Meyer as to the nature of the employment contract;

- Representations made to them in the hiring and employment process by Fred Meyer as to the nature of the company's use of progressive discipline;
- Their training and experience in regards to the progressive discipline process used by Fred Meyer;
- Their training and experience in working with Johnson in the Apparel Department;
- Their training and experience in working closing shift, recovery and assembling planograms;
- Their observations of Johnson the week prior to her termination – her work efforts, concentration, attitude, diligence and quality of work performed based upon their training and experience; and
- Their observations of San Miguel and his actions which support the conclusion that he was motivated to terminate or demote Johnson for reasons other than her job performance.

Defendants ask the court to exclude the following evidence: (1) all proposed evidence regarding a "for cause" claim; (2) affidavits and other pre-trial statements made by Johnson's former Fred Meyer co-workers; (3) testimony regarding Plaintiff's work performance and character; (4) opinion testimony; (5) evidence regarding conduct of other employees; and (6) evidence regarding San Miguel's discriminatory practices, discriminatory intent and improper motives.

### III. DISCUSSION

**A. Evidence regarding Plaintiff's "for cause" employment relationship with Fred Meyer is highly relevant and admissible**

Defendants assert that Johnson's wrongful discharge claim is limited because she was an "at-will" employee. Interestingly, Defendants make this assertion, and then ask the court to exclude all proposed evidence of Plaintiff's "for cause" employment relationship with Fred Meyer. In making this request, Defendants argue that the covenant of good faith and fair dealing applies only to at-will employment relationships, and therefore, evidence that Johnson could only be terminated from her employment at Fred Meyer "for cause" is irrelevant.

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

"Rule 401 of the Federal Rules of Evidence contains a very expansive definition of relevant evidence."[1]  "Relevant evidence" is evidence "having *any* tendency to make the existence of any fact that is *of consequence* to the determination of the action more probable or less probable than it would be without the evidence."[2]  Relevancy is defined "as a relation between an item of evidence and a matter properly provable in the case."[3]  "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is *of consequence* in the determination of the action."[4]  Courts generally "let jurors see and hear even marginally relevant evidence, because [they] trust them to weigh the evidence appropriately."[5]

Contrary to Defendants' assertion, "The covenant of good faith and fair dealing is implied into *every* employment relationship . . . *even* in at-will employment contracts."[6]  At a minimum, the covenant requires "that an employer not impair the right of an employee to receive the benefits of the employment agreement."[7]  Under Alaska law, jurors can find a breach of the covenant of good faith and fair dealing if they find that "it is more likely true than not true that the defendant deprived the plaintiff of a benefit of the contract: (1) intentionally; or (2) by acting in a manner that a reasonable person would regard as unfair."[8]

Companies, such as Fred Meyer, with the need to create a dedicated and skilled work force must offer something more to their workers than the promise that they can be terminated

---

[1] *U.S. v. Curtis*, 568 F.2d 643, 645 (9th Cir. 1978).

[2] F.R.E. 401 (emphasis added).

[3] Advisory Committee Notes to F.R.E. 401 (citing James, Relevancy, Probability and the Law, 29 Calif.L.Rev. 689, 696, n. 15 (1941), in Selected Writings on Evidence and Trial 610, 615, n. 15 (Fryer ed. 1957)).

[4] Advisory Committee Notes to F.R.E. 401.

[5] *U.S. v. Hitt*, 981 F.2d 422, 423 (9th Cir. 1992); *see also, U.S. v. Lemmon*, 5 F.3d 542 (9th Cir. 1993).

[6] *Eldridge v. FELEC Services, Inc.*, 920 F.2d 1434, (9th Cir. 1990) (interpreting and applying Alaska common law implied covenant of good faith and fair dealing) (emphasis added); *see also, Reed v. Municipality of Anchorage*, 782 P.2d 1155, 1158 (Alaska 1989); *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983); *see also, Hammack v. Parker Drilling Co.*, 930 F.2d 27 (9th Cir. 1991).

