Hon. Ralph R. Beistline

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MYRNA I. JOHNSON,<br><br>    Plaintiff,<br><br> v.<br><br>FRED MEYER STORES, INC., a Delaware corporation; and JAIME SAN MIGUEL,<br><br>    Defendants. | Case No. 1J-04-008-CV (RRB) |

**CERTIFICATION ORDER RE STATE COURT ISSUE**

**I. Issue of State Law**

Pursuant to Alaska Appellate Rule 407(a), the United States District Court for the District of Alaska hereby certifies to the Alaska Supreme Court the following question of law:

> After dismissal of all claims of alleged discrimination on summary judgment, does an at-will employee state a tort public policy claim under Alaska's implied covenant of good faith and fair dealing by alleging that she was discharged in order to replace her with someone with whom her supervisor had a hoped-for romantic interest?

**II. Complaint and Prior Relevant Orders**

1. Complaint.

Plaintiff Myrna I. Johnson filed a lawsuit in the United States District Court for the District of Alaska on March 17, 2004, regarding the ending of her employment with defendant Fred Meyer Stores, Inc., on March 18, 2002. The defendants are plaintiff's former Juneau employer, Fred

Meyer, and her former apparel department manager, Jaime San Miguel. She alleged multiple causes of action, including: Count I – gender discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; Count II – age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; Count III – retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*; Count IV – discrimination and harassment on the basis of age, gender, and parenthood in violation of the Alaska Human Rights Act, Alaska Stat. § 18.80.010, *et seq.*; Count V – wrongful discharge in violation of the Alaska common law duty of good faith and fair dealing; and Count VI – intentional tortious interference with business relations.

    2.    <u>Order on Summary Judgment (Docket 81).</u>

After the close of discovery, defendants moved for summary judgment as to all six counts. On February 9, 2007, this Court granted defendants' motion as to all counts except Count V, concluding that "Defendants' Motion for Summary Judgment (Docket 45) is hereby GRANTED with respect to Counts I – IV and VI of Plaintiff's Complaint and DENIED with respect to Count V." Order (Docket 81) at 19. The remaining claim in Count V was for wrongful termination of an at-will employee in violation of the common law duty of good faith and fair dealing. "Taking the evidence in the light most favorable to Plaintiff, the Court concludes that genuine issues of material fact exist from which the trier of fact could conclude that Defendants' actions were based on improper motives or were unfair." *Id.*

    3.    <u>Order on Motion to Dismiss (Docket 93).</u>

On July 20, 2007, defendants filed a motion to dismiss plaintiff's sole remaining claim of wrongful termination in breach of the covenant of good faith and fair dealing (Docket 86). On August 21, 2007, this Court denied defendants' motion (Docket 93) as untimely, and further stated that "the Court remains persuaded that Plaintiff does state a claim for breach of the covenant of good faith and fair dealing and that there are sufficient factual disputes surrounding the circumstances of Plaintiff's termination to permit the matter to proceed to trial on this single theory."

4. <u>Order re Evidence (Docket 118).</u>

On October 1, 2007, this Court issued an Order (Docket 118) regarding defendants' motion to exclude six areas of potential evidence at trial. This Court held that plaintiff was employed "at-will" and rejected plaintiff's contention that she was terminable only "for cause." This Court further framed the issues for trial, stating:

> Plaintiff must first prove that she was actually or constructively terminated. Second, Plaintiff must prove that Defendant San Miguel disciplined and/or terminated her in order to hire Johnna Havard, an employee toward whom he apparently had a romantic interest.

Defendants sought to exclude all evidence of plaintiff's claims of discrimination which had been dismissed. This Court held (Docket 118 at 10):

> While the dismissed claims are not admissible per se, withdrawal or dismissal of those claims does not render the supporting evidence inadmissible as to Plaintiff's claim for breach of the covenant of good faith and fair dealing. Although Plaintiff's evidence was insufficient to support these dismissed claims, Plaintiff may introduce the same evidence to demonstrate that Defendants acted with a subjectively improper motive or in a manner which a reasonable person would regard as unfair. Regarding the latter, the evidence is relevant to show both disparate treatment and violation of public policy.[16]
>
> * * *
>
> [16] " . . . The jury will be permitted to decide whether Defendants' actions comport with "what is just and right" or "strike at the heart of a citizen's social rights, duties, and responsibilities."

5. <u>Order re Motion for Reconsideration (Docket 127).</u>

On October 2, 2007, defendants moved for reconsideration of two aspects of the October 1, 2007, Order (Docket 122): the legal standard for a tort public policy claim and whether evidence of dismissed claims may be introduced to support a public policy claim. The Court invited a response from plaintiff, which was received on October 4, 2007 (Docket 126). After considering the briefing by both sides, on October 5, 2007, this Court issued an Order (Docket 127) as follows:

> After thoroughly reviewing the matter, it is the Court's view that, given the previous dismissal of Plaintiff's discrimination and

> retaliation claims, Plaintiff cannot now argue violation of public policy as a separate theory of recovery. Evidence relating to these claims is only admissible to the extent that it is relevant to Plaintiff's remaining claim for violation of the implied covenant of good faith and fair dealing. While Alaska does not appear to embrace the so-called "sweetie rule" proposed by Defendants, there also does not appear to be an explicit public policy in Alaska prohibiting an employer from discharging an at-will employee in order to replace her with someone else – even if motivated by a hoped-for romantic interest. While the statutes and case law cited by Plaintiff stand for important public policies, these policies are not at issue here. Because there is no explicit public policy prohibiting Defendants' alleged actions, and because this Court declines to announce one in the absence of persuasive authority, Plaintiff may not use the phrase "public policy" at trial. The Court's Order at Docket 118 is hereby amended by striking footnote 16 and the accompanying sentence.
>
> Whether there has been a breach of public policy is significant because Plaintiff has requested a jury instruction on tort damages, in addition to contract damages. The Alaska Supreme Court has held that tort damages are allowable for a breach of the covenant of good faith and fair dealing only if the employer's actions also violate an explicit public policy. As that does not appear to be the case here, tort damages are therefore not appropriate under the facts of this case.

