Mark Clayton Choate, Esq., AK #8011070
CHOATE LAW FIRM LLC
424 N. Franklin Street
Telephone: (907) 586-4490
Facsimile:  (907) 586-6633

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT JUNEAU

| | |
|---|---|
| MYRNA I. JOHNSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>FRED MEYER STORES, INC.,<br><br>    Defendant. | Case No. J-04-008 CV (RRB) |

### JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"

FRED MEYER STORES, INC. has given notice that it intends to "impeach" MYRNA JOHNSON because of her 2007 conviction for the sale of "knock-off" imitation designer handbags in violation of 18 U.S.C. § 2320, the Trademark Counterfeiting Act. Secondarily, FRED MEYER seeks to reopen discovery to obtain information as "to the extent plaintiff failed to look for lawful employment, but instead engaged in unlawful activity".

This Court should rule that JOHNSON's conviction is not one that would allow impeachment under FRE 609(a)(2) because 18 U.S.C. § 2320 is not a crime of dishonesty or false statement; i.e. it does not require the necessary *Crimin Falsi* such that its violation would bear on MYRNA JOHNSON's "propensity to testify truthfully." In addition, this Court should rule that the prejudicial effect of impeaching her with her conviction for violation of 18 U.S.C. § 2320 outweighs its probative effect under FRE 609(a)(1). Finally, this Court should not

allow the Defendant to utilize her conviction as a backdoor means to attack her real efforts to mitigate her damages resulting from her wrongful discharge.

I

RELEVANT HISTORY

JOHNSON employment as a Lead (First) Assistant Apparel Manager for FRED MEYER ended on March 18, 2002. Throughout the extensive discovery in this wrongful discharge case, there has never been an allegation that at any time, JOHNSON ever acted dishonestly or made a false statement. Rather, JOHNSON claims that she was wrongfully discharged. Her employer claims in defense that there was no cause to discharge her and her job ended when she "walked off the job" by walking out of a counseling session.

After the termination of her employment, JOHNSON was unable to find comparable employment in Juneau. She was and remains the primary earner for her family. Unable to make the mortgage payments on her home, it was lost through foreclosure and repossessed. Having lost her job and home, JOHNSON and her husband relocated to his family home in South Carolina. She looked for work in South Carolina but was unable to find anything which was remotely comparable to her earnings at FRED MEYER and would allow her to support her family.

JOHNSON decided to start a small business in a local mall with savings from her retirement account. The shop, called "Isabelle's," sold women's purses, handbags and accessories. Most of the items copied to some degree or another, the styles of higher-priced "designer" handbags. However, the majority of the purses and handbags were of obviously lesser quality and sold for a fraction of the designer price. A small number of the items were better quality copies. Notices in the store prominently confirmed that the items being sold were imitations and were "Handbags Inspired by Famous Designers."

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

The small number of better quality copies got JOHNSON were close enough in appearance to result in a claim of trademark infringement. JOHNSON was charged initially by local law enforcement authorities and then by the U.S. Government for violation of 18 U.S.C. § 2320(a) – Trafficking in Counterfeit Goods. Described as a "Trademark Counterfeiting Act", this law is designed to protect trademarks and the manufacturers who obtain them. It requires no intention to deceive the actual purchaser of the item. "Likely to confuse" anyone in the general public is sufficient to trigger the statute.

Her attempt at self-employment ended with the seizure of not only the small number of better quality knock-offs, but with her entire inventory. With permission of the Court, she and her husband subsequently moved to Arizona where she worked successfully as a night manager at a restaurant. Desiring to be closer to her married daughter in Northern California, she and her husband applied for and were hired to work as live-in managers at a U-Haul dealership in Sacramento. She has held that job since late 2005 and received exceptional performance evaluations throughout her employment. In the Spring of 2008, JOHNSON pled guilty to a single count of violating 18 U.S.C. § 2320(a) and was fined $1,000.00 and placed on probation.

