James R. Dickens  
MILLER NASH LLP  
4400 Two Union Square  
601 Union Street  
Seattle, WA 98101-2352  
Telephone: (206) 622-8484  

Peter Gruenstein  
GRUENSTEIN & HICKEY  
Resolution Plaza  
1029 W. 3rd Avenue, Suite 510  
Anchorage, AK 99501  
Telephone: (907) 258-4338  

    Attorneys for Defendant

Hon. Ralph R. Beistline

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| MYRNA I. JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>FRED MEYER STORES, INC., a Delaware corporation,<br><br>    Defendant. | Case No. 1J-04-008-CV (RRB) |

## DEFENDANT FRED MEYER'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### I. MOTION

**A. Per Fed. R. Civ. P. 50, defendant Fred Meyer Stores, Inc., moves the Court for an order setting aside the jury verdict and directing the entry of judgment in favor of defendant on the following separate and independent bases because:**

    1.    Plaintiff's claim of an alleged violation of the implied covenant of good faith and fair dealing under the subjective test if she was terminated so her supervisor could develop a romantic relationship with another employee failed to state a claim as a matter of law.

    2.    As a matter of law the question of whether plaintiff was terminated by Fred Meyer, rather than plaintiff's claim of constructive discharge, should not have been submitted to the jury and the jury did not find constructive discharge.

    3.    No reasonable jury could have found that plaintiff's "supervisor" terminated her as required by Jury Instruction No. 17.

**B.**    **<u>Per Fed. R. Civ. P. 59, Fred Meyer moves the Court for an Order setting aside the jury verdict and ordering a new trial, if judgment is not entered in its favor, because plaintiff's counsel improperly prejudiced the jury in his closing by arguing that Fred Meyer had the "ability to pay a large amount" to plaintiff.</u>**

## II. <u>DISCUSSION</u>

**A.**    **<u>Instruction No. 17 fails to state a claim under Alaska law</u>.**

Fred Meyer contends that the limited claim pursued at trial and submitted to the jury in Instruction No. 17 (to which Fred Meyer excepted and moved to dismiss earlier) fails to state a claim under Alaska law and therefore the jury verdict should be set aside and judgment should be entered in favor of defendant Fred Meyer.

Instruction No. 16 stated that plaintiff was an "at-will" employee, who could be terminated for any reason or for no reason, but not for an improper reason, i.e., "for a reason that violates the implied covenant of good faith and fair dealing."

Instruction No. 17 stated:

> An employer violates the covenant of good faith and fair dealing when it acts with improper motive or in bad faith.
>
> It is a breach of the covenant of good faith and fair dealing if a supervisor terminates an employee for the purpose of hiring another employee for whom he had a hoped-for romantic interest.

Fred Meyer contends that this instruction fails to state a claim under Alaska state law.

In its Order dated October 5, 2007 (Doc. 237), this Court held that there was no "explicit public policy in Alaska prohibiting an employer from discharging an at-will employee in order to replace her with someone else – even if motivated by a hoped-for

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

romantic interest." This ruling is consistent with the EEOC guidelines[1] and cases which have addressed the issue. Preston v. Wisconsin Health Fund, 397 F.3d 539, 541 (7th Cir. 2005); Womack v. Runyon, supra; Becerra v. Dalton, 94 F.3d 145 (4th Cir. 1996), cert. denied, 137 L. Ed. 2d 221 (1997). We suggest the Alaska Supreme Court implicitly agrees that there is no such cause of action in Alaska by its order declining to review this Court's Order of October 5, 2007.

Given the Court's October 5, 2007, decision that it is not a violation of Alaska public policy for a supervisor to prefer a "sweetie" over another employee, Fred Meyer contends that it logically follows there *could not be* a subjectively improper motive in terminating an employee, i.e., the plaintiff, because her supervisor preferred another employee with whom he hoped to have a romantic relationship.

> If Plaintiff succeeds in establishing that she was fired so that her supervisor could hire a woman with whom he had a hoped-for romantic interest, then Plaintiff may recover as a violation of the implied covenant of good faith and fair dealing because firing under these circumstances would be based on improper motives and bad faith as a matter of law.

Court Order, August 8, 2008 (Doc. 166).

The Court said this was the "law of the case" and that the "sweetie rule" is "not before this Court." Id. But in reality the "sweetie rule" was before this Court when it declared *as a matter of law* that it was a breach of the covenant if a supervisor terminated an at-will employee (plaintiff) in order to hire another woman with whom he hoped to have a romantic relationship. Under this ruling plaintiff did not have to prove even a violation of public policy because the Court concluded as a matter of law that such action was in violation of the covenant of good faith and fair dealing.