[7] *Jones v. Central Peninsula General Hosp.*, 779 P.2d 783, 789 (Alaska 1989); *see also, Vinson v. City of Valdez*, 967 F.2d 596 (9th Cir. 1992); *Mitford,* 666 P.2d at 1007; *Reed,* 782 P.2d at 1158.

[8] *See,* Alaska Civil Pattern Jury Instruction 24.15.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

at any time for any reason, including a bad one. Accordingly, in the context of salaried employees such as Johnson, Fred Meyer promises a career, expects and exacts enormous efforts with the "career carrot" but if inconvenient, or for no good reason at all, demotes or terminates that employee without consideration for whether there was "cause." In order to dupe its employees into this relationship, Fred Meyer specifically and intentionally avoids advising employees, especially salaried employees, that Fred Meyer views their employment as "at will." Instead, Fred Meyer's oral and written representations create the impression that Fred Meyer employees are to be provided with certain job protections. It is simply unfair for Fred Meyer to intentionally instill reasonable expectations of job security or dreams of a "career" in the company, and then withdraw the basis for those expectations without cause.

As a result of Fred Meyer's oral and written representations, Johnson had every reasonable expectation that if she worked diligently and adhered to Fred Meyer policies and procedures, she could expect a "career" in the Fred Meyer organization with certain protections, including that she would only be disciplined, including demotion or termination, according to Fred Meyer policies, practices and procedures. Because Defendants engaged in a sustained campaign orchestrated to end with Johnson's demotion or termination, Johnson was necessarily deprived of all the benefits of her employment contract with Fred Meyer, including the progressive discipline process and ultimately, her continued employment, benefits, and her "career" as a Fred Meyer manager. Evidence regarding the "for cause" nature of Johnson's employment relationship underscores the unfairness of Defendants' actions towards Johnson. Accordingly, it is highly relevant to Johnson's claims.

**B. Affidavits and other out-of-court statements from Plaintiff's former Fred Meyer co-workers may be admissible.**

Plaintiff has identified as potential exhibits at trial affidavits provided by several of Plaintiff's former Fred Meyer co-workers. Defendants ask the court to exclude these affidavits and any other declarations of any witnesses. In making this blanket request for exclusion, Defendants have not, however, identified any specific statements they find objectionable on hearsay grounds.

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

Hearsay is testimony as to an out-of-court statement offered in court for the purpose of proving the truth of the matter asserted.[9] While Plaintiff agrees that hearsay is generally inadmissible unless the statement falls into an exception of the hearsay rule, Defendants' request is improper for several reasons.

First, the court has already held that the admissibility of hearsay under pertinent exception must await trial.[10] Nonetheless, Defendants have ignored this Court's ruling, and ask the court to make a sweeping evidentiary decision. In making this request, Defendants have not identified specific statements that they find objectionable. Instead, they have made a blanket request that includes a large amount of potentially admissible evidence. Accordingly, Defendants' request must be denied.

Second, not all pre-trial witness statements will be offered "for the truth of the matter asserted." Plaintiff's witness affidavits will be offered for the purpose of showing the existence of a comprehensive program of policies and practices by which Plaintiff had the right and reasonable expectation to be measured. Another purpose for presenting the co-worker affidavits is to illustrate the nature of employment at Fred Meyer—this helps illustrate the reasonableness of Plaintiff's reactions to Defendant San Miguel's repeated barrage of subjective criticism regarding her work performance and her emotional response when she was presented with a Written "Employee Warning Notice," which threatened removal from her managerial position.

Third, Plaintiff has identified as exhibits, only those affidavits and statements from witnesses she intends to call at trial. Evidence Rule 801(d)(1) states in relevant part, "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . .." Accordingly,

---

[9] F.R.E. 801(c).

[10] Docket 82, *Order Denying Motions In Limine at Docket* 47, dated February 9, 2007.

pursuant to Evidence Rule 801(d)(1), affidavits signed by Plaintiff's former Fred Meyer co-workers may be admissible.