Order (Docket 127) at 2-4.

### III. No Controlling Precedent

It is the opinion of this Court that there is no specific controlling precedent in the decisions of the Alaska Supreme Court regarding this issue as set forth above.

### IV. Relevant Facts

Myrna Johnson moved to Juneau with her family in 1992 and began working at the Fred Meyer Juneau store. In 1996 she was promoted to second assistant in the apparel department, where she worked with defendant Jaime San Miguel, the first assistant.

In early 2001 Mr. San Miguel was promoted to apparel department manager. He posted the opening for a new first assistant and recommended Johnson as the first assistant manager of the apparel department.

In January 2002 plaintiff traveled to the Philippines for two weeks to visit her extended family. Upon her return to Juneau in February 2002, she discovered that her 17-year-old daughter

had run away from home. San Miguel allowed plaintiff to take multiple days of leave to locate her daughter and arrange for her to be hospitalized for substance abuse treatment. Plaintiff then requested and received additional leave from Fred Meyer to care for her daughter. She thereafter took her daughter to the Philippines to live with her extended family and spent the next month tending to her daughter.

Due to plaintiff's absence, Fred Meyer transferred Johnna Havard, a single female in her twenties who worked as a second assistant apparel manager in Wasilla, to Juneau to temporarily assist with plaintiff's responsibilities.

Plaintiff Johnson returned to Juneau from the Philippines on Sunday, March 10, 2002. Johnson was assigned to work the closing shift beginning on Tuesday, March 12, 2002. Over the course of her first six days back at work (March 12-18, 2002) plaintiff received several e-mails from San Miguel in which he criticized the closing shift recoveries and displays as not timely or improperly set up. San Miguel told plaintiff that her work was a step backwards from the weeks during her leave and that expectations were a lot higher now.

After closing on Sunday, March 17, 2002, San Miguel and Fred Meyer Juneau store director Fred Sayre asked plaintiff to meet them the following day in Sayre's office. On March 18, 2002, Sayre and San Miguel read plaintiff an Employee Warning Notice which required her to show some improvement over the next 30 days or be removed from her position as the apparel department assistant manager.

There are factual disputes regarding plaintiff's reaction to the warning notice and statements allegedly made by Sayre and San Miguel during the March 18, 2002, meeting. Plaintiff alleges that she became emotionally distraught, began to cry and said she needed to leave the room to get a glass of water and have more space. Defendants assert that Sayre warned plaintiff three times that if she walked out of the meeting it would be considered a voluntary resignation, contrary to company policy. Plaintiff denies hearing such a warning. Within a few minutes after plaintiff's departure,

Sayre called the Fred Meyer human resources representative in Portland to report that plaintiff had "walked off" the job. As a result, the company declared that plaintiff had voluntarily quit her job.

After plaintiff's employment ended, Fred Meyer posted the first assistant apparel job opening on the Fred Meyer Intranet and two applicants applied. Johnna Havard, who had returned to Wasilla, was selected and moved to Juneau in April 2002.

Plaintiff alleges that she was forced out of her job because San Miguel wanted to replace her with a younger, single, "more available," and attractive woman. She contends that San Miguel's criticism of her performance was unfounded and that this criticism, combined with San Miguel's other conduct, created such a hostile atmosphere that any reasonable person would have felt compelled to resign. Plaintiff alleges that this hostile environment was because San Miguel wanted to replace Johnson with Havard because he had a prospective romantic interest in her.

Defendants deny these allegations. They contend that San Miguel had no romantic interest in Havard and that they merely were counseling plaintiff because her performance had not been satisfactory during her initial week back at work, and they only wanted to help her to improve her performance. They note that plaintiff was not being demoted, or suspended, or being docked any pay as a result of the counseling. Defendants contend that when plaintiff walked out of the March 18 meeting, after being advised not to do so, it was a clear violation of the Fred Meyer Employee Responsibilities policy, which plaintiff previously had read and on which she had signed off. The policy states that walking off the job is considered a voluntary quit by the employee. Defendants contend plaintiff even admitted that she knew she had quit her job when she walked out of the meeting. Defendants further contend that San Miguel did not have the authority to terminate plaintiff and that he was not involved in the decision between the store director and the company human resources representative when they concluded that plaintiff had walked off the job.

## V. Motion to Certify

This Court concluded in its October 5, 2007, Order (1) that given the previous dismissal of plaintiff's discrimination and retaliation claims, plaintiff could not argue violation of public policy as

a separate theory; (2) that there was no explicit Alaska public policy which would prevent a supervisor from allegedly taking action to terminate an at-will employee to replace her with someone in whom he might have a potential romantic interest; and (3) that tort damages were not allowable at trial because there was no potential claim of violation of an explicit public policy.  In response, plaintiff made an oral motion at the final pretrial conference on October 5, 2007, to certify the issues in this Order to the Alaska Supreme Court, and to continue the trial while the certification was pending.  Plaintiff's motion was granted.

The parties have submitted substantial briefing on this public policy issue and the legal standards which should be applied.  This briefing is part of the court record in the District of Alaska.

DATED this _____ day of October, 2007.

_____
Ralph R. Beistline
United States District Judge