## II

## LAW

18 U.S.C. § 2320 "Trafficking in Counterfeit Goods or Services" states in pertinent part:

(a) "Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or intentionally traffics or attempts to traffic in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, ***knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive,*** shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000. In the case of an offense by a person under this section that occurs after that person is convicted of another

3 of 14

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

offense under this section, the person convicted, if an individual, shall be fined not more than $5,000,000 or imprisoned not more than 20 years, or both, and if other than an individual, shall be fined not more than $15,000,000." (emphasis added)

A review of the statute demonstrates that its purpose is to deter and punish the "trafficking" in goods which "are likely to cause confusion, to cause mistake, or to deceive". The statute may be violated even though the purchaser is aware that the "knock-off" product is a copy and not genuine. The statute requires no specific intent to defraud or deceive a purchaser. It requires to *Crimin Falsi.* No false statement need be made.

Further review of the statute confirms that there are extensive forfeiture provisions, intended to take the counterfeit property out of the stream of commerce. 18 U.S.C. § 2320(b) When there is a conviction, restitution is to be paid not to the government but rather to "the owner of the mark". 18 U.S.C. § 2320(b)(4)

Confirming that the statute's intent is not to punish a false statement or misrepresentation to an individual but rather to protect trademark by penalizing the sale of "knock-off" items, "Victim Impact Statements" are permitted from:

- Producers and sellers of legitimate goods or services affected by conduct involved in the offense;
- Holders of intellectual property rights in such goods or services; and
- The legal representatives of such producers, sellers, and holders.[1]

Federal Rule of Evidence (FRE) 609 Impeachment by Evidence of Conviction of Crime states in pertinent part:

(a) General rule.

---

[1] 18 U.S.C. § 2320(d)(2)(A) - (C)

4 of 14

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

For the purpose of attacking the character for truthfulness of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted *if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect* to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it *readily can be determined* that establishing the elements of the crime required proof or admission of an *act of dishonesty or false statement* by the witness. (emphasis added)

III

ARGUMENT

A. <u>18 U.S.C. § 2320(a) Is Not A Crime Of "Dishonesty" And As Such, Cannot Be Used For Impeachment Purposes Pursuant To FRE 609(a)(2).</u>

FRE 609(a)(2) allows a party to impeach a witness where it can be "readily determined" that witness was convicted of a crime requiring "proof or admission of an act of dishonesty or false statement." FRED MEYER makes two erroneous statements in claiming that JOHNSON's conviction for violation of the Trademark Counterfeiting Act was a crime of dishonesty warranting its automatic admission for impeachment purposes under FRE 609(a)(2).

First, FRED MEYER incorrectly cites the statutory language in 18 U.S.C. § 2320(a) when it uses the conjunctive "and" rather than the disjunctive "or" in its quote at page 2:

*"the use of which counterfeit marks was likely to cause confusion, to cause mistake, **and** to deceive."*

By erroneously phrasing the statute as "and to deceive", rather than correctly "or to receive", FRED MEYER would lead the Court to conclude that conviction under the statute contains within it a finding of intent to deceive. Because the statutory language is "or" rather than "and", one may be convicted for trafficking in a good which is "likely to confuse", "likely

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

to cause mistake" or "likely to deceive". Because the statute on its face requires no *Crimin falsi* in order to be violated, a more detailed investigation is needed to determine whether in fact, conviction under this statute is one of dishonesty or false statement.

The purposes for the Trademark Counterfeiting Act were described by the Eleventh Circuit in *United States v. Torkington,* 812 F.2d 1347, 1352 (11th Cir. 1987):

> "Like the Lanham Act, the Trademark Counterfeiting Act is not simply an anti-consumer fraud statute. Rather, a central policy goal of the Act is to protect trademark holders' ability to use their marks to identify themselves to their customers and to link that identity to their reputations for quality goods and services.
>
> It is essential to the Act's ability to serve this goal that the likely to confuse be interpreted to include post-sale confusion. A trademark holder's ability to use its mark to symbolize its reputation is harmed when potential purchases of its goods see unauthentic goods and identify these goods with the trademark holder. This harm to trademark holders is no less serious when potential purchasers encounter these counterfeit goods in a post-sale context."