Fred Meyer continues to respectfully disagree with this legal conclusion. The law does not prevent an employer from favoring certain employees because of a personal

---

[1] See EEOC Notice No. 915.048, EEOC policy guidance on employer liability under Title VII for sexual favoritism, quoted in Womack v. Runyon, 147 F.3d 1298, 1300 (11th Cir. 1998). The EEOC policy states that preferential treatment toward a "paramour" (or "hoped-for paramour"), or a spouse, or a friend, similar to nepotism, is not unlawful.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

relationship, e.g., preferring family members (nepotism) over a current employee. Under the rationale of the Court's holding, however, it is "bad faith" as a matter of law to prefer your wife, or your daughter, or your son over a current employee. Or to prefer your fiancé, or your girlfriend, or your "hoped for" girlfriend over a current at-will employee. The Court's decision, set forth in Instruction No. 17, that it was "bad faith" if a supervisor replaced one employee with another with whom he "hoped for a personal relationship" is not the law and it should not be the law in Alaska. As there was no breach of public policy, Fred Meyer contends it was error to rule as a matter of law that it was a breach of the covenant for a supervisor to replace an at-will employee with someone with whom he would like to have a personal relationship.

This Court's other rulings recognized that plaintiff was not terminated based on unconstitutional grounds, or contrary to public policy, or disparate treatment (objective bad faith). Accordingly, the only potential claim remaining under the subjective analysis was termination in order to unfairly deprive the employee of an economic benefit contemplated by the employment agreement (e.g., a promised share of business profits) (subjective bad faith). Chijide v. Maniilaq Assn. of Kotzebue, 972 P.2d 167, 172 (Alaska 1999). But what was the economic benefit under the at-will employment relationship of which the plaintiff allegedly was unfairly deprived? There was no lost economic benefit other than her at-will employment, and that is not a viable claim as such. Plaintiff was employed at will so being terminated was not bad faith. Plaintiff's argument was that she "expected" to have a long career at Fred Meyer and she asked for damages for being deprived of her career earnings (and received such future damages). But as we have previously noted, "expectation" of long-time employment does not state a claim as it is not a constitutional issue, a public policy issue, or disparate treatment. Belluomini v. Fred Meyer, 993 P.2d 1009, 1012-14 (Alaska 1999).

The jury in this case was permitted to sit as a super-personnel department reviewing the wisdom or fairness of a business decision made by Fred Meyer. This is contrary to

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Alaska law. Van Huff v. Sohio Alaska Petroleum Co., 835 P.2d 1181, 1183 (Alaska 1992). See also Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).

Over the years the Alaska Supreme Court has polished its analysis of the claim of an alleged breach of the implied covenant of good faith and fair dealing with regard to the termination of an at-will employee. The Court has continually noted that this is a limited claim, to be analyzed under the subjective prong (bad faith intent by the employer) or objective prong (not reasonable if violative of the constitution, or public policy, or disparate treatment). See Chijide, supra.

In addressing the subjective aspect of the implied covenant of good faith and fair dealing, the only Alaska Supreme Court decision finding a claim under the subjective prong is Mitford v. de Lasala, 666 P.2d 1000, 1006 (Alaska 1983). The plaintiff in Mitford was terminated to prevent payment to him of 10% of the future profits of the business, per his employment agreement. The Court concluded that where the employer's motive in firing an employee was to deprive the employee of the economic benefits of the contract, this was a bad faith violation of the covenant of good faith and fair dealing. This consistently has remained the Alaska Supreme Court's limited definition of the subjective prong. See Luedtke v. Nabors Alaska Drilling, 834 P.2d 1220, 1224 (Alaska 1992); Era Aviation, Inc. v. Seekins, 973 P.2d 1137, 1139 (Alaska 1999).

Cases from other jurisdictions consistently have held that the law prohibiting discrimination "does not, however, prevent employers from favoring employees because of personal relationships . . . because she is a protégé, an old friend, a close relative, or a love interest." Schobert v. Illinois Dept. of Transp., 304 F.3d 725, 733 (7th Cir. 2002). *Accord*, De Cintio v. Westchester Cty. Med. Ctr., 807 F.2d 304, 306 (2d Cir. 1986); Womack v. Runyon, 147 F.3d 1298 (11th Cir. 1998).