Finally, some of Plaintiff's co-worker affidavits contain statements which fall into exceptions to the hearsay rule. The events at issue in this case occurred several years ago. As a result, many of the witnesses may have difficulty remembering details regarding the events at issue. Pursuant to Evidence Rule 803(5), the contents of these affidavits will be admissible. In addition, many of the affidavits and declarations contain statements regarding Plaintiff's work ethic and reputation as a hard worker. Pursuant to Federal Evidence Rule 803(21), these statements are admissible as exceptions to the hearsay rule.

### C. Testimony regarding Plaintiff's work performance and reliability is admissible

Defendants argue that testimony regarding Plaintiff's work performance and character is inadmissible and should be excluded. Defendants' arguments in this regard are strikingly similar, if not identical to arguments Defendants raised in their July 21, 2006 *Defendants' Omnibus Motions in Limine*.[11] These arguments, as a basis for excluding this potential evidence, have already been addressed by this Court. Specifically, on February 9, 2007, this court decided, "a final analysis of the witnesses' competence to testify, relevance, admissibility of hearsay under pertinent exception, appropriateness of alleged character evidence, the basis for witnesses' knowledge, and the potential for undue prejudice must await trial."[12] Despite this court's order, Defendants' arguments regarding the proposed evidence remain the same.

First, Defendants argue that Johnson and her co-workers are not competent to testify about Plaintiff's work performance. However, under the Federal Rules of Evidence, each of the witnesses Plaintiff intends to call to testify is competent to testify regarding his or her personal knowledge, unless otherwise provided by evidentiary rules.[13] Fred Meyer is a standards-based business with explicit and detailed descriptions of how work is to be performed. Plaintiff and each of her former Fred Meyer co-workers have firsthand knowledge of Fred Meyer employment policies and practices, and several have knowledge of the extent to

---

[11] Docket 47, *Defendants' Omnibus Motions in Limine*, dated July 31, 2007.

[12] Docket 82, *Order Denying Motions In Limine at Docket* 47, dated February 9, 2007.

[13] F.R.E. 601 & 602.

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

which these policies and practices were followed in Johnson's case. Johnson and her witnesses will testify that Johnson's job performance in performing "recovery" and building a "planogram" were consistent with their training, experience and Fred Meyer's own written policies and procedures.

As lay witnesses, these witnesses' opinions are admissible if their testimony is rationally based on their own perceptions and would be helpful to the determination of the facts at issue.[14] Plaintiff and her co-workers' opinions are rationally based on their own perceptions of Fred Meyer standards and criteria for recoveries and planograms, and of Plaintiff's job performance based on their experience and training. This testimony is helpful to illustrate how San Miguel deviated from Fred Meyer policies and procedures regarding recoveries and planograms, and it underscores the unfairness of Defendants' actions. While defense counsel may inquire as to the basis for these witness opinions, those opinions, nonetheless, are certainly relevant.

Defendants next argue that these witnesses' testimony should be excluded because, "[o]nly the opinions of the decision-makers are relevant."[15] The cases cited by Defendants in support of this proposition do not establish such a broad rule. For example, in *Schuler v. Chronicle Broadcasting Co., Inc.,*[16] the question before the Court was whether the plaintiff's subjective opinions about her own skills was enough to overcome the employer's assertions that she was less competent than competing applicants. This case does not support the defendants' broad attempt to prevent relevant evidence from being admitted in this matter.

The instant case clearly differs in that plaintiff and her former co-worker's testimony are not to be offered as subjective personal judgments or perception. Rather, Fred Meyer has comprehensive training manuals outlining objective criteria and standards for recoveries and planograms, making Plaintiff's witness testimony inherently less subjective and more reliable. As Fred Meyer employees and former employees, with training from Fred Meyer regarding the objective standards and criteria at issue in this case, Johnson and her former co-workers have

---

[14] F.R.E. 701.