FRED MEYER continues these misrepresentations in equating, without any analysis, the violation of Trademark Counterfeiting Act with the use of counterfeit money or bills. While each crime involves counterfeit products, in one (money/bills) the intent it to represent the counterfeit item as if it is an original. This is a false statement and the heart of 609(a)(2) requirement that for impeachment purposes, the underlying crime must involve dishonesty or a false statement.

In contrast, the trafficking in a "knock-off" purse or handbag, which is an obvious and cheap imitations of a highly valued original, is not intended to fool or deceive the purchaser. In fact, the items are identified as copies and imitations. The products are sold under a disclaimer and their cheap price and origin confirm that they are copies. There is no *Crimin Falsi* in the sale.

If a counterfeit bag was sold as an original bag, it would be more akin to the passing of counterfeit money or bills. A false representation is made. However, when a counterfeit bag is

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

sold as a copy, for a fraction of the price of the original, with its lack of authenticity noted, there is no *Crimin Falsi*. There is no dishonesty or false statement. A market exists for vanity items where the sole advantage is for the purchaser to represent to third parties that she is in possession of what "looks like" or may appear to be an expensive designer bag. It is a bit like having a roll of "monopoly money" which one shows others at a distance. It may cause others to think you are in possession of money but it will not allow you to purchase anything.

The sale of a "knock off" handbag or purse, if it's appearance is close to the original, is a violation of the Counterfeit Trademark Act, even if the purchaser is aware that she is buying an inexpensive copy of the original design:

> "...the "likely to cause confusion, to cause mistake, or to deceive" test is not limited to direct purchasers of counterfeit products. Instead, the correct test is whether the defendant's use of the mark was likely to cause confusion, mistake, or deception in the public in general.
>
> This conclusion is mandated by the plain language of the statute. Even in the context of post-sale confusion, it is still the defendant's use of the product in commerce (i.e. the sale of the counterfeit product) that is likely to cause confusion, mistake, or deception in the public in general (i.e., when the product comes into contact with third parties."[2]

FRE 609(a)(2) sets as a prerequisite that the conviction must be for an act of dishonesty – essentially a false representation or misleading statement which would cause one to then question other statements made by the person convicted of the crime.

> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.[3]

---

[2] *United States v. Foote*, 413 F.3d 1240 at 1246 (CA10, 2005)
[3] *U.S. v. Smith*, 551 F.2d 348 (CA DC 1976).

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

Courts around the country have concluded that criminal conduct that does not require a specific intent to deceive, cannot be used for impeachment purposes under FRE 609(a)(2). This includes armed robbery;[4] receiving stolen goods and shoplifting.[5]

While there does not appear to be a hard and fast rule in this regard, the better approach is for the Court to look at the facts in the individual case to determine whether the conduct which comprised the underlying crime "involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."[6]

In this matter, mere violation of 18 U.S.C. § 2320(a) cannot on its own be the basis for impeachment pursuant to FRE 609(a)(2) because the statute requires no *Crimin Falsi*. For these reasons, the Court should not allow FRED MEYER to impeach MYRNA JOHNSON pursuant to FRE 609(a)(2) with her conviction for violation of 18 U.S.C. § 2320(a).

B. <u>Impeachment Should Not Be Allowed Under FRE 609(a)(1) Because The Foreseeable Prejudice Substantially Outweighs the Probative Value</u>.

In addition, FRED MEYER should not be allowed to impeach JOHNSON with her conviction pursuant to FRE 609(a)(1). Assuming that the felony conviction is not one of dishonesty or false statement, the next step in the Court's analysis is to weigh the prejudicial effect of the intended impeachment against its probative effect.

As noted in the preamble of this pleading, there has never been an assertion made that JOHNSON acted dishonestly in any fashion during her employ with FRED MEYER. In fact, her employment record is sterling, with steady increases in pay, promotion and responsibility as she worked for almost a decade for her employer.

---

[4] *U.S. v. Smith*, 551 F.2d 348 (CA DC 1976).
[5] *USA v. Foster*, 227 F.3d 1096 (9th Cir., 2000)
[6] JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE, H.R. Conf. Rep. No. 1597, 93rd Cong., 2nd Sess. 9, *reprinted* in 1974 U.S. Code Cong. & Admin. News 7098, 7103.