There are no Alaska Supreme Court decisions we could find which support the contention that as a matter of law it was "bad faith" to replace Myrna Johnson (arguably) with another employee in whom the supervisor had a personal interest. Under the scope of

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Instruction No. 17 given the jury, however, if the plaintiff was replaced by another employee who was a family member, or a better softball player, or a prospective daughter-in-law, this would state a claim for "bad faith." We contend that this is not the law in Alaska. By permitting this case to proceed to trial and to the jury, what this Court actually held as a matter of law was that Fred Meyer did not act in a manner a reasonable person would regard as fair, but this analysis is made only under the objective prong and requires proof of a constitutional violation (none), public policy breach (dismissed), or disparate treatment (none). See Ramsey v. City of Sand Point, 936 P.2d 126, 133 (Alaska 1997).

Following is a summary of the key Alaska cases addressing the subjective prong of the covenant of good faith and fair dealing after Mitford and none support the claim submitted to the jury.

Ramsey v. City of Sand Point, 936 P.2d 126, 133 (Alaska 1997) (An employer engages in subjective bad faith when it discharges an employee for the purpose of depriving him of one of the benefits of the employment contract. But where the plaintiff cannot point to an alleged deprivation of benefits under the employment contract, "the subjective element of the covenant was not implicated.")

Era Aviation, Inc. v. Seekins, 973 P.2d 1137, 1141 (Alaska 1999):

> In the at-will employment context, it is insufficient to show that an employee was discharged for reasons unrelated to job performance; instead, the employee must show a purpose that is, in itself, improper or impermissible.
>
> . . . the company's alleged desire to avoid a personality conflict between two of its employees would [not], if proved, amount to an impermissible motive for firing [plaintiff].

Era Aviation is the closest decision to the issue in our case. The plaintiff Seekins alleged that she was terminated because of a "personality clash" with her supervisor. The Alaska Supreme Court disagreed "with the broad view of the implied covenant that Seekins proposed." The Court declared that "in the at-will employment context, it is *insufficient to show that an employee was discharged for reasons unrelated to job performance.*" The

Court concluded that "personality conflict" was not an impermissible motive, and favorably cited in footnote 29 the decision in E.I. DuPont de Nemours v. Pressman, 679 A.2d 436, 444 (Del. 1996), which held that termination because of dislike, hatred or ill will did not state a bad faith claim for an at-will employee.

Fred Meyer respectfully requests that the Court reconsider its decision as set forth in Instruction No. 17. The Court should hold that as a matter of Alaska law it was not bad faith, under the subjective test, for a supervisor to replace one employee with another person with whom he had a potential personal interest. The Court should set aside the jury's verdict, and enter judgment in favor of Fred Meyer as a matter of law.

**B.    The Court should set aside the jury verdict because it was improper to submit the alternative theory that plaintiff was terminated by Fred Meyer.**

This case went through discovery, pretrial, motions, and the plaintiff's case-in-chief on the contention by plaintiff that she was "constructively discharged" from her employment with Fred Meyer. Accordingly, at the close of plaintiff's case it was improper to permit her to change theories and to argue to the jury that she was wrongfully terminated.

Jury Instruction Nos. 16, 17, 18 and 19 and the verdict form gave plaintiff the option to argue that she was either directly "terminated" by Fred Meyer or "constructively discharged." The case never should have been submitted to the jury with the option for it to decide if plaintiff was "terminated" outright by Fred Meyer.

In her complaint, plaintiff alleged wrongful discharge in breach of the implied covenant of good faith and fair dealing, and that her employment ended because of her "constructive discharge." As the parties proceeded through four years of discovery, the only contention by plaintiff was that she had been "constructively discharged." In its Answer, ¶ 37, Fred Meyer denied that plaintiff "was constructively discharged."

The pretrial order issued by the Court on April 5, 2007, directed the parties to submit their proposed jury instructions by September 17, 2007.

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

Plaintiff filed her proposed jury instructions on September 17, 2007. Instruction No. 2 defined "constructive discharge" as "working conditions so intolerable that an employee is forced to an involuntary resignation." Plaintiff did *not* propose any jury instruction on "termination" by Fred Meyer.

In plaintiff's trial brief filed September 17, 2007, the *only* theory of termination was "constructive discharge," discussed at page 12:

> The record of this case supports a claim of constructive discharge.
>
> [A] reasonable person in Johnson's position [would] conclude that Fred Meyer, through San Miguel and Sayre, had made working conditions so intolerable that Johnson was forced into an involuntary resignation.