[15] *Defendants' Motion to Exclude Potential Evidence at Trial* at 4, filed September 10, 2007.

[16] 793 F.2d 1010 (9th Cir. 1986).

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

extremely relevant testimony regarding Johnson's job performance. Johnson is certainly qualified to discuss her training and experience in working with Fred Meyer. She's also qualified to testify that the work she performed was consistent with that training and experience. Similarly, Johnson's co-workers can testify as to their training and experience. They can also testify as to their observations. It does not take a Fred Meyer "manager" to determine whether the objective criteria for completing a "recovery" or a "planogram" were completed. Someone who is trained, experienced and tasked with completing the work can testify as to what they did and what they observed. This testimony is relevant to determine whether, despite numerous volumes of Fred Meyer objective standards and criteria for recoveries and planograms, and despite the fact that Plaintiff performed these duties for over 10 years without any problems, San Miguel had legitimate reasons for criticizing Johnson's performance and then threatening Johnson with demotion or discharge if her performance did not improve. Moreover, one of the very issues in this case is whether San Miguel's subjective personal judgment regarding Johnson's performance of recoveries and planograms during the six days after she returned, conformed to Fred Meyer's objective standards and criteria for performing such tasks.

Finally, Defendants argue that Plaintiff's and her co-workers' testimony about Plaintiff's work performance should be excluded because it is improper character evidence. Evidence of a plaintiff's character, disposition, or personality may not be introduced to prove that she acted in conformity with any of these personal characteristics.[17] Because evidence of Johnson's work performance and dependability is not offered to prove Johnson's character or for the purpose that Johnson acted in conformity therewith, the testimony is not improper character evidence. Instead, the subject testimony is relevant to establish that Johnson's termination had nothing to do with her work performance. Plaintiff offers the evidence to assist the court in determining whether San Miguel acted in accordance with Fred Meyer policies and practices. The fact that Plaintiff offers evidence regarding first-hand observations of Johnson's work performance and dependability does not convert otherwise relevant testimony into improper character evidence.

---

[17] F.R.E. 404(a).

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

**D. Plaintiff's Fred Meyer co-workers' opinion testimony regarding Plaintiff's work performance and Fred Meyer policies, procedures and standards is admissible**

Defendants attempt to exclude testimony of Plaintiff's Fred Meyer co-workers' opinions arguing, generally, that this testimony lacks foundation and is hearsay.  As discussed above, Defendants raised identical arguments in their July 21, 2006 *Defendants' Omnibus Motions in Limine*,[18] and this Court decided that a final analysis of this evidentiary issue must await trial.[19]

Disregarding this court's decision, Defendants once again argue that Plaintiff's former co-workers' testimony regarding working conditions in the apparel department should be excluded because, "[o]nly the opinions of the decision-makers are relevant."[20]  As discussed in greater detail *supra*, the cases cited by Defendants in support of this proposition do not establish such a broad rule.  Instead, evidence may be excluded when it lacks foundation in that the witness does not have personal knowledge of the matter.  Personal knowledge may be established by the same witness's own testimony.[21]  As lay witnesses, Plaintiff's former Fred Meyer co-workers' opinion testimony is admissible if it is rationally based on their own perceptions and would be helpful to the determination of the facts at issue.[22]  All of the co-workers expected to testify on Plaintiff's behalf were employees at Fred Meyer when Plaintiff's employment was terminated.  They are competent to testify regarding their own observations and experiences.  Each and every one is familiar with Fred Meyer policies and practices.  Each was thoroughly trained by Fred Meyer on the objective standards and criteria for recoveries and planograms.  The training and employment experiences of each of these witnesses—in addition to their own statements—clearly establish the foundational basis for their personal knowledge of the matters on which they will be asked to testify.  Defendants' arguments in this regard simply lack merit.

---

[18] Docket 47, *Defendants' Omnibus Motions in Limine*, dated July 31, 2007.

[19] Docket 82, *Order Denying Motions In Limine at Docket* 47, dated February 9, 2007.