8 of 14

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003]*.
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

There are few factual disputes regarding the events in question surrounding her termination. FRED MEYER states that JOHNSON "walked-off" the job, "voluntarily quitting" her career with the Defendant. FRED MEYER has never alleged that there was cause to fire her. FRED MEYER has never alleged that she acted dishonestly. FRED MEYER has never alleged that there was anything about her conduct which would place her character as to honesty or truthfulness at issue.

As there is no claim that MYRNA JOHNSON acted in a deceptive, deceitful, fraudulent or dishonest manner, at any time while employed by FRED MEYER, the question then becomes one of weighing whether the prejudicial effect of her subsequent conviction for violation of the Trademark Counterfeiting Act, 18 U.S.C. § 2320(a), is significantly more prejudicial than probative. The purpose of impeachment in this context is to remind the jury that the witness has in the past made false statements or something akin to false statements that would cause the jury to weigh the witness' credibility in a different manner than others. There simply is no showing by FRED MEYER that the violation of 18 U.S.C. § 2320(a) has any probative value in this matter. Its prejudicial effect is extreme – directing the jury to in some fashion consider her unrelated conviction for trademark violation, instead of the issues in this matter, that of her claim for wrongful discharge and damages.

C. The Judgment in the Criminal Case is Hearsay – FRED MEYER Should Not Be Allowed to Backdoor in the Facts Surrounding that Judgment in the Damages Phase of Trial.

FRED MEYER finally makes the argument that JOHNSON's conviction should be admitted for the purposes of challenging her claim for lost earnings. FRED MEYER claims, without any basis, that because JOHNSON self-employment ended with her being charged with violation of 18 U.S.C. § 2320(a), that her time "devoted to the unlawful activity" up to the time of her conviction should be in some fashion considered ineligible for her lost earnings claim.

9 of 14

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB)* [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

Interestingly, this claim by FRED MEYER is made without citation to any legal authority. It is in fact a back door attempt to bring in information regarding JOHNSON's conviction which cannot be raised under FRE 609(a)(1) or (2). JOHNSON's prior conviction is hearsay. It cannot be introduced to prove "the truth of the matter asserted".

There is no general rule that says that being charged with a crime acts as a defense to a claim for lost wages. JOHNSON immediately sought other employment after the closure of her business. She has worked continuously since then and has had almost no periods of unemployment. In fact, JOHNSON, since late 2005, has worked for U-Haul in Sacramento, averaging approximately 75 hours per week. The argument that her violation of the Trademark Counterfeiting Act has in some fashion compromised or limited her ability to work is simply unfounded. FRED MEYER's argument that her being charged and convicted should in some fashion act to prevent her from making her damage claims in this matter.

Minimally, before allowing any discussion of the circumstances behind JOHNSON's business' closure to be admitted to the jury, the Court should consider *in camera* whether FRED MEYER can establish that the criminal charges and subsequent conviction had *any* impact on her ability to work. She didn't serve a day in jail. Since leaving South Carolina, she has been steadily employed, always working more than a 40 hour work week. There is no evidence, to Plaintiff's knowledge, that she could or would have earned more money during the brief time period her business was open in South Carolina, had she taken employment somewhere else.[7]

JOHNSON's wage loss claims arise from the fact that since her wrongful discharge, she has been unable to replace, on an hourly basis, the wage she had achieved through ten years of

---

[7] JOHNSON's only claims for contract damages in this case are limited to the difference between her actual and expected earnings at FRED MEYER as contrasted with her earnings since her discharge. She earned at least as much while operating her business in South Carolina as she would have had she taken employment somewhere else in that area.

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

loyal and committed service to FRED MEYER. She earns approximately one-half of the amount she would have earned had she been able to maintain her employment at FRED MEYER. In order to support her family, she now works an average of 75 hours per week. It is only through overtime and double-time that she earns something like what she was able to earn in far fewer hours at FRED MEYER.