In defendant's trial brief also submitted on September 17, 2007, we referred to plaintiff's contention that "Fred Meyer constructively discharged her," id. at 2, and argued that there was "no constructive discharge." Id. at 7. In Fred Meyer's proposed jury instructions also submitted on September 17, 2007, No. 10 describes the law on constructive discharge. No instruction addressed "termination" because that was never an issue.

Given the complaint, the discovery, and plaintiff's contentions for four years, the only claim at the pretrial conference on August 6, 2008, was that the plaintiff was "constructively discharged." The Court's proposed Instruction E addressed only the "Constructive Discharge Definition," and plaintiff's counsel never suggested there was a separate contention that plaintiff had been directly terminated by Fred Meyer. At the trial beginning on Monday, August 11, 2008, the advance instruction to the jury pool and subsequent opening statement by counsel only referred to "constructive discharge." After the Court and counsel conferred on Tuesday, August 12, 2008, proposed Instruction No. 18 referred to "constructive discharge" and no instruction was proposed on "termination". The parties and Court discussed at length proposed changes to the jury instructions and the verdict form based <u>solely</u> on the theory of "constructive discharge."

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

After defendant's cross-examination of plaintiff, where she admitted that she had walked out of the counseling session on March 18, 2002, without being restricted from doing so, and that she had returned an hour later to get additional information (including a copy of the counseling memo), and that she prepared the next morning to return to work at Fred Meyer, it was clear that the elements of constructive discharge could not be met by plaintiff. Accordingly, defendant moved to dismiss at the close of plaintiff's case. Recognizing that defendant's motion was well taken, plaintiff's counsel *for the first time* argued that plaintiff also wanted to proceed on the alternate theory of direct termination by Fred Meyer. Defendant argued that this was a new theory, it was prejudicial to defendant because we had not conducted discovery on this theory, nor prepared proposed jury instructions, nor prepared witnesses, nor sought to introduce exhibits, nor otherwise anticipated that in the middle of trial we would have to defend a new theory. Defendant's motion to dismiss at the close of plaintiff's case-in-chief was denied and we proceeded to finish the trial and go to the jury on both the theory of direct termination or constructive discharge.

Defendant Fred Meyer contends that this case never should have gone to the jury on the theory of whether plaintiff was directly terminated by Fred Meyer. The only theory should have been constructive discharge. The jury did not find constructive discharge per the Verdict Form. Therefore, if "termination" was improperly submitted, and there was no constructive discharge, the verdict should be set aside and judgment entered for defendant.

### C. No reasonable jury could find that plaintiff's supervisor terminated her to hire someone in whom he had a romantic interest.

Jury Instruction No. 17 states:

> An employer violates the covenant of good faith and fair dealing when it acts with improper motive or in bad faith.
>
> It is a breach of the covenant of good faith and fair dealing if a *supervisor* terminates an employee for the purpose of hiring another employee for whom he had a hoped-for romantic interest.

(Emphasis added.)

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

DEFENDANT FRED MEYER'S MOTION FOR JUDGMENT AS A MATTER OF LAW
Johnson v. Fred Meyer
Case No. 1J-04-008-CV
Page 9 of 13

SEADOCS:354856.1

Under this instruction, plaintiff Johnson's "supervisor" had to terminate her. No reasonable jury could have found that plaintiff's "supervisor" terminated her.

It is undisputed that Jaime San Miguel was plaintiff's supervisor and that it was Ms. Johnson whom Mr. San Miguel allegedly was interested in replacing with an attractive young woman with whom he hoped to have a romantic relationship.

It is undisputed that Jaime San Miguel did not have authority to terminate plaintiff. This was the testimony of Mr. San Miguel, this was the testimony of Mr. Sayre, and this was the testimony of Mary Lucas Hill. It was also undisputed that Mr. San Miguel did not make a recommendation to either Mr. Sayre or Ms. Lucas Hill to terminate plaintiff; that Mr. San Miguel did not speak to Mr. Sayre about terminating plaintiff; and that Mr. Sayre had no knowledge of any alleged hoped-for romantic interest by Mr. San Miguel in Johnna Havard. It is undisputed that Mary Lucas Hill was advised only that plaintiff had walked out of a meeting with Mr. Sayre and Mr. San Miguel after Mr. Sayre told her that if she did so she would be breaching the Fred Meyer Employee Responsibilities Form by walking off the job and this was a basis for immediate termination.