[20] *Defendants' Motion to Exclude Potential Evidence at Trial* at 4, filed September 10, 2007.

[21] F.R.E. 602.

[22] F.R.E. 701.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

**E. Evidence regarding San Miguel's work performance is admissible**

Plaintiff intends to present evidence regarding San Miguel's work performance, reliability, and attendance as a Fred Meyer manager. Defendants ask the court to exclude this evidence. They argue that this highly relevant evidence is prejudicial.

The objective aspect of the covenant of good faith and fair dealing requires that the employer act in a manner that a *reasonable person* would regard as fair.[23] The Alaska Supreme Court has previously explained that examples of objective breaches of the covenant of good faith and fair dealing would include disparate employee treatment, terminations on grounds that were unconstitutional, and firings that violated public policy.[24] An employer's failure to treat like employees alike can constitute a breach of the covenant.[25]

The record demonstrates that Johnson was a very capable, hard-working employee. For years, San Miguel relied upon Johnson to work sixty-plus-hour weeks. Johnson was primarily responsible for keeping the apparel department floor operating. In contrast, San Miguel was not noted for being particularly hard-working or diligent. In fact, when San Miguel was going through a situation quite similar to Johnson's (i.e., his personal divorce), his attendance and work performance was erratic and inconsistent. He frequently had emotional outbreaks. He was unable to do his job. He frequently came into work late, and left work early. Throughout that time period, it was Johnson upon whom he relied. It was her ability and work ethic which kept the Apparel Department going, and which guaranteed that San Miguel's work was done when he was unable to do it himself. Notwithstanding this, there were no disciplinary consequences for San Miguel and Fred Meyer, instead, tolerated his erratic performance, attendance and emotional outbreaks.

Less than eight months later, Johnson went through similar personal problems requiring her to take an emergency leave. When she returned, she told San Miguel that she might have to leave again later in the year if her daughter remained in the Philippines and if her daughter's

---

[23] *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1286-87 (Alaska 2001); *Ramsey,* 936 P.2d at 133.

[24] *ERA Aviation, Inc. v. Seekins,* 973 P.2d 1137, 1139 (Alaska 1999); *Luedtke v. Nabors Drilling, Inc.* 834 P.2d 1220, 1224 (Alaska 1992) (Luedtke II).

[25] *Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1032 (Alaska 1999); *Belluomini v. Fred Meyer of Alaska, Inc.,* 993 P.2d 1009, 1012-13 (Alaska 1999); *Alaska Marine Pilots v. Hendsch*, 950 P.2d 98, 109 (Alaska 1997).

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

condition did not improve.  Unlike San Miguel, who appears to have been afforded constant allowances for his behavior and conduct by his male supervisors (with whom he plays baseball and watches football), Johnson was subjected to an advanced form of employee discipline and then terminated for leaving an intimidating and emotionally charged confrontation.

Even after Johnson was discharged, Fred Meyer ignored San Miguel's attendance and work performance deficiencies.  Specifically, despite numerous complaints by other Fred Meyer employees regarding San Miguel's excessive tardiness and absences, and an investigation into these documented complaints and recommendation for discipline by Mary Lucas, San Miguel's personnel file contains no record of that investigation or subsequent disciplinary action.  None of these complaints were acted upon by management at Fred Meyer, and San Miguel retained his position as Apparel Manager.  This history establishes that Johnson, as a similarly situated employee, was held to a different standard and treated differently.  Accordingly, evidence of San Miguel's work performance is highly relevant to Johnson's claim of disparate treatment.