There is no basis for FRED MEYER's unsupported argument that JOHNSON's violation of 18 U.S.C. § 2320(a) has had any impact on her ability or capacity to earn money. She has diligently sought work and worked since being terminated at FRED MEYER. Her lost earnings claims simply are unrelated to the criminal charges and conviction. FRED MEYER should not be allowed to introduce inadmissible hearsay (her judgment) into this matter. The purpose would clearly be to prejudice the jury with the conviction.

JOHNSON does not object to FRED MEYER inquiring as to her employment history in 2006 through the present/ JOHNSON has voluntarily produced her tax returns and earnings' statements for 2006, 2007 and YTD with U-Haul. That employment history is the proper subject of examination. By agreement, JOHNSON's deposition on her earnings' history since her last deposition has been set for August 6th.

IV

CONCLUSION

This Court should enter the following Orders *in limine* in regard to FRED MEYER's Notice of Intent to Impeach and Motion for Additional Discovery:

1. FRED MEYER has not established that JOHNSON's conviction under 18 U.S.C. § 2320(a) is a crime of dishonesty or false statement such that she can be impeached pursuant to FRE 609(a)(2).

2. Introduction of the conviction should not occur pursuant to FRE 609(a)(1) because it is substantially more prejudicial than probative.

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

3. FRED MEYER is prohibited from mentioning or arguing in any fashion that JOHNSON was charged or convicted of violation of 18 U.S.C. § 2320(a) because such charges and conviction are inadmissible hearsay.

4. FRED MEYER may not argue to the jury the circumstances regarding the closure of JOHNSON's business in South Carolina. FRED MEYER may only argue that the business closure caused her economic harm if it has evidence that but for the closing, her earnings in South Carolina would have been greater.

DATED Wednesday, July 30, 2008, at Juneau, Alaska.

Respectfully submitted,
CHOATE LAW FIRM LLC

s/ Mark Choate
_____
MARK CHOATE
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
Fax: (907) 586-6633
EM: lawyers@choatelawfirm.com
AK Bar: 8011070

Attorneys for Plaintiff

12 of 14

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
(DRAFT) JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

# PROOF OF SERVICE

STATE OF ALASKA, FIRST JUDICIAL DISTRICT AT JUNEAU

I am employed in the City and Borough of Juneau, State of Alaska. I am over the age of 18 and not a party to the within action. My business address is 424 N. Franklin Street, Juneau, AK 99801.

On July 30, 2008, I served the foregoing document described as JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY", on the interested parties in this action by serving the original true copies, addressed as follows:

James Dickens
Miller Nash LLP
Attorney For: Fred Meyers
4400 Two Union Square
601 Union Street
Seattle, WA  98101-2352
Phone: (206) 622-8484
Fax: (206) 622-7485

Peter Gruenstein
Gruenstein & Hickey
Attorney For: Fred Meyers
500 L Street, Suite 401
Anchorage, AK  99501
Phone: (907) 258-4338
Fax: (907) 258-4350

☐ By mail, I deposited such envelope(s) in the mail at Juneau, Alaska, with postage thereon fully prepaid.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Juneau, Alaska, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ By personal service, I delivered such envelope(s) by hand to the ☐ office(s); ☐ the court box of the addressee(s).

☐ By facsimile, I transmitted such documents from Juneau, Alaska, to the offices of the addressee(s).

☐ By email, I transmitted such documents from Juneau, Alaska, to the email address of the addressee(s).

☒ By electronic service through the court of record's electronic service system,

13 of 14

Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].
JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

☐ (State) I declare under penalty of perjury under the laws of the State of Alaska that the foregoing is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on July 30, 2008 at Juneau, Alaska.

*signature*

CHOATE LAW FIRM, LLC

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

14 of 14

*Johnson, Myrna v. Fred Meyer (J-04-008 CV RRB) [23003].*
JOHNSON'S OPPOSITION TO "NOTICE OF INTENT TO IMPEACH PLAINTIFF RE FELONY CONVICTION; MOTION FOR FURTHER DISCOVERY"
J-04-008 CV (RRB)