From the evidence, the Fred Meyer employee who made the decision on company records to "terminate" plaintiff was Mary Lucas Hill. She advised the clerk that plaintiff had voluntarily terminated but that she was eligible for re-hire. It is undisputed that the only information Ms. Lucas had was that Ms. Johnson had walked off the job. Accordingly, there is no way a reasonable jury could have found (as required by Instruction No. 17) that plaintiff's "supervisor" (Jaime San Miguel) had terminated her in order to hire another employee. As a result, the jury verdict that plaintiff was "terminated" by her supervisor cannot be upheld on the record before the Court.

A recent case from the First Circuit illustrates some of the issues that should be considered in reviewing this motion. In <u>Kouvchinov v. Parametric Technology Corp.</u>, ____ F.3d ____, 2008 WL 3191283 (1st Cir. 2008), the question was the proper analysis of a

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

claim of employment discrimination. The district court had granted summary judgment for the defendant and the Court of Appeals affirmed.

The Court of Appeals noted that in analyzing "pretext" (which is similar to analyzing "bad faith"):

> [T]he focus is on the mindset of the *actual decision-maker*. This holds true even when the decision-maker is relying on information that may later prove to be inaccurate. In other words, it is not enough for a plaintiff to show that the decision-maker acted on an incorrect perception. Instead, the plaintiff must show that the decision-maker did not believe in the accuracy of the reason given for the adverse employment action. This is as it should be: the anti-discrimination laws do not insure against inaccuracy or flawed business judgment on the employer's part; rather, they are designed to protect against, and to prevent, actions spurred by some discriminatory animus.

Id. at 3.

In our case the testimony is undisputed that the only person with an alleged discriminatory animus was Jaime San Miguel. It is also undisputed that the only information passed on to Mary Lucas Hill about Ms. Johnson was that she had walked out of the counseling session on March 18, 2002. Even if Ms. Hill "acted on an incorrect perception," there was no "bad faith" in Ms. Hill's action. Accordingly, there could not have been any "bad faith" on the part of "Fred Meyer" because the decision-maker on termination was not Jaime San Miguel, and his alleged intentions were never communicated to Mary Lucas Hill. The jury verdict should be set aside because no reasonable jury could find that Mary Lucas Hill terminated plaintiff so Mr. San Miguel could replace her with Ms. Havard.

**D.** **Plaintiff's counsel improperly argued that Fred Meyer could afford to pay large amount to plaintiff.**

In his rebuttal closing, cleverly not mentioned until the very end, plaintiff's counsel improperly argued to the jury that they should award plaintiff a large verdict because "Fred Meyer is a big company and they have lots of money." This was contrary to the jury instruction No. 20, that "a corporation is entitled to the same fair and conscientious

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

consideration by you as any other person" and furthermore, the ability to pay or not to pay is an improper element of argument to the jury.

Despite the immediate objection by defense counsel to this appeal by plaintiff's counsel to the jury's sympathy, such a statement was so improper that an instruction to the jury to disregard cannot be overcome, particularly during the final minutes of plaintiff's rebuttal argument. Plaintiff's counsel improperly injected prejudice into his closing, a deliberate violation of the principles of fair play as expressed in the court rules and in the traditional standards of justice. If the jury verdict is not set aside for any of the reasons set forth above, then this Court should order a new trial because of the comments by plaintiff's counsel in his closing rebuttal argument.

### III. CONCLUSION

For the reasons set forth above, defendant Fred Meyer urges this Court to set aside the jury verdict and find in favor of Fred Meyer as a matter of law. This case never should have been submitted to the jury. In the alternative, the Court should order a new trial.

DATED this 28th day of August, 2008.

Respectfully submitted,

MILLER NASH LLP

s/ James R. Dickens
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
Phone: (206) 622-8484
Fax: (206) 622-7485
E-mail: jim.dickens@millernash.com
ABA No. 0610063

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484

GRUENSTEIN & HICKEY

s/ Peter Gruenstein
Gruenstein & Hickey
Resolution Plaza
1029 W. 3rd Avenue, Suite 510
Anchorage, AK  99501
Phone:  (907) 258-4338
Fax:  (907) 258-4350
E-mail:  ghlaw@gci.net
ABA No. 7910079

Attorneys for Defendant

Certificate of Service

I hereby certify that on August 28, 2008, a copy of the foregoing was served electronically on:

Mark Choate
lawyers@choatelawfirm.com

s/ James R. Dickens

MILLER NASH LLP
ATTORNEYS AT LAW
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE WA 98101-2352
TELEPHONE (206) 622-8484