Johnson also claims that she was constructively discharged from her employment at Fred Meyer.  To establish constructive discharge it is not necessary that the employee actually "prove that the employer acted with a specific intent of causing the employee to resign."[26] Rather the employee "has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[27]  A constructive discharge may result from a "sustained campaign of harassment" against an employee.[28]

Interestingly, after Johnson's employment was terminated, her replacement, Johnna Havard experienced an identical campaign of harassment by San Miguel.  The parallels between San Miguel's treatment of Johnson and Johnson's replacement, Johnna Havard, demonstrate not only a course of improper conduct, in violation of the law, but also a method or *modus operandi* which San Miguel used when he wanted to remove someone from that position.  Because Defendants claim that Johnson "walked off" the job, this evidence is highly

---

[26] *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

[27] *Cameron*, 864 P.2d at 547.

[28] *Cameron*, 864 P.2d at 547.

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

relevant to Johnson's claim that she was constructively discharged.  In addition, because subjecting Johnson to a pattern of harassing conduct could in and of itself amount to disparate treatment or violation of public policy in breach of the covenant of good faith and fair dealing, this evidence is highly relevant to support these claims as well.

### F. Evidence of San Miguel's improper motive and discriminatory intent is admissible

Defendants ask this court to exclude all evidence regarding Plaintiff's dismissed claims. This, in essence, amounts to a request for this Court to exclude all evidence regarding San Miguel's improper motive and discriminatory intent.  Because Defendants' motives and reasons for taking adverse employment actions and ultimately terminating Johnson's employment are pivotal issues in this case, evidence regarding San Miguel's discriminatory practices, discriminatory intent, and improper motive is highly relevant and admissible.

The subjective, "good faith" component of the covenant of good faith and fair dealing, prohibits an employer from "acting with a subjectively improper motive, *such as* when it 'discharges an employee for the purpose of depriving him or her of one of the benefits of the contract.'"[29]  The question is whether the employer's actions were "made in *bad faith*."[30]

The evidence, which Defendants ask this court to exclude, demonstrates that San Miguel's motive for terminating Johnson's employment was improper and/or unlawful. Specifically, Johnson was forced out of her job because San Miguel wanted to replace her with Havard.  The replacement of a ten-year proven employee with a young woman who worked less than a month, was motivated by a desire to replace the older worker with a younger one who may be "more available" to San Miguel.  In this regard, there is extensive testimony by Havard and other employees of San Miguel's overt and unprofessional comments and actions towards young women.  Plaintiff's argument here is not that Johnson was terminated simply because she was a woman, or because she was older.  Rather, it is that when given the opportunity to put a younger, pretty and single worker in Johnson's position, San Miguel orchestrated Johnson's termination, effectively discriminating against her because of her age

---

[29] *Pitka,* 54 P.3d at 789 (citing *Era Aviation,* 973 P.2d at 1139; *Ramsey,* 936 P.2d at 133) (internal citations omitted) (emphasis added); *see also, Belluomini*, 993 P.2d at 1012.

[30] *Pitka*, 54 P.3d at 789 (emphasis added).

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

and gender. The facts that San Miguel expressed a preference for *"someone young and beautiful,"* rather than "*a hag*" combined with Havard's vocal desire to take over Johnson's position, and then the fact that Havard was essentially "handed the job" immediately after Johnson's discharge support this theory.

Next, this evidence has a tendency to show that Johnson was an important, valued Fred Meyer employee so long as she was absolutely reliable, and as soon as Johnson had to take leave to deal with her daughter's problems, she was no longer viewed as a valuable member of the organization. When Johnson returned to Fred Meyer, she informed San Miguel that she may need to take another leave of absence towards the end of the year if her daughter's condition did not improve. San Miguel's harsh and unrelenting campaign to orchestrate Johnson's demotion or termination—just days after she returned from her emergency leave—was motivated by an unfair decision to replace Johnson with someone he perceived as more available, more reliable and or more dependable. In effect, his conduct towards Johnson amounted to retaliation for her emergency leave—a breach of the covenant of good faith and fair dealing.

Because Defendants' motives and intent are elements of Plaintiff's claim, evidence of San Miguel's discriminatory practices, discriminatory intent and improper motive are relevant and admissible. Accordingly, this Court must deny Defendants' request.

## IV. CONCLUSION

Defendants ask the court to exclude relevant, admissible evidence. The court must deny Defendants' request for the following reasons: (1) evidence regarding the "for cause" employment relationship between Johnson and Fred Meyer is highly relevant to Defendants' defenses; (2) evidence regarding the "for cause" nature of Johnson's employment relationship underscores the unfairness of Defendants' actions towards Johnson and is, thus, highly relevant to Plaintiff's claims; (3) affidavits and other out-of-court statements from Plaintiff's former Fred Meyer co-workers may be admissible under Federal Evidence Rules 801(d)(1), 803(5), and 803(21), or other hearsay exceptions, and a blanket exclusion of this potentially admissible evidence is improper; (4) Plaintiff and her co-workers' testimony regarding Plaintiff's work performance and reliability is rationally based on the objective Fred Meyer standards and work

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

performance criteria; (5) because one of the issues in this case is whether San Miguel's subjective personal judgment regarding Johnson's performance of recoveries and planograms conformed to Fred Meyer's objective standards and criteria for performing such tasks, Plaintiff and her co-workers' testimony regarding Plaintiff's work performance and reliability is highly relevant and admissible; (6) as lay witnesses, Plaintiff's former Fred Meyer co-workers' opinion testimony is rationally based on their own perceptions and would be helpful to the determination of the facts at issue; (7) evidence regarding San Miguel's work performance as a Fred Meyer manager is highly relevant to Johnson's claims of disparate treatment and constructive discharge; and (8) because Defendants' motives and reasons for taking adverse employment actions and ultimately terminating Johnson's employment are pivotal issues in this case, evidence regarding San Miguel's discriminatory practices, discriminatory intent, and improper motive is highly relevant and admissible.

DATED this 20th day of September, 2007, at Juneau, Alaska.

Respectfully submitted,
CHOATE LAW FIRM LLC

s/ *Jessica L. Srader*
_____
JESSICA L. SRADER
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
Fax: (907) 586-6633
EM: lawyers@choatelawfirm.com
AK Bar: 0412105

Attorneys for Plaintiff

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

## **PROOF OF SERVICE**

STATE OF ALASKA, FIRST JUDICIAL DISTRICT AT JUNEAU

I am employed in the City and Borough of Juneau, State of Alaska. I am over the age of 18 and not a party to the within action. My business address is 424 N. Franklin Street, Juneau, AK 99801.

On September 20, 2007, I served the foregoing document described as ***Plaintiff's Opposition to Motion to Exclude Potential Evidence at Trial***, on the interested parties in this action by serving the original true copies, addressed as follows:

| | |
|---|---|
| James Dickens<br>Miller Nash LLP<br>Attorney For: Fred Meyers<br>4400 Two Union Square<br>601 Union Street<br>Seattle, WA  98101-2352<br>Phone: (206) 622-8484<br>Fax: (206) 622-7485 | Peter Gruenstein<br>Gruenstein & Hickey<br>Attorney For: Fred Meyers<br>500 L Street, Suite 401<br>Anchorage, AK  99501<br>Phone: (907) 258-4338<br>Fax: (907) 258-4350 |

☐ By mail, I deposited such envelope(s) in the mail at Juneau, Alaska, with postage thereon fully prepaid.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Juneau, Alaska, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ By personal service, I delivered such envelope(s) by hand to the ☐ office(s); ☐ the court box of the addressee(s).

☐ By facsimile, I transmitted such documents from Juneau, Alaska, to the offices of the addressee(s).

☐ By email, I transmitted such documents from Juneau, Alaska, to the email address of the addressee(s).

☒ By electronic service through the court of record's electronic service system.

☐ (State) I declare under penalty of perjury under the laws of the State of Alaska that the foregoing is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 20, 2007, at Juneau, Alaska.

s/ *Annya Ritchie*
_____
CHOATE LAW FIRM LLC

20 of 20

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)  [23003].*
PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE POTENTIAL EVIDENCE AT TRIAL
J-04-008 CV (RRB)